1  Kathleen Gallagher, SBN 249062
   Lauren Jones, SBN 293002
2  Tanya Harris, SBN 300726
   GALLAGHER JONES LLP
3  2945 Ramco Street, Suite 110
   West Sacramento, California 95691
4  Telephone: 916.226.4470
   Facsimile: 916.226.4471
5
   Attorneys for **Plaintiff,**
6  **NEVADA FLEET LLC**

7                 UNITED STATES DISTRICT COURT FOR

8                 THE EASTERN DISTRICT OF CALIFORNIA

9
   NEVADA FLEET LLC, a Nevada Limited          Case No. **2:17−CV−01732−TLN−KJN**
10 Liability Company
                                               **FIRST AMENDED COMPLAINT FOR**
11            Plaintiff,                        **DAMAGES FOR:**
                                               1.  **BREACH OF CONTRACT**
12 v.                                          2.  **BREACH OF THE IMPLIED**
                                                   **COVENANT OF GOOD FAITH AND**
13 FEDEX CORPORATION; FEDERAL                      **FAIR DEALING**
   EXPRESS CORPORATION; and DOES 2 to          3.  **BREACH OF EXPRESS WARRANTY**
14 50, inclusive,                              4.  **BREACH OF IMPLIED WARRANTY**
                                                   **OF MERCHANTABILITY**
15            Defendants.                      5.  **BREACH OF IMPLIED WARRANTY**
                                                   **OF FITNESS FOR A PARTICULAR**
16                                                 **PURPOSE**
17                                             6.  **NEGLIGENT HIRING**
                                               7.  **INTENTIONAL INTERFERENCE**
18                                                 **WITH CONTRACTUAL RELATIONS**
19                                             8.  **INTENTIONAL INTERFERENCE**
                                                   **WITH PROSPECTIVE ECONOMIC**
20                                                 **RELATIONS**
21                                             9.  **NEGLIGENT INTERFERENCE WITH**
                                                   **CONTRACTUAL RELATIONS**
22                                             10. **NEGLIGENT INTERFERENCE WITH**
                                                   **PROSPECTIVE ECONOMIC**
23                                                 **RELATIONS**
24                                             11. **INTENTIONAL**
                                                   **MISREPRESENTATION**
25                                             12. **NEGLIGENT MISREPRESENTATION**
26                                             13. **UNFAIR BUSINESS PRACTICES**
                                               14. **RESTRAINT OF TRADE**
27                                             15. **HORIZONTAL RESTRAINT**
28                                             16. **WIRE FRAUD**

1
2
3
4

**17. VIOLATION OF 49 UNITED STATES CODE§ 32701 ET SEQ.**
**18. DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: Plaintiff, NEVADA FLEET LLC (hereinafter "NV FLEET"), by and through its counsel, allege as follows:

**PARTIES**

1. Plaintiff, NEVADA FLEET LLC is an Nevada Limited Liability Company with its principal place of business in Las Vegas, Nevada, with a California Dealer's License, and regularly conducts business in the State of California in the purchase and resale of used commercial vehicles.

2. Defendant FEDEX CORPORATION (hereinafter "FEDEX") is a Delaware Corporation with its headquarters located in Memphis, Tennessee.

3. At all times herein mentioned, FEDEX has purposefully availed itself of the privilege of conducting business in the State of California thus invoking the benefits and protections of its laws by conducting business in California and selling its used vehicles in California.

4. Defendant FEDERAL EXPRESS CORPORATION (hereinafter "FEDEX EXPRESS") is a Delaware Corporation with its headquarters located in Memphis, Tennessee and a subsidiary of FEDEX.

5. At all times herein mentioned, FEDEX EXPRESS has purposefully availed itself of the privilege of conducting business in the State of California thus invoking the benefits and protections of its laws by conducting business in California and selling its used vehicles in California.

6. At all times herein mentioned, NV FLEET has purchased FEDEX and FEDEX EXPRESS (collectively "DEFENDANTS") vehicles advertised and sold in California for the purpose of reselling the vehicles to clients throughout the United States.

7. DOES 2 through 50, inclusive, are sued herein under fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiff does not know the true names or capacities of these Defendants, but each Defendant is somehow legally and proximately responsible in some

manner for the occurrences herein alleged.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8.      Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, each and every Defendant was an agent, employee, partner, joint venture, predecessor-in-interest, successor-in-interest and co-conspirator of the other Defendants, and in doing the things herein alleged, was acting within the course and scope of such agency, employment, partnership, joint venture, predecessor-in-interest, successorship-in-interest, and conspiracy, and with the permission, consent and ratification of the other Defendants.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because NV FLEET is a citizen of the State of Nevada and the DEFENDANTS are citizens on the State of Tennessee, and the amount in controversy exceeds $75,000.00.

10.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 1337 because this Complaint alleges violations of the Sherman Act, 15 U.S.C. §1, and jurisdiction is conferred by 15 U.S.C. § 15.

11.      The Court also has jurisdiction pursuant to 49 United States Code ("U.S.C.") § 32701 et seq. and §32710 because this Complaint alleges violations of 49 U.S.C., and jurisdiction is conferred by § 32709 (d)(2) of 49 U.S.C.

12.      This Complaint is filed, and this action is also instituted under the Cartwright Act, Business and Professions Code Section 16720 et seq., for an unlawful trust, agreement, understanding, and concert of action which NV FLEET seeks to prevent and restrain from being carried out.

13.      This Complaint is filed, and this action is also instituted under the violation of, 49 U.S.C sections 32701 et seq. 49 U.S.C § 32710 for an unlawful violation of federal odometer tampering law which NV FLEET seeks to prevent and restrain from being carried out.

14.      All claims under Federal and State law are based upon a common nucleus of operative facts, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

15.    This Court has jurisdiction over the State claims under 28 U.S.C. § 1367 because those claims are so related to the Federal claims that they form part of the same case or controversy.

16.    This Court has personal jurisdiction over FEDEX because FEDEX has sufficient minimum contacts with the State of California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17.    This Court has personal jurisdiction over FEDEX EXPRESS because FEDEX EXPRESS has sufficient minimum contacts with the State of California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.  Plaintiff also believes, and based thereon alleges, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because the named Defendants, and each of them, are already subject to this Court's personal jurisdiction and currently unnamed DOES may also be to this Court's personal jurisdiction.

## OPERATIVE FACTS

### *FEDEX EXPRESS is the Alter Ego of FEDEX*

19.    FEDEX is and at all times herein mentioned was, the parent company to FEDEX EXPRESS and its alter ego.  Together, they have operated at all times as a single business enterprise. FEDEX has complete strategic and managerial control over FEDEX EXPRESS as demonstrated in documents published by FEDEX.  Throughout the form 10-K filed with the Securities and Exchange Commission ("SEC Report") (attached hereto as **Exhibit A**) FEDEX describes their portfolio of transportations companies as follows "FedEx provides a broad portfolio of transportation, e-commerce and business services through companies competing collectively, operating independently and managed collaboratively, under the respected FedEx brand." (**Exhibit A**, pages 3 and 4) SEC Reports are used by investors to get an accurate picture of corporate earnings of a corporation's portfolio and future earnings potential.  The portfolio companies owned by FEDEX at all times herein mentioned included FEDEX EXPRESS.  A clear snapshot of the company structure is attached hereto as **Exhibit B**, which is the Company Structure chart found on fedex.com. This Company Structure chart illustrates the relationship of FEDEX as the parent company in control of FEDEX EXPRESS.

20.     The SEC Report for FEDEX (attached as **Exhibit A**) mentions FEDEX EXPRESS approximately 363 times.  This acknowledgment of FEDEX EXPRESS over and over again in the reports was not only for the purpose of a holding company showing earnings for a subsidiary, but it was also to demonstrate the managerial and strategic control that FEDEX has over FEDEX EXPRESS both currently and in the future.  On pages 3 and 4 of **Exhibit A**, FEDEX discloses their strategy for providing strategic direction to the FEDEX portfolio Companies as "compete collectively, operate independently, manage collaboratively".  "[M]anage collaboratively", which it touted throughout the document, establishes that FEDEX has management control over FEDEX EXPRESS and the companies operate as a single enterprise.

21.     Further, through this SEC Report there are glaring examples of the management control that FEDEX exercises over FEDEX EXPRESS.  For example, on page 6 of **Exhibit A,** under "Reputation and Responsibility" the report states "[b]y competing collectively under the FedEx brand, our operating companies benefit from one of the world's most recognized brands."  The FedEx brand that all FedEx subsidiaries compete collectively under is the FedEx Corporation brand name.  On page 7 of **Exhibit A**, under "The Environment", the report states "In furtherance of our commitment to protecting the environment, we initiated an effort to increase FedEx Express vehicle fuel efficiency 50% from a 2005 baseline by 2025, a goal that we increased from 30% in 2016."  "[W]e initiated" means that the decision made for FEDEX EXPRESS regarding this matter came from FEDEX.  This, once again demonstrating FEDEX is the alter ego of FEDEX EXPRESS and not merely a holding company.  They operate as a single enterprise.  Other examples can be found throughout **Exhibit A**.  FEDEX again and again refers to the relationship between FEDEX and FEDEX EXPRESS as "we" and not the separate entities.

22.     The corporate management structure also shows that FEDEX has management and strategic control over FEDEX EXPRESS.  Attached hereto as **Exhibit C** are the FEDEX Executive Leadership job descriptions from fedex.com.  In each of the Executive Leaders for FEDEX job descriptions it lists some form of management of portfolio companies even though they are Executives for FEDEX.  To wit:

a.  Frederick W. Smith, Chairman and CEO "is responsible for providing strategic direction

for FedEx Corp. and its operating companies, including FedEx Services, FedEx Express, FedEx Ground and FedEx Freight." (**Exhibit C**, page 1)

b.  David J. Bronczek, President and COO, FedEx Corp. "is responsible for marketing, sales, and all FedEx operating companies.  He is a member of the five-person Executive Committee, which plans and executes the corporation's strategic business activities. Bronczek is also co-president and co-CEO of FedEx Services, which provides sales, marketing, information technology, communications, customer service, technical support, billing, and collections services for U.S. customers of major FedEx business units and certain back-office functions that support other FedEx companies."  (**Exhibit C**, page 2)

c.  Alan B. Graf Jr., Executive Vice President and CFO, "is responsible for all aspects of the corporation's global financial functions, including financial planning, treasury, tax, accounting and controls, internal audit, investor relations, and corporate development. He is also a member of the five-person Executive Committee, which plans and executes the corporation's strategic business activities." (**Exhibit C**, page 3)

d.  Robert B. Carter, Executive Vice President, FedEx Information Services, and CIO, "is a member of the five-person Executive Committee, which plans and executes the corporation's strategic business activities.  Carter is also co-president and co-CEO of FedEx Services, which provides sales, marketing, information technology, communications, customer service, technical support, billing, and collections services for U.S. customers of major FedEx business units and certain back-office functions that support other FedEx companies." (**Exhibit C**, page 4)

e.  Mark R. Allen, Executive Vice President, General Counsel and Secretary, "is responsible for directing the international and domestic legal, security, and government affairs for FedEx Corporation and its subsidiaries, which includes ensuring that global business activities are conducted in compliance with international, federal, state, and local government regulations.  He is also a member of the five-person Executive Committee that plans and executes the corporation's strategic initiatives." (**Exhibit C**, page 5)

f.  Finally, Donald F. Colleran, Executive Vice President, Chief Sales Officer, "Leads a

global organization of approximately 15,000 team members responsible for the more than $50 billion in worldwide revenue across multiple FedEx operating companies.   His organization owns the customer experience from end to end, from the trusted and strategic business consultants to teams who develop and deliver back-end systems, tools, and integrated digital shipping platforms to manage the ongoing customer relationship. Colleran also serves on the Strategic Management Committee of FedEx Corp., which sets the strategic direction for the FedEx enterprise." (**Exhibit C**, page 6)

23.    This commingling of corporate leadership function between FEDEX and subsidiary companies support alter ego and a single business enterprise as shown in **Exhibit C**.  There is no way to distinguish between the managing leadership of FEDEX and FEDEX EXPRESS based on these job descriptions.

24.    In the SEC Report (attached hereto as **Exhibit A**), the managerial control of FEDEX over its subsidiaries is clearly established.  Throughout the SEC Report, FEDEX refers to themselves and their subsidiaries as "we" and "our".  On page 11 of **Exhibit A**, FEDEX discussed the competition for FEDEX EXPRESS as "we".  On page 17 of **Exhibit A**, FEDEX listed the trademarks for each subsidiary is under FEDEX.  On page 33 of **Exhibit A**, it states "[w]e provide a broad portfolio of transportation, e-commerce and business services through companies competing collectively, operating independently and managed collaboratively, under the respected FedEx brand."   "Our FedEx Services segment provides sales, marketing, information technology, communications, customer service, technical support, billing and collection services, and certain back-office functions that support our transportation segments."

25.    In addition, the FedEx Services segment provides customers with retail access to FedEx Express and FedEx Ground shipping services through FedEx Office and Print Services, Inc. ("FedEx Office")." (**Exhibit A**, page 33) This demonstrates the intermixing of services between the various FEDEX portfolio companies.   "References to our transportation segments include, collectively, our FedEx Express group, which includes the FedEx Express and TNT Express segments, the FedEx Ground segment and the FedEx Freight segment." (**Exhibit A**, page 34) Over and over, the subsidiary companies are referred to collectively under FEDEX.  There is no separation

of management and control between the FEDEX and their subsidiaries.

26.     On page 41 of **Exhibit A**, FEDEX discuss operating expenses and includes all subsidiaries. On pages 43 and 100 of **Exhibit A**, FEDEX discussed "Our" tax rates restructuring of FEDEX EXPRESS "from an internal corporate legal entity restructuring."  On page 44 of **Exhibit A**, "[o]ur capital expenditures for 2018 are expected to be approximately $5.9 billion, largely for our fleet modernization program at FedEx Express and investments in facilities and sort equipment to support volume growth at FedEx Ground, including certain projects deferred from 2017."  The reporting of the financials in concert supports our assertion that FEDEX EXPRESS is the alter ego of FEDEX.

27.     On page 68 of the SEC Report (**Exhibit A**), FEDEX even states that "we retired" aircraft and "adjusted the retirement schedule of an additional 23 aircraft and 57 engines." "The decision to permanently retire these aircraft and engines aligns with FedEx Express's plans to rationalize capacity and modernize its aircraft fleet to more effectively serve its customers." Demonstrating FEDEX management control over the reselling of retired FEDEX EXPRESS airplanes, vehicles and equipment.

28.     On page 72 of the SEC Report (**Exhibit A**), FEDEX states "*The failure to integrate successfully the businesses and operations of FedEx Express and TNT Express in the expected time frame may adversely affect our future results.*" "[A]t times the attention of certain members of our management may be focused on the integration of the businesses of FedEx Express and TNT Express and diverted from day-to-day business operations, which may disrupt our business." (**Exhibit A**, page 73) "Our primary operating companies are Federal Express Corporation ("FedEx Express"), the world's largest express transportation company". (**Exhibit A**, page 87)

29.     The management control that FEDEX exercises over FEDEX EXPRESS is such that the adherence to the fiction of the separate existence of the DEFENDANTS would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.  FEDEX exercises control and domination of FEDEX EXPRESS in both management and strategic planning.  Treating them as separate entities would surely perpetrate a fraud.

//

***DEFENDANTS Sell Commercial Vehicles Through Third-Parties Using Condition Reports***

30.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, FEDEX is the parent company for FEDEX EXPRESS which is a worldwide transport and delivery company that relies on the use of commercial trucks in its business of delivering packages.  As part of its custom and practice, the DEFENDANTS sell its used commercial trucks through various agents and marketing channels such as live and online auctions and direct buy websites.

31.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, DEFENDANTS' agents and channels have included, but are not limited to:  ARI Fleet Management Corporation (hereinafter "ARI") located in Mount Laurel, New Jersey; the "ARI BuyDirect" program; ADESA Golden Gate (hereinafter "ADESA GG") located in Tracy, California;  South Bay Auto Auction (hereinafter "SOUTH BAY") located in Stockton, California; Copart Auction located in Portland, Oregon (hereinafter "COPART - P"); DAA Northwest (hereinafter "DAA") located in Spokane, Washington; Copart Auction located in Helena, Montana (hereinafter "COPART - H"); ADESA Dallas located in Hutchins, Texas; and Manheim, Inc. (hereinafter "MANHEIM") with auctions located in Atlanta, Georgia, Hatfield, Pennsylvania, and Omaha, Nebraska; America's Auto Auction (hereinafter "AAA") located in Toledo, Ohio (collectively the "DEFENDANTS' AGENTS").

32.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, and the DEFENDANTS' AGENTS, and each of them, have acted in furtherance of DEFENDANTS' directives to sell their used vehicles.

33.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, the DEFENDANTS' AGENTS, and each of them, acting with the knowledge and/or consent, on behalf, under the direction, and/or for the benefit of DEFENDANTS, remove all DEFENDANTS' markings, as well as clean, and create Condition Reports of DEFENDANTS' vehicles in order to prepare them for sale.  These Condition Reports (hereinafter "Condition Reports") detail the vehicle's identity by vehicle identification number (hereinafter "VIN"), and summarize the vehicle's condition and included equipment.  The Condition Reports are created for DEFENDANTS' vehicles at the geographical location where the vehicle is facilitated for sale.  These Condition Reports are then

published and displayed on websites, disclosures, announcements and in advertising to attract buyers.

34.     Plaintiff is informed, believes, and based thereon alleges, that potential buyers, when determining whether or not to purchase DEFENDANTS' vehicle for sale, rely on the accuracy of the disclosures, announcements, advertising, and Condition Reports.

35.     NV FLEET relied on the information contained in the disclosures, announcements, advertising, and Condition Reports, which induced them to purchase DEFENDANTS' commercial vehicles being sold by DEFENDANTS' AGENTS, under the direction and control of DEFENDANTS.

36.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, DEFENDANTS, by its standards, customs, policies, and/or practices, ratified, acquiesced, directed, controlled, permitted, and/or allowed the DEFENDANTS' AGENTS to create false Condition Reports in order to induce prospective buyers like NV FLEET to purchase DEFENDANTS' used vehicles.   DEFENDANTS' policy, custom, and practice fails to include a proper review and monitoring of the Condition Reports that are generated on its behalf by DEFENDANTS' AGENTS to ensure that the information contained therein is accurate and not misrepresentative of the used commercial vehicles that DEFENDANTS put on the market for sale.   Under DEFENDANTS' knowledge, request, consent, acquiescence, direction and/or control, the DEFENDANTS' AGENTS, and each of them, mislead consumers regarding the true condition of DEFENDANTS' vehicles in order to induce them to purchase the vehicles.

37.     Plaintiff is informed, believes, and based thereon alleges, that all times relevant herein, DEFENDANTS authorize, promote, acquiesce, condone, and otherwise permit the DEFENDANTS' AGENTS to deny and refuse responsibility for the misrepresentations, refuse to resolve or compensate for the damages caused, to continually shift blame upon other DEFENDANTS' AGENTS, and even to refuse further dealings, among others, instead of working to resolve the issues in good faith.

38.     Plaintiff is informed, believes and thereon alleges that, at all times relevant herein, DEFENDANTS have knowingly created, directed, requested, authorized, condoned, acquiesced to and/or directly benefited from a pattern of fraudulent behavior by its DEFENDANTS' AGENTS

related to the sale of DEFENDANTS' used vehicles to auto auction customers including NV FLEET. DEFENDANTS are motivated to act in this way because it receives a rebate in proportion with the sale price of the used vehicle sold on its behalf.  The higher the sale price, the higher the rebate to DEFENDANTS.

### DEFENDANTS Fail to Deliver the Vehicles Represented in its Condition Reports

#### Gasoline Ford Truck Delivered in place in Place of Diesel Freightliner Truck

39.     On or around April 13, 2017, NV FLEET purchased the DEFENDANTS' vehicle; disclosed as a diesel Freightliner (VIN No. FCLE49L08DA28761) located in Tracy, California and sold via ADESA GG's live block online internet auction.  However, the vehicle that was delivered was a Ford gasoline truck, not a Freightliner diesel as represented in all announcements, advertising, and disclosures as well as the Condition Report.  The value of the 2008 Ford truck is significantly less than the 2008 Freightliner diesel advertised and paid for.  NV FLEET was buying this vehicle for a client.  The Condition Report, attached hereto as **Exhibit D**, and incorporated as though fully set forth herein, represented that the vehicle was a 2008 Freightliner diesel truck.   When NV FLEET contacted DEFENDANTS' AGENTS regarding the gross misrepresentation, they refused to communicate with or remedy the failure to provide the vehicle advertised.

#### Diesel Freightliner Delivered in Place of Gasoline Freightliner Truck

40.     On or around November 30, 2017, NV FLEET purchased the DEFENDANTS' vehicle; disclosed as a gasoline Freightliner (VIN No. 4UZAANBWX1CH53114) from DEFENDANTS' AGENT, MANHEIM, with the auction located in Omaha, Nebraska.  Prior to picking up the vehicle, NV FLEET contacted the auction to verify that the information contained in the announcements, advertising, and disclosures, as well as the Condition Report, was accurate. DEFENDANTS' AGENT, MANHEIM, confirmed that the information contained in the Condition Report for this vehicle was accurate.  NV FLEET paid the cost of transporting the vehicle to a customer in Florida.  Upon arrival at the customer's location it was quickly determined that the vehicle actually had a diesel engine, not the gasoline engine that was represented in all announcements, advertising, and disclosures, as well as the Condition Report. NV FLEET purchased this vehicle specifically for a client.  The Condition Report, attached hereto as **Exhibit E**, and

incorporated as though fully set forth herein, represented that the vehicle was a 2001 Freightliner gas truck.   When NV FLEET contacted DEFENDANTS' AGENTS regarding the gross misrepresentation, they refused to communicate with or remedy the failure to provide the vehicle advertised.

### *Non-Air-Conditioned Vans Sold as Having Air Conditioners*

41.   On or around March 2017, NV FLEET was in search of used FEDEX EXPRESS vans to purchase for one of its clients located in Las Vegas, Nevada, where temperatures are regularly above 100 degrees Fahrenheit.  As part of its search, NV FLEET received approximately twenty-five Condition Reports generated by DEFENDANTS' AGENTS regarding used FEDEX EXPRESS vans for sale.  These vans were being facilitated by DEFENDANTS in Tracy, California through ARI and ADESA GG.

42.   After reviewing the announcements, advertising, and disclosures, as well as the Conditions Reports, and in reliance on the information contained therein, NV FLEET negotiated with ARI via email and telephone conversation, and then purchased eleven vans from DEFENDANTS.

43.   Nine of the eleven vans purchased by NV FLEET (VIN Nos. 4UZA4FF46WC973571, 4UZA4FF45WC973559, 4UZA4FF47WC964457, 4UZA4FF41WC 964485, 4UZA4FF47WC932821, 4UZA4FF49WC964489, 4UZA4FF48WC932780, 4UZA4FF45 WC932817, and 4UZA4FF42WC964494) were represented in the disclosures, announcements, advertising, and Condition Reports to have air conditioners.  The Condition Reports for the nine FEDEX EXPRESS vans purchased represented as having air conditioners are attached hereto as **Exhibit F** and incorporated as though fully set forth herein.

44.   During the negotiation process to purchase the vans NV FLEET representative, Tom Layton ("Layton"), discussed on numerous occasions with ADESA GG, both verbally and through email communication, the need for air conditioners in the vans and indicated to ADESA GG's employees that this was the sole reason for the purchase.  NV FLEET purchased the vans out of state at additional cost specifically because the vans included air conditioners.  When the vehicles arrived in Las Vegas, it was discovered that they were not, in fact, equipped with air conditioners as represented.  Layton immediately contacted ARI and ADESA GG by email and telephone to report

the erroneous sale and delivery.  As a result of the actual condition of the vehicles, NV FLEET's sale and delivery to their customer was cancelled due to the vehicles not containing air conditioning.

45.     Plaintiff believes and based thereon alleges that, and as part of its custom and practice, ARI and ADESA GG, on behalf of and under the direction, acquiescence, consent, and authority of DEFENDANTS, denied any responsibility for the incorrect and misleading announcements, advertising, and disclosures as well as the Condition Reports that induced NV FLEET to purchase vans without air conditioners to NV FLEET's detriment.  These DEFENDANTS' AGENTS were unwilling to resolve the issue to the satisfaction of NV FLEET.  They refused to reimburse NV FLEET for the cost of returning the vehicles or installing air conditioners.  ADESA GG's arbitration department, located in Tracy, California, declined NV FLEET's claim stating that they were performing in accordance with National Auto Auction Association ("NAAA") guidelines.  ARI confirmed the same and refused further discussion or negotiation.

*Inoperable Vehicles Sold as Drivable*

46.     Another example of DEFENDANTS' failure to sell the vehicles represented on the disclosures, announcements, advertising, and Condition Reports is shown by **Exhibit G,** which is incorporated as though fully set forth herein.  This FEDEX EXPRESS truck (VIN No. 4UZA4FFC0XCB81991) was represented in all announcements, advertising, and disclosures as well as the Condition Report by SOUTH BAY in Stockton, California to be fully operational and drivable.  In truth, the truck required towing.  On behalf of DEFENDANTS, SOUTH BAY listed the truck on the Condition Report as "Regular" when in fact they should have listed it as "Inoperable" as it was not in working condition.  NV FLEET purchased the vehicle via ARI auto direct and spent a premium in order to purchase a running and drivable vehicle, not the provided inoperable vehicle.

47.     NV FLEET did not discover that the vehicle was inoperable until the driver NV FLEET paid to pick up the vehicle was unable to do so because the vehicle was inoperable.  Additionally, the driver was sent to collect the vehicle on a Saturday, SOUTH BAY would not release the vehicle because they do not release inoperable vehicles on Saturdays, demonstrating that they knew the vehicle was inoperable.  Further, the vehicle computer displayed error codes exposed that the vehicle had not been running for months.

48.     Due to DEFENDANTS' AGENT, SOUTH BAY's wrongdoings, it took three trips, totaling over 1600 miles, and at great expense in order to get the vehicle delivered by being towed onto a flatbed trailer.  SOUTH BAY failed and refused to communicate or negotiate with NV FLEET regarding this matter.

49.     On or around June 28, 2017, NV FLEET purchased a 1999 diesel Freightliner truck (VIN No. 4UZA5FFC7XCB44307), advertised in California by ARI and COPART - P.  On the Condition Report, attached hereto as **Exhibit H**, which is incorporated as though fully set forth herein, it listed the vehicle in "Regular" condition and "runs and drives".  On or around July 17, 2017, NV FLEET contacted COPART - P and verified that the vehicle "runs and drives" prior to incurring the expense of sending a driver to collect the vehicle.  However, when a transporter was sent to pick up the vehicle the driver was advised by COPART - P's manager that the vehicle did not run and drive.

50.     Further, Plaintiff is informed, believes, and based thereon alleges, that the driveshaft was disconnected at the time COPART - P took possession of the vehicle.  When confronted with the discrepancy in the Condition Report, the manager could not explain why the Condition Report was so grossly inaccurate and refused to reconnect the drive shaft so that the transporter, paid for by NV FLEET, could take possession of the vehicle.  Once again, NV FLEET had paid a premium for a vehicle that was not in the condition advertised, had further incurred the expense to collect the vehicle, and was not able to collect the vehicle purchased or be reimbursement for the expense of the transporter.

51.     Upon learning the actual condition of the vehicle purchased on June 28, 2017, NV FLEET made numerous attempts to contact Bailey McMellon, Asset Support Specialist at Copart.  NV FLEET did not receive any response from either Copart Headquarters or ARI regarding this matter.  COPART - P admitted error via email communication, but denied any responsibility, asserting that NV FLEET purchased the vehicle from DEFENDANTS.

52.     On or around June 26, 2017, NV FLEET purchased a 2006 Freightliner MT-45 truck (VIN No. 4UZAANBW86CW06696) being advertised in California by COPART – H and ARI.  The Condition Report, attached hereto as **Exhibit I**, which is incorporated as though fully set forth herein,

listed the Freightliner truck as "Regular" condition and the vehicle "runs and drives".  On or around August 2, 2017, prior to incurring the expense of sending a transporter to pick up the vehicle, NV FLEET obtained confirmation from COPART - H via phone call that the vehicle "runs and drives". Once again, when the transporter arrived, the vehicle was inoperable.  NV FLEET immediately contacted Copart Headquarters and ARI, but received no response.  NV FLEET paid for the vehicle under the false pretense that it was in running condition, paid for a transport based on the information provided in the disclosures, announcements, advertising, and Condition Report, was unable to pick up the vehicle, and suffered additional damages.

*Odometers Not as Represented on Condition Reports*

53.     On or around January 12, 2017, NV FLEET purchased a FEDEX EXPRESS 2001 Freightliner MT-45 truck (VIN No. 4UZAANBW31CH92014) from MANHEIM through their "buy-it-now" website known as "O.V.E."  The ARI Condition Report, attached hereto as **Exhibit J**, which is incorporated as though fully set forth herein, listed the mileage as 150,135 and vehicle condition as inoperative.  The high dollar sale price listed for such an inoperative vehicle indicated that the miles were accurately represented on the disclosures, announcements, advertising, and Condition Report.  When NV FLEET received the vehicle, the odometer had been replaced and the miles listed on the disclosures, announcements, advertising, and Condition Report were not the actual vehicles miles or reasonably close thereto.

54.     Based on the condition of the vehicle, and others, Plaintiff is informed, believes, and based thereon alleges, that it had operated for more miles than was represented on the odometer. Further, when the vehicle title was received, the odometer disclosure section was left blank.  Once again, NV FLEET did not receive the vehicle that it had bargained and paid for.  Instead it received a FEDEX EXPRESS vehicle with much higher mileage than what was disclosed on the disclosures, announcements, advertising, and Condition Report.

55.     On or around May 25, 2017 and June 1, 2017, NV FLEET purchased two FEDEX EXPRESS vehicles from DEFENDANTS' AGENT, DAA: 1999 Freightliner MT-45 truck (VIN No. 4UZA4FF41XCB81705) showing 86,115 odometer miles; and 1998 Freightliner MT-45 truck (VIN No. 4UZA4FF40WC897670) showing 106,349 odometer miles.  The Condition Reports for these

two trucks are attached hereto as **Exhibit K**, which is incorporated as though fully set forth herein. Both vehicles were listed at a higher price due to the advertised low odometer miles. When NV FLEET received the vehicles, the odometers had been replaced and the low miles advertised, and premium paid for, were not actual vehicle miles.

56.    On or around November 7, 2017, NV FLEET purchased a FEDEX EXPRESS vehicle from DEFENDANTS' AGENT, MANHEIM, located in Hatfield, Pennsylvania (VIN No. 4UZA4FF48VC646216) listed in the disclosures as a 1997 Freightliner MT-45 truck with 43,032 actual miles, with a gasoline engine. The vehicle was graded as 3.0 "AVERAGE" condition on the Condition Report. (Condition Report attached hereto as **Exhibit L**) All auction disclosures, advertising, and announcements reflected the same information. During the simulcast auction, the auctioneer even "touted" the low miles. The vehicle was listed at a higher price due to the advertised low odometer miles. Once again, when NV FLEET received the vehicle, it had a <u>diesel</u> engine, not gasoline, and a replaced odometer, not 43,032 actual miles. NV FLEET confirmed that the odometer had been replaced with the manufacturer of the vehicle. When NV FLEET received the title for the vehicle the misrepresented miles had been signed off on the title as **"ACTUAL MILEAGE"**. (Title attached hereto as **Exhibit M**)

57.    The overall condition of the FEDEX EXPRESS vehicle was very poor, not the stated 3.0 "AVERAGE" condition that was represented. NV FLEET requested DEFENDANTS' AGENT, MANHEIM, located in Nevada write a Condition Report for the vehicle (VIN No. 4UZA4FF48VC646216). When NV FLEET received the Condition Report from MANHEIM, the condition of the vehicle listed in the Condition Report was vastly different than what was used in the original Condition Report, advertising, announcements and disclosures. The odometer was still listed as operable however the vehicle was graded as 1.0 "ROUGH". (Condition Report attached hereto as **Exhibit N**) NV FLEET paid a premium for a gasoline engine, low miles, and the condition vehicle, none of which was accurate.

58.    NV FLEET has brought the actual condition of the DEFENDANTS' vehicle to the MANHEIM's attention, but MANHEIM has consistently failed and refused to fully resolve the matter or act in a cooperative way with NV FLEET. Instead, MANHEIM has consistently taken the position

that they do not own the vehicle, they did not create the Condition Report, and therefore have no responsibility towards NV FLEET.  Because of the fraudulent sales perpetrated by and on behalf of DEFENDANTS, MANHEIM, will no longer allow NV FLEET to purchase vehicles at approximately 145 of their auctions.

59.    Plaintiff is informed, believes, and based thereon alleges, that it has purchased numerous other vehicles from DEFENDANTS that contained replaced odometers and were advertised and sold as having less mileage than actually incurred by the vehicles.  DEFENDANTS have full knowledge of many odometer replacements, holds service records on each of the vehicles, but purposely omitted information regarding replaced odometers in order to obtain a higher price per vehicle at auction.  DEFENDANTS and DEFENDANTS' AGENTS refuse to release the service records on these vehicles to further perpetrate this fraud.  DEFENDANTS did not represent the actual condition of the vehicles that were being sold at auction.

*NV FLEET's Purchased FEDEX EXPRESS Vehicle was Resold*

60.    On September 12, 2016, NV FLEET purchased from ARI Auto Direct, DEFENDANTS' AGENT, a FEDEX 200 MT-45 truck (VIN No. 4UZA4FF47YCF78451).  The vehicle was facilitated and stored at MANHEIM in Hatfield, Pennsylvania.  On October 27, 2017, NV FLEET contacted MANHEIM to obtain a gate release for the vehicle to be transported but MANHEIM refused to provide the release.  MANHEIM further alleged that NV FLEET was not the purchaser of the vehicle and the vehicle had been sold to another buyer in March of 2017. However, the buyer had returned the vehicle.  After NV FLEET spent a significant amount of time and effort attempting to clear up the DEFENDANTS' AGENT's error, MANHEIM finally agreed to release the vehicle to NV FLEET.

61.    When the transporter arrived to pick up the vehicle, the vehicle was not in the condition represented in the disclosures, announcements, advertising and Condition Reports relied on by NV FLEET to purchase the vehicle.  There were no keys, and part of the unit was mechanically disabled, contrary to what was represented on the Condition Reports which stated the vehicle runs and drives.  The transporter was not able to pick up an inoperable vehicle and assessed a significant fee to NV FLEET for their services.  MANHEIM refused to reimburse NV FLEET for the expenses

1   incurred.

2       *62.*    When Layton of NV FLEET attempted to obtain the Condition Reports from NV

3   FLEET's ARI account, the Condition Reports had been deleted.  NV FLEET was unsuccessful in

4   getting the original Condition Reports for the FEDEX vehicle from its agents, ARI or MANHEIM.

5   Plaintiff is informed, believes, and based thereon contends that ARI and MANHEIM's refusals to

6   provide NV FLEET with the original Condition Reports were at the direction and control of

7   DEFENDANTS.  MANHEIM, acting on behalf and/or for the benefit of DEFENDANTS, further

8   required that NV FLEET pick up the vehicle "AS-IS" or they would begin assessing charges for

9   storage.

10       ***NV FLEET Has Been Prohibited from Purchasing More FEDEX EXPRESS Vehicles***

11       63.    In response to the numerous unsuccessful attempts by NV FLEET's authorized

12   representative, Layton, to resolve the misrepresentations in the announcements, disclaimers,

13   disclosures, and Condition Reports, on or about August 3, 2017, Layton received a letter from Laura

14   Gretencord, Senior Corporate Counsel of ADESA GG's parent company, ADESA ("ADESA"),

15   immediately terminating NV FLEET and Layton's rights to participate in "any of its physical or on-

16   line auctions" totaling approximately 75 auctions across North America.  The aforementioned letter

17   is attached hereto as **Exhibit O** and incorporated as though fully set forth herein.

18       64.    Additionally, in response to the numerous unsuccessful attempts by NV FLEET's

19   authorized representative, Layton, to resolve the misrepresentations in the disclosures,

20   announcements, advertising, and Condition Reports, on or around June 22, 2017, NV FLEET

21   received notice from MANHEIM that SOUTH BAY had terminated NV FLEET's right to purchase

22   FEDEX EXPRESS vehicles through SOUTH BAY.

23       65.    On September 28, 2017, NV FLEET received an email from DAA Senior Vice

24   President, Greg Mahugh, stating that NV FLEET privileges to purchase vehicles through FEDEX

25   AGENT, DAA, had been revoked.  (Attached hereto as **Exhibit P**)

26       66.    NV FLEET is continuing to receive notices from DEFENDANTS' AGENTS that NV

27   FLEET's rights to purchase FEDEX EXPRESS vehicles through DEFENDANTS' AGENTS are

28   terminated.  This domino effect of DEFENDANTS' AGENTS systematically excluding NV FLEET

from conducting business is a direct retaliation for NV FLEET's attempts to assert their right to recovery based on misrepresentations made in DEFENDANTS' disclosures, announcements, advertising, and Condition Reports.  Between August 7, 2017 and August 15, 2017, NV FLEET bid to purchase three FEDEX EXPRESS vehicles (VIN Nos.  4UZA5FAC5YCG64059, 4UZA5FFCOVC748954 and 4UZA4FF42XCA60228) through ARI Auto Direct.  After NV FLEET bid to purchase the vehicles, ARI sent written notifications to NV FLEET that the vehicles were already sold and no longer available for purchase.  After receiving these notifications, Layton spoke to the locations where the DEFENDANTS' vehicles were being facilitated for auction and confirmed that in fact these vehicles had not been sold and were still up for auction.  This has occurred on numerous occasion when NV FLEET has attempted to purchase the DEFENDANTS' vehicles through DEFENDANTS' AGENTS.  On or around September 28, 2017, NV FLEET contracted to purchase a 2005 Freightliner MT-45 truck (VIN No.  4UZACCCP75CN6113) via ARI Auto Direct.  The announcement, disclaimer, disclosure, and Condition Report listed the engine as a 6-cylinder diesel truck.  On October 10, 2017, the same vehicle was listed on MANHEIM's O.V.E.'s platform and NV FLEET agreed to purchase the vehicle so that it would not be sold to another buyer and would be unavailable to NV FLEET.  As a result of the many misrepresentations that had been made on DEFENDANTS' AGENTS' Condition Reports, NV FLEET reached out to AAA to obtain a detailed Condition Report of exactly what NV FLEET was purchasing.  AAA and ARI refused four separate times, both verbally and in writing, to provide NV FLEET with the original Condition Report however they did inform NV FLEET that the vehicle was inoperable.

67.     DEFENDANTS' AGENT, ARI, refused to release the Condition Report on the vehicle.  DEFENDANTS' AGENT, MANHEIM, refused to assist in obtaining the Condition Report.  NV FLEET was advised by DEFENDANTS' AGENT, MANHEIM, that the misrepresentation made did not matter and if NV FLEET did not pay for the vehicle, NV FLEET would be reported to the National Auction Insurance Agency as a non-paying dealer and be banned nationally from ALL auctions, putting NV FLEET out of business.

68.     Upon further investigation, it was discovered that this vehicle was actually a "Hybrid" FEDEX EXPRESS vehicle and not the 6-cylinder diesel represented at the time of purchase.  AAA

management was informed in writing several times that they were misrepresenting the vehicle.  On November 10, 2017, AAA sold the vehicle to another buyer without changing the Condition Report, even after being informed that they were misrepresenting the vehicle.  NV FLEET was then listed as a non-paying buyer on AAA's auction site, Auction Pipeline.  As a result, NV FLEET is no longer able to purchase vehicles through Auction Pipeline.

69.     On or around December 14, 2017, counsel for DEFENDANTS' AGENT MANHEIM, after another odometer and vehicle type misrepresentation, gave Layton an ultimatum.  MANHEIM attempted to cause NV FLEET to relinquish its rights to recover damages in exchange for reinstatement.  In the email (attached hereto as **Exhibit Q**), MANHEIM's counsel states: "Manheim cannot allow [Layton] continued access to its sales to do unsupervised litigation discovery and evidence-gathering and to increase his alleged damages." On December 27, 2017, NV FLEET was banned nationally from participating in any MANHEIM auctions.  Layton and NV FLEET were once again being barred from conducting business for trying to recover damages as a result of the DEFENDANTS' inaccurate Condition Reports.

70.     The ability to purchase and resell used commercial vehicles is the core of NV FLEET's business, and together with that the need to provide prospective buyers with accurate and true representations of the vehicles being considered and selected for purchase.  As such, the immediate and permanent termination of NV FLEET from participation with DEFENDANTS' AGENTS has and will cause significant harm to its business.  Plaintiff believes, and based thereon alleges, that the decision to terminate NV FLEET's participation was requested, condoned, authorized, permitted, sanctioned, and/or promoted by DEFENDANTS to ensure that its practice and the practice of the DEFENDANTS' AGENTS, and each of them, of publishing false and inaccurate Condition Reports would continue unhindered.

## FIRST CAUSE OF ACTION

### Breach of Contract

71.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

72.     NV FLEET contracted to purchase DEFENDANTS' used vehicles, by and through its

DEFENDANTS' AGENTS under the direction and control of DEFENDANTS.  NV FLEET was provided disclosures, announcements, advertising, and Condition Reports from which to select used FEDEX EXPRESS vehicles to purchase.  NV FLEET relied on the representations made on the disclosures, announcements, advertising, and Condition Reports which were material to its decision to purchase the vehicles.  Each FEDEX EXPRESS vehicle purchased by Plaintiff represents a valid Contract ("Contract" or collectively "Contracts") between Plaintiff and DEFENDANTS in that NV FLEET paid money in exchange for the used FEDEX EXPRESS trucks represented in the disclosures, announcements, advertising, and Condition Reports.

73.    NV FLEET did all, or substantially all, of the significant things that the Contracts required it to do, or it was excused from having to do those things.

74.    DEFENDANTS breached the Contracts for the following reasons, at a minimum:

a.    the vehicles delivered to NV FLEET were not the vehicles purchased by NV FLEET, as represented in the disclosures, announcements, advertising, and Condition Reports;

b.    vehicles that were described in the disclosures, announcements, advertising, and Condition Reports as having air conditioners did not have air conditioners;

c.    vehicle described as a Freightliner diesel truck was not a Freightliner truck or a diesel vehicle;

d.    a vehicle that was described as in working condition was not actually in working condition; and,

e.    actual vehicle mileage was not accurately represented in the disclosures, announcements, advertising, and Condition Reports nor disclosure of replaced odometers.

75.    By reason of DEFENDANTS' breach of contract, Plaintiff has suffered and continues to suffer compensatory, consequential, incidental, and other damages according to proof.  At a minimum, NV FLEET was unable to resell the vehicles purchased to clients who were ready to buy them.  NV FLEET also incurred significant costs related to the repair of the erroneous vehicles and additional transport services.   NV FLEET continues to suffer because it has not been made whole.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

76.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

77.     All conditions required for DEFENDANTS' performance, by and through its DEFENDANTS' AGENTS, had occurred or were excused.

78.     DEFENDANTS, by and through its DEFENDANTS' AGENTS and the custom and practice DEFENDANTS promoted, requested, acquiesced to, condoned and/or advanced, unfairly interfered with NV FLEET's right to receive the benefit of the contract when they, at a minimum:

   a.     failed and refused to pay for the costs to return the erroneously delivered FEDEX EXPRESS vehicles even though they admitted that the Condition Reports were in error;

   b.     failed and refused to take responsibility for resolving the problems, and passed NV FLEET off to someone else to do the same thing;

   c.     gave NV FLEET the "runaround" instead of actively moving towards a positive resolution; and,

   d.     caused and/or contributed to the termination of Layton and NV FLEET's participation in further auctions with DEFENDANTS' AGENTS.

79.     NV FLEET was harmed as a result of the standards, customs, policies, and/or practices, ratified, acquiesced, directed, controlled, permitted, and/or allowed by DEFENDANTS over the conduct of the DEFENDANTS' AGENTS.  By reason of DEFENDANTS' breach of covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer, compensatory, consequential, incidental, and other damages according to proof.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**

80.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

81.     DEFENDANTS sold goods in the form of used vehicles to NV FLEET through the FEDEX AGENTS, and each of them.  The announcements, disclaimers, disclosures, and Condition

Reports on each vehicle contained affirmations of facts made on the condition of the vehicles.  The DEFENDANTS' AGENTS, and each of them, on behalf of DEFENDANTS, made warranties regarding the quality and condition of the goods by listing vehicle specifications on the disclosures, announcements, advertising, and Condition Reports.  The Condition Reports were prepared at the request, direction, instruction, and/or with the consent, knowledge, and/or acquiescence of DEFENDANTS.

82.    DEFENDANTS breached the express warranty by delivering vehicles that did not meet the standards contained in the affirmative facts and guarantees listed on the disclosures, announcements, advertising, and Condition Reports.

83.    Due to DEFENDANTS' breach of express warranty, by failing to provide the vehicles as described in the announcements, disclaimers, disclosures, and Condition Reports, NV FLEET suffered damages according to proof.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

84.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

85.    DEFENDANTS are in the business of selling its used commercial vehicles to consumers through the DEFENDANTS' AGENTS, and each of them.  NV FLEET purchased FEDEX EXPRESS vehicles through the DEFENDANTS' AGENTS, and each of them.  The vehicles sold to NV FLEET were not the same quality as those generally accepted in the trade as they did not meet the quality conditions described on the announcements, disclaimers, disclosures, and Condition Reports.  Therefore, they were not fit for the ordinary purpose for which they were purchased to be used.

86.    DEFENDANTS breached the implied warranty of merchantability by, at a minimum, failing to provide the quality that a buyer reasonably would expect based on the disclosures, announcements, advertising, and Condition Reports.

87.    NV FLEET suffered damages according to proof as a proximate result of

DEFENDANTS' breach.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

### FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose

88.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

89.     NV FLEET purchased used FEDEX EXPRESS vehicles for a specific use, to be used in the Las Vegas, Nevada market.  Further, another FEDEX EXPRESS vehicle was purchased to be used as a diesel vehicle and in working condition.  The DEFENDANTS' AGENTS, at the direction, request, and/or on behalf of DEFENDANTS, purported through the disclosures, announcements, advertising, and Condition Reports that the vehicles purchased were fit for the purpose intended.

90.     NV FLEET purposefully informed ARI and ADESA GG during the bargaining process of his client's desire for vehicles with air conditioning due to the geographical area they were intended to be used.

91.     Further, NV purposefully reached out to DEFENDANTS' AGENTS to confirm that the vehicles being purchased were in working condition.

92.     NV FLEET justifiably relied on AAA, ARI, ADESA GG, COPART - P, COPART - H, DAA, MANHEIM, and SOUTH BAY as agents of DEFENDANTS acting in accordance with DEFENDANTS' direction, instructions, requests, protocols, and/or guidelines, to provide the true and accurate condition of the vehicles being sold.  NV FLEET did not have the opportunity to physically inspect the vehicles prior to purchase and relied on the disclosures, announcements, advertising, and Condition Reports published by the DEFENDANTS' AGENTS to determine if the vehicles were fit for the purpose for which they were being purchased.  Plaintiff is informed, believes, and based thereon alleges, that this is standard custom and practice for the used commercial vehicle resale industry.

93.     NV FLEET was harmed because the vehicles purchased were not suitable for their intended use, and was damaged in amounts according to proof as a proximate result of DEFENDANTS' breach of the implied warranty of fitness for a particular purpose.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

## SIXTH CAUSE OF ACTION
### Negligent Hiring

94.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

95.    DEFENDANTS hired the DEFENDANTS' AGENTS, and each of them, to sell its used vehicles on its behalf.

96.    Plaintiff is informed, believes, and based thereon alleges, that at all times herein mentioned, the DEFENDANTS' AGENTS, and each of them, were unfit and incompetent to perform the work for which they were hired.  The DEFENDANTS' AGENTS incompetently created inaccurate disclosures, announcements, advertising, and Condition Reports on behalf of DEFENDANTS.

97.    DEFENDANTS knew or should have known that the DEFENDANTS' AGENTS, and each of them, were incompetent due to the inaccuracy of the disclosures, announcements, advertising, and Condition Reports created to sell used FEDEX EXPRESS vehicles.  Further, the inaccuracies in the disclosures, announcements, advertising, and Condition Reports would have been discovered and cured but for the negligent supervision of DEFENDANTS.

98.    The incompetence of the DEFENDANTS' AGENTS, and each of them, while acting on behalf of DEFENDANTS, harmed NV FLEET and continue to harm NV FLEET in amounts according to proof.  DEFENDANTS' negligence in hiring, supervising and/or retaining the DEFENDANTS' AGENTS, and each of them was a proximate cause and substantial factor in causing NV FLEET harm.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

## SEVENTH CAUSE OF ACTION
### Intentional Interference with Contractual Relations

### First Count – Interference Between Plaintiff and its Clients

99.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

100.     NV FLEET is in the business of buying and reselling used commercial vehicles.  As such, it enters into valid contracts with clients wherein NV FLEET looks for and purchases the vehicles that they desire, and then resells it to them.   NV FLEET relies on the accuracy of the disclosures, announcements, advertising, and Condition Reports when contracting with its clients regarding the used FEDEX EXPRESS vehicles that will be purchased for them.

101.     DEFENDANTS, by and through its DEFENDANTS' AGENTS, acting on behalf, and/or under its direction, authorization, instruction, request, and/or with its knowledge, acquiescence, and/or consent of DEFENDANTS, knew about the contracts between NV FLEET and its clients, in that Layton would regularly discuss these clients with the DEFENDANTS' AGENTS in connection with NV FLEET's purchase of the vehicles on their behalf.

102.     DEFENDANTS allowed, authorized, directed, instructed, permitted, acquiesced to, and/or consented to false disclosures, announcements, advertising, and Condition Reports being used in connection with the sale of its used vehicles, with intent to or disregard for the likelihood that it would result in NV FLEET being harmed from ultimately purchasing used FEDEX EXPRESS vehicles that are different from what its clients intended or desired, and NV FLEET being unable to fulfill its contractual obligations to its clients.

103.     As a proximate result of DEFENDANTS' interference with NV FLEET's contracts with its clients, NV FLEET has suffered damages in amounts to be proven at trial.

104.     The conduct of DEFENDANTS was despicable and subjected NV FLEET to a cruel and unjust hardship in conscious disregard for their rights, so as to justify an award of exemplary and punitive damages.

**Second Count – Interference Between Plaintiff and DEFENDANTS' AGENTS**

105.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

106.     Prior to August 3, 2017, there existed a valid contract between NV FLEET and ADESA allowing NV FLEET to participate on ADESA's platforms and purchase used vehicles.

107.    Prior to June 22, 2017, there existed a valid contract between NV FLEET and SOUTH BAY allowing NV FLEET to participate on SOUTH BAY's platforms and purchase used vehicles.

108.    Prior to September 28, 2017, there existed a valid contract between NV FLEET and DAA allowing NV FLEET to participate on DAA's platforms and purchase used vehicles.

109.    Prior to November 10, 2017, there existed a valid contract between NV FLEET and AAA allowing NV FLEET to participate on AAA's platforms and purchase used vehicles.

110.    Prior to December 14, 2017, there existed a valid contract between NV FLEET and MANHEIM allowing NV FLEET to participate on MANHEIM's platforms and purchase used vehicles.

111.    NV FLEET continues to receive notices from additional DEFENDANTS' AGENTS that NV FLEET had existing contracts with that will no longer allow NV FLEET to participate in auctions to purchase FEDEX EXPRESS vehicles.

112.    Plaintiff is informed, believes, and based thereon alleges, that, at all times herein mentioned, DEFENDANTS knew of the existence of the contract between NV FLEET and DEFENDANTS' AGENTS because NV FLEET was purchasing DEFENDANTS' vehicles through authorized agents of DEFENDANTS.

113.    Plaintiff is informed, believes, and based thereon alleges, that DEFENDANTS have allowed false disclosures, announcements, advertising, and Condition Reports to be generated and relied upon in connection with the sale of its used vehicles, and has further promoted, allowed, condoned, and/or authorized a custom and practice among the DEFENDANTS' AGENTS whereby they refuse responsibility for the false disclosures, announcements, advertising, and Condition Reports and fraudulent sales and shift blame, all with the intent to or disregard for the likelihood that it would cause harm to NV FLEET in a breakdown of the contractual relationship between NV FLEET and the DEFENDANTS' AGENTS.  DEFENDANTS' AGENTS have already terminated their contractual relationship with Plaintiff because of DEFENDANTS' conduct.

114.    As a proximate result of DEFENDANTS' interference with NV FLEET's contract with DEFENDANTS' AGENTS, NV FLEET has suffered damages in amounts to be proven at trial.

115.    The conduct of DEFENDANTS was despicable and subjected NV FLEET to a cruel

and unjust hardship in conscious disregard for their rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

### EIGHTH CAUSE OF ACTION
**Intentional Interference with Prospective Economic Relations**
**First Count – Interference Between Plaintiff and Prospective Clients**

116.   Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

117.   NV FLEET is in the business of buying and reselling used commercial vehicles.  As such, it enjoys a prospective economic relationship with its existing clients and buyers of used commercial vehicles.

118.   DEFENDANTS, by and through its DEFENDANTS' AGENTS, acting on behalf, and/or under its direction, authorization, instruction, request, and/or with its knowledge, acquiescence, and/or consent of DEFENDANTS, knew about the prospective economic relationship between NV FLEET and its existing clients and buyers of used commercial vehicles, in that Layton would regularly discuss the nature of his business with the DEFENDANTS' AGENTS while purchasing from them.

119.   DEFENDANTS allowed, authorized, directed, instructed, permitted, acquiesced to, and/or consented to false disclosures, announcements, advertising, and Condition Reports being used in connection with the sale of its used vehicles, with intent to or disregard for the likelihood that it would result in harm to NV FLEET from ultimately purchasing used FEDEX EXPRESS vehicles that are not as represented on disclosures, announcements, advertising, and Condition Reports and being unable to make accurate representations to its existing clients and prospective buyers regarding the used vehicles NV FLEET can provide.

120.   As a proximate result of DEFENDANTS' interference with NV FLEET's prospective economic relationships with its existing clients and buyers of used commercial vehicles, NV FLEET has suffered damages in amounts to be proven at trial.

121.   The conduct of DEFENDANTS was despicable and subjected NV FLEET to a cruel

1   and unjust hardship in conscious disregard for their rights, so as to justify an award of exemplary and

2   punitive damages.

3                   **Second Count – Interference Between Plaintiff and DEFENDANTS' AGENTS**

4           122.    Plaintiff hereby incorporates by reference the allegations contained in the above

5   referenced paragraphs as though fully set forth herein.

6           123.    At all times herein mentioned, there existed a prospective economic relationship

7   between NV FLEET and the DEFENDANTS' AGENTS in that NV FLEET transacted with the

8   DEFENDANTS' AGENTS through various platforms in the purchase and resale of used FEDEX

9   EXPRESS commercial vehicles.

10          124.    Plaintiff is informed, believes, and based thereon alleges, that, at all times herein

11  mentioned, DEFENDANTS knew of the existence of the prospective economic relationships between

12  NV FLEET and the DEFENDANTS' AGENTS because NV FLEET was purchasing

13  DEFENDANTS' used vehicles through the DEFENDANTS' AGENTS, and the DEFENDANTS'

14  AGENTS are authorized representatives of DEFENDANTS.

15          125.    Plaintiff is informed, believes, and based thereon alleges, that DEFENDANTS have

16  allowed false disclosures, announcements, advertising, and Condition Reports to be generated and

17  relied upon in connection with the sale of its used vehicles, and has further promoted, allowed,

18  condoned, and/or authorized a custom and practice among the DEFENDANTS' AGENTS whereby

19  they refuse responsibility for the false disclosures, announcements, advertising, and Condition

20  Reports  and shift blame for the fraudulent sales of DEFENDANTS' vehicles, all with the intent to

21  or disregard for the likelihood that it would cause harm to NV FLEET and result in a breakdown of

22  the prospective economic relationships between NV FLEET and the DEFENDANTS' AGENTS.

23  DEFENDANTS' AGENTS have already terminated their future prospective economic relationship

24  with Plaintiff because of DEFENDANTS' conduct.

25          126.    As a proximate result of DEFENDANTS' interference with NV FLEET's prospective

26  economic relationships with the DEFENDANTS' AGENTS, NV FLEET has suffered damages in

27  amounts to be proven at trial.

28          127.    The conduct of DEFENDANTS was despicable and subjected NV FLEET to a cruel

and unjust hardship in conscious disregard for their rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

## NINTH CAUSE OF ACTION
### Negligent Interference with Contractual Relations
### First Count – Interference Between Plaintiff and its Clients

128.   Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

129.   DEFENDANTS, by and through its DEFENDANTS' AGENTS, acting on behalf, and/or under its direction, authorization, instruction, request, and/or with its knowledge, acquiescence, and/or consent of DEFENDANTS, sells used FEDEX EXPRESS vehicles that are then purchased and resold by NV FLEET to its clients.

130.   DEFENDANTS knew or should have known that its failure to provide or instruct the DEFENDANTS' AGENTS to provide accurate disclosures, announcements, advertising, and Condition Reports for their used vehicles for sale would result in a disruption in NV FLEET's contracts with its clients.

131.   DEFENDANTS nevertheless allowed, authorized, directed, instructed, permitted, acquiesced to, and/or consented to false disclosures, announcements, advertising, and Condition Reports being used in connection with the sale of its used vehicles.

132.   As a proximate result of DEFENDANTS' negligence, NV FLEET has suffered damages in amounts to be proven at trial.

### Second Count – Interference between Plaintiff and DEFENDANTS' AGENTS

133.   Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

134.   DEFENDANTS knew or should have known that its failure to monitor the accuracy of disclosures, announcements, advertising, and Condition Reports and its promotion, authorization, request, acquiescence, and/or consent to the DEFENDANTS' AGENTS denying responsibility and shifting blame would result in a disruption in NV FLEET's contracts with the DEFENDANTS'

1    AGENTS.

2        135.    DEFENDANTS nevertheless have allowed false disclosures, announcements,

3    advertising, and Condition Reports to be generated and relied upon in connection with the sale of its

4    used vehicles, and have further promoted, allowed, condoned, and/or authorized a custom and

5    practice among the DEFENDANTS' AGENTS whereby they refuse responsibility for the false

6    disclosures, announcements, advertising, and Condition Reports and fraudulent sales and shift blame.

7        136.    As a proximate result of DEFENDANTS' negligence, NV FLEET's contract with

8    DEFENDANTS' AGENTS have been disrupted, and NV FLEET has suffered damages in amounts

9    to be proven at trial.

10       WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as

11   more fully set forth below.

12                          **TENTH CAUSE OF ACTION**
             **Negligent Interference with Prospective Economic Relations**

13        **First Count – Interference Between Plaintiff and Prospective Clients**

14       137.    Plaintiff hereby incorporates by reference the allegations contained in the above

15   referenced paragraphs as though fully set forth herein.

16       138.    DEFENDANTS knew or should have known that its failure to provide or instruct the

17   DEFENDANTS' AGENTS to provide accurate disclosures, announcements, advertising, and

18   Condition Reports for their used vehicles for sale would result in a disruption in NV FLEET's

19   prospective economic relationships with existing clients and others in the market for used commercial

20   vehicles.

21       139.    DEFENDANTS nevertheless allowed, authorized, directed, instructed, permitted,

22   acquiesced to, and/or consented to false disclosures, announcements, advertising, and Condition

23   Reports being used in connection with the sale of its used vehicles.

24       140.    As a proximate result of DEFENDANTS' negligence, NV FLEET has suffered

25   damages in amounts to be proven at trial.

26        **Second Count – Interference Between Plaintiff and DEFENDANTS' AGENTS**

27       141.    Plaintiff hereby incorporates by reference the allegations contained in the above

28   referenced paragraphs as though fully set forth herein.

142.    DEFENDANTS knew or should have known that its failure to monitor the accuracy of the disclosures, announcements, advertising, and Condition Reports and its promotion, authorization, request, acquiescence, and/or consent to the DEFENDANTS' AGENTS denying responsibility and shifting blame would result in a disruption in NV FLEET's prospective economic relationships with the DEFENDANTS' AGENTS.

143.    DEFENDANTS nevertheless have allowed false disclosures, announcements, advertising, and Condition Reports to be generated and relied upon in connection with the sale of its used vehicles, and have further promoted, allowed, condoned, and/or authorized a custom and practice among the DEFENDANTS' AGENTS whereby they refuse responsibility for the false disclosures, announcements, advertising, and Condition Reports and fraudulent sales and shift blame.

144.    As a proximate result of DEFENDANTS' negligence, NV FLEET has suffered damages in amounts to be proven at trial.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

### ELEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

145.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

146.    Plaintiff is informed, believe, and based thereon alleges, that, at all times herein mentioned, the DEFENDANTS' AGENTS, and each of them, who made the false representations on the disclosures, announcements, advertising, and Condition Reports, are the authorized representatives of DEFENDANTS with regard to the sale of used FEDEX EXPRESS vehicles and, at the times the representations were made, were acting in the course and scope of their employment and authority with DEFENDANTS.

147.    The representations made on the disclosures, announcements, advertising, and Condition Reports attached hereto as Exhibits and incorporated as though fully set forth herein, were false.  Vehicles that were represented as having working air conditioners did not have air conditioners.  A vehicle that was represented as being a Freightliner diesel truck was, in actuality, a Ford gasoline engine truck.  Vehicles that were listed as "runs and drives" were inoperative and required towing.

Vehicles with replaced odometers were not represented as such.

148.    Plaintiff is informed, believes, and based thereon alleges, that, at the time the representations were made, DEFENDANTS promoted, authorized, requested, acquiesced, and/or consented to policies, practices, and procedures by the DEFENDANTS' AGENTS wherein they knew the representations made were false, and made them with the intent to induce prospective buyers of FEDEX EXPRESS used vehicles such as NV FLEET to act in reliance on the representations, or with the expectation that they would so act.   DEFENDANTS further consented to the false disclosures, announcements, advertising, and Condition Reports in order to attain a higher price per vehicle from buyers.

149.    At the time the representations on the disclosures, announcements, advertising, and Condition Reports were made, NV FLEET could not have had knowledge of their falsity and believed them to be true.  In reliance on the representations in the disclosures, announcements, advertising, and Condition Reports, NV FLEET was induced to, and did, in fact, purchase several vehicles, as described above.  Had NV FLEET known the actual facts, it would not have purchased any of the vehicles or would have purchased them at a greatly reduced price. NV FLEET's reliance was justified because it was not uncommon for commercial vehicle dealers to purchase vehicles from distant locations and to rely on disclosures, announcements, advertising, and Condition Reports instead of a physical inspection when purchasing their vehicles.

150.    As a proximate result of the fraudulent conduct of DEFENDANTS, NV FLEET was forced to expend additional money to repair and transport purchased vehicles that were inaccurately represented in their disclosures, announcements, advertising, and Condition Reports.  Additionally, as a result of DEFENDANTS' conduct NV FLEET was unable to fulfill obligations made to its clients and suffered other injuries and damages to be proven at trial.

151.    The conduct of DEFENDANTS, and each of them, was despicable and subjected NV FLEET to a cruel and unjust hardship in conscious disregard for their rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

# TWELFTH CAUSE OF ACTION
**Negligent Misrepresentation**

152.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

153.    Plaintiff is informed, believes, and based thereon alleges, that, at the time the representations were made, DEFENDANTS promoted, authorized, requested, acquiesced, and/or consented to policies, practices, and procedures by the DEFENDANTS' AGENTS wherein they had no reasonable grounds to believe that the representations they were making on the disclosures, announcements, advertising, and Condition Reports were true in that the misrepresented conditions were obvious and easy to detect on the vehicles, such as whether the unit had air conditioning or the vehicle itself was operational.

154.    DEFENDANTS, and each of them, made the representations with the intention of inducing prospective purchasers of FEDEX EXPRESS used vehicles such as NV FLEET to act in reliance on the representations, or with the expectation that they would so act.

155.    At the time the representations on the disclosures, announcements, advertising, and Condition Reports were made, NV FLEET had no knowledge of their falsity and believed them to be true.  NV FLEET's reliance was justified because it was not uncommon for commercial vehicle dealers to purchase vehicles from distant locations and to rely on disclosures, announcements, advertising, and Condition Reports instead of a physical inspection when purchasing their vehicles. In reliance on the representations in the disclosures, announcements, advertising, and Condition Reports, NV FLEET was induced to, and did, in fact, purchase several vehicles, as described above. Had NV FLEET known the actual facts, it would not have purchased any of the vehicles or would have purchased them at a reduced price.

156.    As a proximate result of the fraudulent conduct of DEFENDANTS, NV FLEET was forced to expend additional money to repair and transport vehicles that were not as represented in their disclosures, announcements, advertising, and Condition Reports, unable to fulfill obligations made to its clients, and suffered other injuries and damages to be proven at trial.

//

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

## THIRTEENTH CAUSE OF ACTION
### Unfair Business Practices

157.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

158.    The above described conduct by the DEFENDANTS that constitutes unfair business practices in violation of California Business and Professions Code §17000, *et seq.*

159.    Plaintiff was harmed and suffered damages as a proximate result of the wrongful conduct of DEFENDANTS, and each of them, in amounts to be proven at trial.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

## FOURTEENTH CAUSE OF ACTION
### Restraint of Trade

160.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

161.    Plaintiff is informed, believes, and based thereupon alleges, that DEFENDANTS acted in combination, conspiracy, and concert with the DEFENDANTS' AGENTS to falsely increase the prices of used FEDEX EXPRESS vehicles through the creation and publication of inaccurate disclosures, announcements, advertising, and Condition Reports, and the refusal to deal with any purchaser who tries to expose their fraudulent practices.  This constitutes an unreasonable restraint of trade of interstate commerce in violation of the Sherman Act, 15 U.S.C. § 1.  DEFENDANTS' business activities have a substantial effect on interstate commerce, and the buying and selling of used FEDEX EXPRESS vehicles involves a substantial amount of interstate commerce.

162.    Plaintiff is informed, believes, and based thereupon alleges, beginning at a time currently unknown to NV FLEET, and continuing to the present, DEFENDANTS and DEFENDANTS' AGENTS, and each of them, entered into and engaged in a continuing unlawful trust in restraint of trade and commerce, and described herein, in violation of California Business and

Profession Code Section 16720, in the manner described above.

163.    The combination and conspiracy have had, among other things, the effect of suppressing competition for used commercial vehicles because it promotes false advertising, fraudulent sales, and reduces the number of prospective purchasers to those who are willing to deal in bad business practices.  NV FLEET has been injured and will continue to be injured with fewer opportunities to purchase used commercial vehicles as a direct and indirect result of the actions of DEFENDANTS and the DEFENDANTS' AGENTS.

164.    As a direct and proximate result of the violations of the Sherman Act and the Cartwright Act, as described herein, Plaintiff is entitled to injunctive relief and the costs of suit.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

### FIFTEENTH CAUSE OF ACTION
#### Horizontal Restraints

165.    Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

166.    NV FLEET is informed and believes and thereupon alleges that DEFENDANTS' AGENTS, acting under the direction and control of DEFENDANTS, agreed not to deal with NV FLEET or to deal with NV FLEET so long as they did not assert claims against or try to recover damages as a result of the misrepresentations made on FEDEX EXPRESS vehicle disclosures, announcements, advertising, and Condition Reports.

167.    DEFENDANTS' AGENTS, under the direction and control of DEFENDANTS, agreed to refuse to sell to NV FLEET.

168.    As a result of DEFENDANTS' refusal to sell to NV FLEET, NV FLEET was harmed and continues to be harmed.

169.    DEFENDANTS' conduct was a substantial factor in causing NV FLEET's harm.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

//

1

## SIXTEENTH CAUSE OF ACTION
### Wire Fraud

2

3        170.    Plaintiff hereby incorporates by reference the allegations contained in the above

4    referenced paragraphs as though fully set forth herein.

5        171.    DEFENDANTS voluntarily and intentionally devised and participated in a scheme to

6    defraud customers purchasing FEDEX EXPRESS vehicles via interstate commerce from

7    DEFENDANTS' AGENTS under the direction and control of DEFENDANTS by misrepresenting

8    the condition of FEDEX EXPRESS vehicles being sold.

9        172.    DEFENDANTS did so with an intent to defraud, in violation of 18 U.S.C. § 1343. By

10    misrepresenting the condition of the FEDEX EXPRESS vehicles being sold DEFENDANTS, and

11    DEFENDANTS' AGENTS working under the direction and control of DEFENDANTS were able to

12    procure higher profits.  In turn, DEFENDANTS were able to receive a higher rebate per vehicle sold.

13        173.    It was reasonable foreseeable that interstate wire communications would be used

14    because the FEDEX EXPRESS vehicles were advertised and sold throughout the United States over

15    the internet.

16        174.    Interstate wire communications were in fact used.  FEDEX EXPRESS vehicles were

17    advertised and misrepresented through disclosures, announcements, and Condition Reports

18    disseminated over the internet through various DEFENDANTS' AGENTS' websites under the

19    direction and control of DEFENDANTS.  NV FLEET purchased DEFENDANTS' vehicles located

20    across state lines by viewing disclosures, announcements, advertising, and Condition Reports on

21    FEDEX EXPRESS vehicles on the internet and then making purchases based on the advertised

22    disclosures, announcements, and Condition Reports over the phone and through internet websites.

23        175.    NV FLEET was damaged as a result.

24        WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as

25    more fully set forth below.

26    //

27    //

28    //

COMPLAINT FOR DAMAGES

## SEVENTEENTH CAUSE OF ACTION
## VIOLATION OF 49 UNITED STATES CODE § 32701 ET SEQ.

176.     Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

177.     The DEFENDANTS violated the federal Vehicle Information and Cost Savings Act (the "Odometer Act" or the "Act"), 49 U.S.C. §  32701 et seq.   Title 49.  Section 578.6 (f)(2) of Title 49 U.S.C. states "A person that violates 49 U.S.C. Chapter 327 or a regulation prescribed or order issued thereunder, with intent to defraud, is liable for three times the actual damages or $10,281, whichever is greater."

178.     Under 49 U.S.C. §  32705 (a)(1) Disclosure Requirements. "ownership of a motor vehicle shall give the transferee the following written disclosure:

(A) Disclosure of the cumulative mileage registered on the odometer.
(B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

(2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation."

179.     Exceptions under 49 Code of Federal Regulations "C.F.R." § 580.17 apply to vehicles 10 years or older or commercial vehicles having a Gross Vehicle Weight Rating of weight of more than 16,000 lbs.  However, under C.F.R. §§ 580.5 (c),(d), and (e), this exception does not apply when actual odometer miles are represented as a term of the sale and actual miles as signed off on the title instead of "exempt".  Federal odometer law prohibits the disconnection, resetting, or alteration of a motor vehicle's odometer with intent to change the number of miles indicated thereon.  This law applies to a vehicle of any age, no matter who is selling it. (49 U.S.C. §  32701 et seq.)

180.     Here the DEFENDANTS knowingly advertised mileage that was not accurate, and charged a premium for the low mileage misrepresented.   The title was received with the misrepresented mileage listed as actual mileage.  When the vehicle was received by NV FLEET, the odometer had actually been replaced; and the low mileage advertised in the disclosures,

announcements, advertising, and Condition Report, that NV FLEET paid a premium for, was not the actual mileage of the vehicle.

181.   NV FLEET was damaged as a proximate result of DEFENDANTS' conduct in amounts to be proven at trial.

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS, and each of them, as more fully set forth below.

**EIGHTEENTH CAUSE OF ACTION**
**Declaratory Relief**

182.   Plaintiff hereby incorporates by reference the allegations contained in the above referenced paragraphs as though fully set forth herein.

183.   An actual controversy has arisen and now exists between NV FLEET and DEFENDANTS' AGENTS regarding NV FLEET's right to purchase any vehicles sold by DEFENDANTS' AGENTS under the direction and control of DEFENDANTS.   DEFENDANTS' AGENTS have barred NV FLEET, and intend to permanently ban NV FLEET, from purchasing vehicles.  The ability to purchase and resell used commercial vehicles is essential to NV FLEET's business.  As such, the termination of NV FLEET from participation with DEFENDANTS' AGENTS has and will cause significant harm to its business.

184.   NV FLEET desires a judicial determination as to the rights of NV FLEET to purchase DEFENDANTS' vehicles through DEFENDANTS' AGENTS.

185.   A judicial declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties regarding the NV FLEET's right to purchase DEFENDANTS vehicles through DEFENDANTS' AGENTS.

**PRAYER FOR RELIEF**

1.   For reliance, restitution and/or expectation damages, according to proof;

2.   For special and general damages, according to proof;

3.   For punitive and exemplary damages, according to proof;

4.   For treble damages, according to proof;

5.   For prejudgment interest and post-judgment interest as allowed by law, according to

1    proof;

2    6.    A declaration that the unlawful combination and conspiracy alleged in this complaint

3          is an unreasonable restraint of trade or commerce in violation of the Cartwright Act;

4    7.    An injunction enjoining, preliminarily and permanently, DEFENDANTS from

5          continuing the unlawful combination and conspiracy alleged in this complaint;

6    8.    An award to Plaintiff of damages, as provided by law, and judgment in favor of

7          Plaintiff against Defendant, in an amount to be trebled in accordance with antitrust

8          law;

9    9.    Reinstatement of NV FLEET's right to purchase DEFENDANTS' vehicles through

10         DEFENDANTS' AGENTS;

11   10.   For costs of suit herein incurred; and,

12   11.   For such other and further relief as the Court deems just and proper.

13

14   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury

15   in this action on all issues so triable.

16

17   Dated: April 17, 2018                    GALLAGHER JONES LLP

18

19                                             TANYA HARRIS

20                                             Attorneys for Plaintiff
                                               NEVADA FLEET LLC

21

22

23

24

25

26

27

28