1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   NEVADA FLEET LLC,                          No. 2:17-cv-01732-TLN-KJN

12              Plaintiff,

13        v.                                    **ORDER**

14   FEDEX CORPORATION; FEDERAL
     EXPRESS CORPORATION; and DOES 2-
15   50, inclusive,

16              Defendants.

17

18

19        This matter is before the Court on Defendants FedEx Corporation ("FedEx") and Federal

20   Express Corporation's ("FedEx Express") (collectively, "Defendants") Motion for Judgment on

21   the Pleadings.  (ECF No. 36.)  Plaintiff Nevada Fleet LLC ("Plaintiff") opposed the motion.

22   (ECF No. 39.)  Defendants replied.  (ECF No. 41.)  For the reasons discussed herein, the Court

23   GRANTS Defendants' Motion.  (ECF No. 36.)

24   ///

25   ///

26   ///

27   ///

28   ///

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2          This case arises from the sale of Defendants' used commercial vehicles to Plaintiff

3    through third-party vehicle auction companies and other commercial vehicle resellers.  (*See* ECF

4    No. 27.)  Plaintiff alleges FedEx, through its alter ego FedEx Express, directed at least nine third-

5    party companies and resellers (the "Third Parties")[1] to sell used commercial vehicles owned by

6    FedEx Express on Defendants' behalf.  (*See id.* at ¶¶ 30–32.)  Plaintiff alleges the Third Parties,

7    at the direction of Defendants, created false condition reports that misled Plaintiff as to the

8    condition of Defendants' used commercial vehicles and induced Plaintiff to purchase the vehicles.

9    (*See id.* at ¶¶ 33–36.)  Defendants allegedly directed the Third Parties to not only refuse

10   responsibility for the false reports, but also to refuse to resolve or compensate Plaintiff for its

11   damages caused by the misrepresentations.  (*See id.* at ¶¶ 37–38.)  For example, Plaintiff alleges

12   the false reports and advertisements included misrepresentations regarding: (1) the vehicles

13   having gasoline or diesel engines (*id.* at ¶¶ 39–40); (2) the vehicles having air conditioning (*id.* at

14   ¶¶ 41–45); (3) the vehicles being operable (*id.* at ¶¶ 46–52); and (4) the vehicles' odometer

15   readings and overall condition (*id.* at ¶¶ 53–62).  Additionally, Plaintiff alleges the Third Parties

16   have prohibited Plaintiff from purchasing more of Defendants' vehicles due to Plaintiff's attempts

17   to recover damages for the alleged misrepresentations.  (*See id.* at ¶¶ 63–70.)

18         On August 18, 2017, Plaintiff initiated this action against FedEx.  (ECF No. 1.)  On April

19   17, 2018, Plaintiff filed the operative First Amended Complaint ("FAC"), adding FedEx Express

20   as a Defendant.  (ECF No. 27.)  Plaintiff asserts the following eighteen claims against

21   Defendants: (1) breach of contract; (2) breach of the implied covenant of good faith and fair

22   dealing; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5)

23   breach of implied warranty of fitness for a particular purpose; (6) negligent hiring; (7) intentional

24   ─────────────────────

25   [1]      Plaintiff alleges the Third Parties include, but are not limited to: ARI Fleet Management
     Corporation ("ARI"); ARI BuyDirect; ADESA Golden Gate in Tracy, California ("ADESA
26   California"); South Bay Auto Auction ("South Bay"); Copart Auction in Portland, Oregon
     ("Copart Portland"); DDA Northwest ("DDA"); Copart Auction in Helena, Montana ("Copart
27   Helena"); ADESA Dallas in Hutchins, Texas ("ADESA Texas"); Manheim, Inc. ("Manheim");
     and America's Auto Auction ("AAA").  (*See* ECF No. 27 at 9.)  None of the Third Parties are
28   listed as defendants in this case.  (*See id.*)

interference with contractual relations; (8) intentional interference with prospective economic relations; (9) negligent interference with contractual relations; (10) negligent interference with prospective economic relations; (11) intentional misrepresentation; (12) negligent misrepresentation; (13) unfair business practices; (14) restraint of trade; (15) horizontal restraint; (16) wire fraud; (17) violation of the Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701; and (18) declaratory relief.  (*Id.* at 20–40.)

On July 30, 2018, Defendants filed the instant Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  (ECF No. 36.)  On September 6, 2018, Plaintiff filed an opposition (ECF No. 39), and on September 13, 2018, Defendants filed a reply (ECF No. 41).

## II.   STANDARD OF LAW

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The issue presented by a Rule 12(c) motion is substantially the same as that posed in a 12(b) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief.  *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–1055 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly (Twombly)*, 550 U.S. 544, 556 (2007)).

In analyzing a 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."  *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted).

If the Court "goes beyond the pleadings to resolve an issue," a judgment on the pleadings is not appropriate and "such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); Fed. R. Civ. P. 12(d).  A district court may, however, "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

As Rule 12(c) neither expressly provides for, nor bars, partial judgment on the pleadings, "it is common to apply Rule 12(c) to individual causes of action." *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005) (citing *Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993)).  Courts have the discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment.  *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

### III.   ANALYSIS

Defendants move to dismiss all of Plaintiff's claims pursuant to Rule 12(c).  (*See* ECF No. 36.)  Defendants argue Plaintiff fails to adequately plead an alter ego theory of liability against FedEx in all of its claims (*see* ECF No. 36-1 at 12–14) and an agency theory of liability against FedEx Express in Claims One through Twelve and Seventeen (*see id.* at 9; *see* ECF No. 41 at 4–5).  Defendants further argue Claims Six through Twelve are barred by the economic loss rule. (*Id.* at 19–20.)  For the remaining claims against FedEx Express — Claims Thirteen through Sixteen, and Eighteen — Defendants contend Plaintiff fails to state a claim for relief.  (*See* ECF No. 36-1 at 20, 26–30, 31).  The Court will address each of Defendants' arguments in turn.

### A.   Alter Ego Liability for FedEx

Plaintiff alleges FedEx is liable for all claims because FedEx Express is the alter ego of FedEx.  (ECF No. 27 at ¶¶ 19–29.)  The used commercial vehicles at issue were owned and allegedly sold by FedEx Express, a subsidiary of FedEx — not FedEx itself.  (*See id.* at ¶¶ 30–70;

4

ECF No. 39 at 12.)  Defendants argue Plaintiff's claims against FedEx fail because Plaintiff fails to allege sufficient facts to support the elements of an alter ego theory of liability — specifically, unity of interest or ownership and that an inequitable result will occur if the Court treats Defendants as separate entities.  (*See* ECF No. 36-1 at 12–14.)  (*See id.*)  In opposition, Plaintiff maintains the FAC contains sufficient factual allegations to adequately plead claims against FedEx.  (*See* ECF No. 39 at 9–10.)

California law requires two conditions to be met before invocation of the alter ego doctrine.  "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).  Factors a court considers in determining whether to apply the doctrine are "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other."  *Id.* at 538–39.  Additional factors courts consider include "inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers."  *Id.* at 539.  No single factor governs and courts must consider the entirety of the circumstances to determine whether to apply the alter ego doctrine.  *Id.*  "Alter ego is an extreme remedy, sparingly used."  *Id.*  Moreover, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specific facts supporting both of the necessary elements."  *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015).

*i.   Unity of Interest and Ownership*

The unity of interest and ownership prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotations omitted)).  "This test envisions pervasive control

1    over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's

2    business — from broad policy decisions to routine matters of day-to-day operation.'" *Id.*

3    (quoting *Unocal*, 248 F.3d at 926) (internal quotations omitted)).  "Total ownership and shared

4    management personnel are alone insufficient to establish the requisite level of control."  *Id.*

5    (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.

6    2009)).

7         Here, Plaintiff alleges several relevant factors under the unity of interest or ownership

8    prong of the alter ego test.  (*See* ECF No. 27 at ¶¶ 19–29.)  Namely, Plaintiff alleges commingling

9    of funds and other assets of the two entities, identical equitable ownership in the two entities, use

10   of the same offices and employees, and use of one entity as the mere shell or conduit for the

11   affairs of the other entity.  (*Id.*; *see also* ECF No. 39 at 9–10.)  The Court tends to agree with

12   Defendants' assessment that most of Plaintiff's allegations in regard to these factors seem to

13   describe a corporate parent-subsidiary relationship between Defendants that is typical of "most

14   large U.S. public corporations that have one or more subsidiaries" (*see* ECF No. 36-1 at 13).

15   However, the Court need not determine at this stage whether or not Plaintiff establishes a unity of

16   ownership or interest because, for reasons stated below, the Court finds that Plaintiff fails to

17   satisfy the "inequitable result" prong of the alter ego test.  *See Food Mkt. Merch., Inc. v.*

18   *California Milk Processor Bd.*, No. 2:15-cv-01083-TLN-CKD, 2018 WL 2540323, at *9 (E.D.

19   Cal. May 31, 2018) (declining to determine whether plaintiff established "unity of interest or

20   ownership" and dismissing claims premised on the alter ego doctrine due to plaintiff's failure to

21   establish an "inequitable result").

22                              *ii.   Inequitable Result*

23        With respect to the "inequitable result" prong of the alter ego doctrine, Defendants argue

24   Plaintiff has only a sole allegation that is a mere "boilerplate conclusion of law" containing no

25   factual support.  (ECF No. 36-1 at 14.)  The Court agrees.  Plaintiff alleges:

26
        The management control that FEDEX exercises over FEDEX EXPRESS is such
27      that the adherence to the fiction of the separate existence of the DEFENDANTS
        would permit an abuse of the corporate privilege and would sanction fraud and
28      promote injustice.  FEDEX exercises control and domination of FEDEX EXPRESS

in both management and strategic planning.   Treating them as separate entities would surely perpetrate a fraud.

(ECF No. 27 at ¶ 29.)   Plaintiff attempts to further explain in its opposition that Defendants operated as a single enterprise and "[t]herefore any action taken against one and not the other . . . would create[] an inequitable result."   (ECF No. 39 at 10.)   However, both the FAC and opposition lack any facts explaining exactly what kind of inequitable result will occur, or exactly how a fraud will be perpetrated if Defendants were treated as separate entities.   (*See generally* ECF Nos. 27, 39.)   Furthermore, Plaintiff fails to demonstrate Defendants' bad faith in abusing the corporate form.   *See Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011) ("There also must be some conduct amounting to bad faith that makes it inequitable for [the defendant] to hide behind the corporate form.").   Without these kinds of factual allegations, Plaintiff does not establish an inequitable result for purposes of invoking the alter ego doctrine.   *Gerritsen*, 116 F. Supp. 3d at 1136.

Accordingly, Defendants' Motion as to all of Plaintiff's claims against FedEx is GRANTED.   Claims One through Five, Thirteen through Fifteen, Seventeen, and Eighteen are GRANTED with leave to amend.   *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that a district court should liberally grant leave to amend unless amendment would be futile).   Claims Six through Ten and Sixteen are GRANTED without leave to amend for reasons discussed below.

### B.      Agency Liability for FedEx Express

Defendants argue Plaintiff alleges "a number of independent third-party companies in various different parts of the country" are "Defendants' agents," but does not allege any facts to support such an agency theory of liability.   (ECF No. 36-1 at 9; ECF No. 41 at 4–8.)   Defendants therefore request the Court to dismiss all claims that depend on ostensible agency.   (ECF No. 41 at 4–8.)   In opposition, Plaintiff asserts it has alleged sufficient facts to adequately plead an ostensible agency theory of liability for claims against FedEx Express.   (ECF No. 39 at 10–13.)   As a preliminary matter, Defendants assert, and the Court agrees, that Claims One through

Twelve and Seventeen against FedEx Express are predicated on an agency theory of liability.[2]

(*See id.* at 4–5.)  The Court finds Claims Thirteen and Fifteen also rely on an agency theory of

liability.[3]  (*See* ECF No. 27 at 35–36, 39.)

To plead ostensible agency, plaintiffs must allege: "(1) they reasonably believed the agent

had the authority to act on behalf of the principal; (2) the principal's act or neglect caused them to

believe in the agent's authority; and (3) their reliance on the agent was not due to negligence."

*Warwick v. Rejuvi Lab., Inc.*, No. 18-cv-02701-MEJ, 2018 WL 3609089, at *5 (N.D. Cal. July 27,

2018) (citing *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975)).  In *Warwick*,

the court found the plaintiffs' complaint contained each of these three elements because the

plaintiffs alleged:

> [the agent] sold services and products developed by [the principal]; was trained by
> [the principal] to sell its products and services; told [one of the plaintiffs] she was
> certified by [the principal] to perform the [the principal's] tattoo removal procedure
> and that she was in "constant communication" with [the principal]; and told [one
> of the plaintiffs] she spoke directly with [the principle's] CEO and chief scientist
> when [one of the plaintiffs] began suffering from the procedure.

*Id.* Thus, the court found the plaintiffs sufficiently alleged a plausible claim for fraud under an

---

[2]    The Court finds all of these claims depend on agency liability because Plaintiff repeatedly
uses language in the FAC implying Defendants are liable through the acts of their alleged agents.
(*See, e.g.*, ECF No. 27 at 20 ("[Plaintiff] contracted to purchase Defendants' used vehicles, by
and through [ ] Defendants' Agents"); *id.* at 22 ("Defendants' performance, by and through [ ]
Defendants' Agents"); *id.* ("Defendants sold goods . . . through the [Defendants'] Agents"); *id.* at
26 ("Defendants, by and through [ ] Defendants' Agents, acting on behalf, and/or under its
direction, authorization, instruction, request, and/or with its knowledge, acquiescence, and/or
consent of Defendants, knew about the contracts between [Plaintiff] and its clients . . ."); *id.* at 31
("Defendants knew or should have known that its failure to provide or instruct the Defendants'
Agents to . . ."); *id.* at 34 ("Defendants promoted, authorized, requested, acquiesced, and/or
consented to policies, practices, and procedures by the Defendants' Agents . . ."); *id.* at 36
("Defendants' Agents, acting under the direction and control of Defendants").

[3]    Where this language is missing in Claims Thirteen and Fifteen, the Court finds they
nonetheless depend on agency theory because the Court cannot discern any facts in the FAC
describing direct acts or behavior of FedEx Express, as opposed to its alleged agents, giving rise
to these claims.  (*See, e.g.*, *id.* at 35 (Plaintiff alleges "[t]he above described conduct by
Defendants that constitutes unfair business practices" when there is no "above described conduct"
to be found and only a generic incorporation of earlier allegations and claims); *id.* at 36 (Plaintiff
alleges "Defendants' Agents, acting under the direction and control of Defendants, agreed not
deal with [Plaintiff] . . .").

1    ostensible agency theory.  *Id.*

2            Here, with respect to the first element, Plaintiff argues the vehicle titles attached as

3    exhibits to the FAC, coupled with the appearance of the vehicles, are sufficient to support

4    Plaintiff's reasonable belief that the Third Parties had FedEx Express's authority to sell vehicles

5    on FedEx Express's behalf.  (*See* ECF No. 39 at 12.)  This argument is problematic because the

6    only attached exhibits containing vehicle titles appear to show FedEx Express released its

7    interests in the vehicles to the Third Parties.  (*See* ECF No. 27-7 at 8; ECF No. 27-13 at 2.)  Thus,

8    the vehicle titles more likely show the Third Parties were in lawful possession of FedEx Express's

9    vehicles and could therefore lawfully resell them, as opposed to showing that the Third Parties

10   were running auctioning and reselling businesses at the behest of FedEx Express.  Unlike the

11   plaintiff in *Warwick*, Plaintiff does not allege the Third Parties communicated to Plaintiff in any

12   way their relationship with FedEx Express, or that Plaintiff even had any communications with

13   FedEx Express directly.  (*See generally* ECF No. 27.)  Nonetheless, even if the Court were to

14   conclude Plaintiff plausibly alleged the first element of ostensible agency, Plaintiff's agency

15   theory of liability fails because it lacks facts to establish the second element.

16           With respect to the second element, Plaintiff alleges FedEx Express's "standards,

17   customs, policies, and/or practices, ratified, acquiesced, directed, controlled, permitted, and/or

18   allowed" Third Parties to act in the alleged manner.  (ECF No. 39 at 12 (citing ECF No. 27 at ¶¶

19   36, 37).)  However, this is a conclusion of law that provides no facts describing a specific

20   "standard, custom, policy, practice" of FedEx Express that authorized the Third Parties to act on

21   Defendants' behalf.  The FAC is devoid of any facts illustrating a direct act or neglect of FedEx

22   Express.  (*See generally* ECF No. 27.)  Unlike the plaintiffs in *Warwick*, Plaintiff has no basis to

23   believe FedEx Express authorized Third Parties' actions.

24           Plaintiff has not met its initial burden in alleging enough facts to establish a plausible

25   theory of ostensible agency.  *See Ins. Co. of the State of Pa. v. Citizens of Humanity LLC*, No.

26   SACV 13-01564 JVS (DFMs), 2014 WL 12689271, at *4 (C.D. Cal. Feb. 24, 2014) (granting

27   motion to dismiss all third-party claims, including those based on agency theory, where third-

28   party plaintiff's "allegations regarding [the third-party defendant's] status as an agent of the

1    insurers are conclusory and wholly lacking [] ] in factual content."); *In re Cobb*, No. CIV. S–10–

2    587 FCD, 2010 WL 4942545, at *6 (E.D. Cal. Nov. 24, 2010) (affirming bankruptcy court's

3    dismissal of adversary complaint including claim based on agency theory because "appellant

4    failed to allege any facts to show how [alleged principal] Deutsche Bank authorized any other

5    defendant or party to represent and/or bind it") (citing *J.L. v. Children's Inst., Inc.*, 177 Cal. App.

6    4th 388, 403–04 (2009)).  Thus, Plaintiff's ostensible agency theory of liability fails.  *Cf.*

7    *Warwick*, 2018 WL 3609089, at *5.

8            Accordingly, Defendants' Motion as to Claims One through Thirteen, Fifteen, and

9    Seventeen against FedEx Express is GRANTED.  Claims One through Five, Eleven through

10   Thirteen, Fifteen, and Seventeen are granted with leave to amend.  Claims Six through Ten are

11   granted without leave to amend for reasons discussed below.

12                    C.      Economic Loss Rule (Claims Six through Twelve)

13           Defendants argue the economic loss rule bars all of Plaintiff's tort claims, specifically

14   Claims Six through Twelve, as they "are based entirely on agreements to purchase vehicles."

15   (ECF No. 36-1 at 19–20.)  In opposition, Plaintiff argues the economic loss rule does not bar its

16   tort claims as "[t]hey are separate and independent wrongs that occurred during the course of

17   dealings with the [Third Parties] . . . before the basis of the breach of contract is even formed and

18   after the contract has been executed."  (*See* ECF No. 39 at 16–17.)

19           The economic loss rule is:

20           [t]he principle that a plaintiff generally cannot recover for financial harm that
             results from injury to the person or property of another.  Many states recognize an
21           exception to this rule when the defendant commits fraud or negligent
             misrepresentation, or when a special relationship exists between the parties (such
22           as an attorney-client relationship).

23

24   *Economic Loss Rule*, Black's Law Dictionary (10th ed. 2014).  The economic loss rule "requires

25   a purchaser to recover in contract for purely economic loss due to disappointed expectations,

26   unless he can demonstrate harm above and beyond a broken contractual promise."  *Robinson*

27   *Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  Thus, the rule has been applied

28   to bar general negligence claims.  *Id.* at 989 (citing *Aas v. Superior Court*, 24 Cal. 4th 627, 640

1  (2000), *superseded by statute on other grounds as stated in Southern California Gas Leak Cases*,

2  7 Cal. 5th 391 (2019); *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965)).

3      The California Supreme Court has listed exceptions where tort damages have been

4  allowed in contract cases, which include: "where a breach of duty causes physical injury; for

5  breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful

6  discharge in violation of fundamental public policy; or where the contract was fraudulently

7  induced." *Id.* at 989–90 (internal citations omitted).  In all of these cases, "the duty that gives rise

8  to tort liability is either completely independent of the contract or arises from conduct which is

9  both intentional and intended to harm." *Id.* at 990 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552

10 (1999); *Harris v. Atlantic Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993)).  The California Supreme

11 Court therefore has held the economic loss rule does not bar fraud and intentional

12 misrepresentation claims, as this is consistent with California's public policy.  *Id.* at 991–92

13 (citing *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1064 (1999)

14 ("California also has a legitimate and compelling interest in preserving a business climate free of

15 fraud and deceptive practices.").)).

16     Additionally, a court within this district has followed the guidance of two unpublished

17 Ninth Circuit decisions, which "have suggested negligent misrepresentation claims are not barred

18 by the economic loss rule." *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 1:16-

19 cv-00371-DAD-SMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016) (citing *Hannibal

20 Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011); *Kalitta Air, L.L.C. v.

21 Central Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008)).  Another court within

22 this district has found that a "negligent misrepresentation cause of action sounds more in

23 deceit/fraud than negligence" and is therefore not barred by the rule.  *Barrier Specialty Roofing &

24 Coatings, Inc. v. ICI Paints N. Am., Inc.*, No. CV F 07-1614 LJO TAG, 2008 WL 2724876, at *6

25 (E.D. Cal. July 11, 2008).

26     Here, following the guidance of the California Supreme Court and Ninth Circuit, this

27 Court finds that Claims Six through Ten — negligent hiring, intentional interference with

28 contractual relations, intentional interference with prospective economic relations, negligent

1    interference with contractual relations[4], and negligent interference with prospective economic

2    relations — are barred under the economic loss rule.  Conversely, the Court finds that Claims

3    Eleven and Twelve — negligent misrepresentation and intentional misrepresentation — are not

4    barred by the doctrine because they have been clearly identified as exceptions to the rule.  *See*

5    *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 991–92; *Bret Harte Union High Sch. Dist.*, 2016

6    WL 3519294, at *5.  Accordingly, Defendants' Motion as to Claims Six through Ten against

7    Defendants is GRANTED without leave to amend.  As the Court previously found Claims Eleven

8    and Twelve — based on an alter ego theory against FedEx and an agency theory of liability

9    against FedEx Express — were inadequately pleaded, Defendants' Motion as to those claims is

10   still GRANTED with leave to amend.

11                  D.      Claim Fourteen against FedEx Express: Restraint of Trade

12          Defendants argue Plaintiff's "restraint of trade" claim "purports to assert a claim pursuant

13   to [ ] the Sherman Act, 15 U.S.C. § 1," but the FAC "does not allege any facts to establish

14   concerted action among two or more actors, does not plead plausible (or indeed any) product or

15   geographic markets, and does not plead an injury to competition."  (ECF No. 36-1 at 27.)  In

16   opposition, Plaintiff maintains it is not required to show "concerted action between itself and a

17   horizontal competitor."  (ECF No. 39 at 20.)  Plaintiff asserts the "who did what to whom, where,

18   and when," as well as the relevant products (Defendants' used vehicles) is sufficiently pleaded in

19   the FAC.  (*Id.*)

20          To state a claim for restraint of trade, a plaintiff must allege:

21          not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true,
            will prove: (1) a contract, combination or conspiracy among two or more . . .
22          business entities; (2) by which the . . . entities intended to harm or restrain trade or
            commerce among the several States . . . ; (3) which actually injures competition.
23

24   *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008) (citing *Les Shockley Racing*

25   _____

26   [4]      Defendant is also correct that Plaintiff cannot state a claim for negligent interference with
     contractual relations because such a cause of action does not exist in California.  (ECF No. 36-1
27   at 24 (citing *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 889 (N.D. Cal.
     2014); *Strome v. DBMK Enterprises, Inc.*, No. 14-cv-02398-SI, 2014 WL 6485533, at *9 (N.D.
28   Cal. Nov. 19, 2014); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9 (2009)).)

1   *Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir.1989); *see also Twombly*, 550 U.S. at

2   553–558).  Here, Plaintiff in its opposition cites to a number of paragraphs in the FAC supposedly

3   containing facts from which the Court can infer a plausible claim for a violation under the

4   Sherman Act.  (ECF No. 39 at 20.)  However, Plaintiff fails to explain how the allegations in the

5   FAC amount to a plausible claim.  (*Id.*)  Plaintiff's description of false condition reports, reselling

6   of used commercial vehicles, and the prohibiting of Plaintiff from purchasing FedEx Express

7   vehicles lack any factual allegations as to the acts of FedEx Express.  (*See* ECF No. 27 at ¶¶ 58–

8   70.)  The statement most closely resembling an allegation against Plaintiff for restraint of trade is

9   the following:

10      Plaintiff believes, and based thereon alleges, that the decision to terminate
        [Plaintiff's] participation was requested, condoned, authorized, permitted,
11      sanctioned, and/or promoted by DEFENDANTS to ensure that its practice and the
        practice of the DEFENDANTS' AGENTS, and each of them, of publishing false
12      and inaccurate Condition Reports would continue unhindered.

13

14   (*Id.* at ¶ 70.)  However, this assertion lacks evidentiary facts supporting any element of a restraint

15   of trade claim.  *See Kendall*, 518 F.3d at 1047–48.  There is simply no factual basis for Plaintiff's

16   belief that FedEx Express participated in the restraint of trade.  *See id.*  Plaintiff's assertions under

17   Claim Fourteen likewise are legal conclusions that merely recite the elements contained in the

18   Sherman Act.  (*See* ECF No. 27 at ¶¶ 160–64.)  As previously discussed, bare legal conclusions

19   are insufficient to state a claim.  *Twombly*, 550 U.S. at 555.  Accordingly, Defendants' Motion as

20   to Claim Fourteen is GRANTED with leave to amend.

21                      E.      Claim Sixteen against Defendants: Wire Fraud

22          Defendants argue there is no private right of action for wire fraud.  (ECF No. 36-1 at 30

23   (citing *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402 (8th Cir. 1999), *reh'g and*

24   *reh'g en banc denied*, 210 F.3d 380 (8th Cir. 2000).)  In opposition, Plaintiff maintains "[t]he

25   elements required for a private action for wire fraud are present and sufficiently plead[ed]," citing

26   *Wisdom* for this proposition.  (ECF No. 39 at 21–22.)  The Court agrees with Defendants, as no

27   such private cause of action for wire fraud exists.  *Wisdom*, 167 F.3d at 409 ("[N]either the

28   statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to

                                                    13

1   create a private right of action. We hold . . . the district court correctly dismissed the . . . claims

2   based on a private right of action under 18 U.S.C. §§ 1341, 1343, and 1951.”); *see also Crane v.*

3   *Bank of New York Mellon*, No. 1:12-CV-00103 AWI-GSA, 2012 WL 2620522, at *5 (E.D. Cal.

4   July 5, 2012) (“Courts have consistently held that the mail and wire fraud statutes do not confer a

5   private right of action.”) (internal quotations and citations omitted).  Accordingly, Defendants’

6   Motion as to Claim Sixteen against Defendants is GRANTED without leave to amend.

7   F.    Claim Eighteen against FedEx Express: Declaratory Relief

8        Defendants argue Plaintiff “has not pleaded sufficient factual allegations to show that the

9   facts and the law clearly favor [Plaintiff] such that the Court should issue a mandatory injunction

10  that would require approximately ten independent companies — none of which is a party to this

11  action — to do future business with [Plaintiff].”  (ECF No. 36-1 at 32.)  Defendants note Plaintiff

12  “does not even direct the relief it requests to the [D]efendants in these proceedings.”  (*Id.*)  In

13  opposition, Plaintiff contends it is not seeking an injunction with its request for declaratory relief.

14  (ECF No. 39 at 23.)  Plaintiff notes it is only required to allege facts that “under all the

15  circumstances, show that there is a substantial controversy, between parties having adverse legal

16  interests.”  (*Id.*)

17       “Claims for declaratory relief . . . are ultimately prayers for relief, and not causes of

18  action.”  *Javaheri v. JP Morgan Chase Bank, N.A.*, No. 2:10–cv–08185–ODW (FFMx), 2012 WL

19  3426278 at *8–9 (C.D. Cal. Aug. 13, 2012) (citing *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.

20  Supp. 2d 1092, 1104 (E.D. Cal. 2010)).  28 U.S .C. § 2201 provides, “any court of the United

21  States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

22  of any interested party seeking such declaration, whether or not further relief is or could be

23  sought.”  Declaratory relief should be denied if it will “neither serve a useful purpose in clarifying

24  and settling the legal relations in issues nor terminate the proceedings and afford relief from the

25  uncertainty and controversy faced by the parties.”  *United States v. Washington*

26  *(Washington)*, 759 F.2d 1353, 1357 (9th Cir. 1985).  A claim for declaratory relief is unnecessary

27  where an adequate remedy exists under another cause of action.  *Mangindin v. Washington Mut.*

28  *Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).

1    Here, Plaintiff alleges the Third Parties "have barred [Plaintiff], and intend to permanently

2   ban [Plaintiff], from purchasing vehicles."  (ECF No. 27 at ¶ 183.)  Plaintiff's declaratory relief

3   claim seeks "a judicial determination as to the rights of [Plaintiff] to purchase Defendants'

4   vehicles through [the Third Parties]."  (*Id.* at ¶ 184.)  Because the Court has granted Defendants'

5   Motion as to all of the substantive claims in Plaintiff's FAC in this Order, Plaintiff's declaratory

6   relief claim at this juncture will "neither serve a useful purpose in clarifying and settling the legal

7   relations in issues nor terminate the proceedings and afford relief from the uncertainty and

8   controversy faced by the parties."  *Washington*, 759 F.2d at 1357.  Accordingly, Defendants'

9   Motion as to Claim Eighteen is GRANTED with leave to amend.

10        **IV.    CONCLUSION**

11        For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Judgment

12   on the Pleadings under Rule 12(c) (ECF No. 36) as follows:

13            1.   Defendants' Motion is GRANTED as to Claims One through Five, Eleven through

14                 Fifteen, Seventeen, and Eighteen against FedEx and FedEx Express with leave to

15                 amend; and

16            2.   Defendants' Motion is GRANTED as to Claims Six through Ten and Sixteen

17                 against FedEx and FedEx Express without leave to amend.

18        Plaintiffs may file an amended complaint not later than thirty (30) days from the date of

19   electronic filing of this Order.  Defendants' responsive pleading is due twenty-one (21) days after

20   Plaintiffs file an amended complaint.

21        IT IS SO ORDERED.

22   DATE:  June 9, 2021

23

24

25                                              Troy L. Nunley
                                                United States District Judge
26

27

28