UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NEVADA FLEET LLC,

           Plaintiff,

     v.

FEDEX CORPORATION; AUTOMOTIVE RENTALS, INC.; and DOES 1-50, inclusive,

           Defendants.

No. 2:17-cv-01732-TLN-KJN

**ORDER**

      This matter is before the Court on Defendants FedEx Corporation ("FedEx") and Automotive Rentals, Inc.'s ("ARI") (collectively, "Defendants") Motions to Dismiss. (ECF Nos. 111, 112.) Both motions are fully briefed. (ECF Nos. 115, 117, 120, 121.) For the reasons discussed herein, the Court GRANTS FedEx's motion and GRANTS in part and DENIES in part ARI's motion.

///

///

///

///

///

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the sale of Defendants' used commercial vehicles to Plaintiff through third-party vehicle auction companies and other commercial vehicle resellers.  (*See* ECF No. 104.)  Plaintiff, an independent automotive dealer licensed in California, specializes in the wholesale purchase and sale of FedEx delivery vans, which it would purchase at commercial auctions around the country and directly from ARI via ARI's "ARI Direct" program.  (*Id.* at ¶¶ 17–19, 21.)  ARI is a corporate fleet management company that provides a variety of services for corporate fleets.  (*Id.* at ¶ 25.)  Relevant here, ARI provides "vehicle remarketing" services, in which ARI will take possession of a fleet vehicle that reaches "end of life," market and sell it through several sales channels and numerous auction houses around the country.  (*Id.* at  ¶¶ 27–28.)  ARI has had a Fleet Management Services Agreement (the "FMSA") with FedEx since at least June 1, 2009.  (*Id.* at ¶ 37.)  ARI and FedEx amended the FMSA on July 11, 2013 (the "Ninth Amendment"), under which ARI provided vehicle remarketing services on behalf of FedEx.  (*See id.* at ¶¶ 44–50, 55.)

Plaintiff alleges it purchased FedEx delivery vans, the material conditions of which were misrepresented, such as a gasoline truck delivered in place of a diesel freightliner truck, a diesel freightliner truck delivered in place of a gasoline freightliner truck, non-air-conditioned vans sold as having air conditioners, and inoperable vehicles sold as drivable.  (*See id.* at ¶¶ 93–104.)  Plaintiff further alleges that when it began looking into these issues and complaining to auction houses and ARI, it "was entirely rebuffed by the [a]uction [h]ouses and ARI . . . blaming each other or FedEx."  (*Id.* at ¶ 106.)  Plaintiff alleges it found it was locked out of ARI's Auto Direct website and this suspension "quickly spread across the industry and within a very short period of time [Plaintiff] found itself locked out of bidding on all vehicles at the [a]uction [h]ouses as well."  (*Id.* at ¶¶ 108–109.)

On August 18, 2017, Plaintiff initiated this action.  (ECF No. 1.)  On August 2, 2021, Plaintiff filed the operative Second Amended Complaint ("SAC"), adding ARI as a Defendant.  (ECF No. 104.)  Plaintiff asserts the following nine claims: (1) violation of the Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701; (2) intentional misrepresentation or

1   omission; (3) negligent misrepresentation or omission; (4) violation of the Racketeer Influenced

2   and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c); (5) intentional interference with

3   prospective economic advantage; (6) breach of express warranty by Defendants; (7) breach of the

4   implied warranty of merchantability; (8) violations of the California Unfair Competition Law,

5   California Business & Professions Code § 17200; and (9) violations of the Sherman Act, 15

6   U.S.C. § 1.  (*See id.*)  All claims are asserted against Defendants collectively with the exception

7   of the fifth and ninth claims, which are asserted against ARI alone.  (*See id.*)  On August 20,

8   2021, FedEx and ARI filed the instant motions to dismiss.  (ECF Nos. 111, 112.)  The Court will

9   address each in turn.

10       **II.     STANDARD OF LAW**

11       A motion to dismiss for failure to state a claim upon which relief can be granted under

12   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

13   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

14   "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

15   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

16   complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

17   which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

18   "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

19   motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

20   *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

21       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

22   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

23   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

24   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

25   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

26   relief."  *Twombly*, 550 U.S. at 570.

27       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

28   factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

1   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

2   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

3   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

4   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

5   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

6   statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

7   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

8   been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

9   U.S. 519, 526 (1983).

10  Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

11  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

12  *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

13  content that allows the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged." *Id.* at 680.  While the plausibility requirement is not akin to a probability

15  requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

16  *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to

17  draw on its judicial experience and common sense." *Id.* at 679.

18  In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

19  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

20  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

21  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

22  If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

23  amend even if no request to amend the pleading was made, unless it determines that the pleading

24  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

25  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

26  ///

27  ///

28  ///

4

1        **III.    ANALYSIS**

2                 A.        FedEx's Motion to Dismiss

3                 FedEx moves to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6).  (*See* ECF No.

4        111-1.)  FedEx argues Plaintiff does not state an agency theory of liability against FedEx in the

5        claims asserted against it — Claims One through Four and Six through Eight.  (*Id.* at 11–13.)

6        FedEx argues in the alternative that Plaintiff fails to state a claim in all of these claims.  (*Id.* at

7        13–24.)  Because the Court finds Plaintiff does not state a theory of liability against FedEx, it will

8        only address the sufficiency of the allegations regarding an agency theory of liability and decline

9        to address whether Plaintiff adequately states a claim.

10                FedEx argues that the SAC "provides no more factual support for its agency theories than

11       it did in its prior pleadings" — namely, Plaintiff "makes no allegations of fact demonstrating the

12       requisite elements of ostensible agency, including that [Plaintiff] reasonably believed that ARI

13       had agency authority, that FedEx somehow caused [Plaintiff] to believe ARI had agency

14       authority, or that [Plaintiff's] purported reliance could be based on anything but its own

15       negligence."  (*Id.* at 11–12.)  FedEx asks the Court to reject Plaintiff's theory that FedEx was "the

16       selling party, [and] ultimately responsible for the manner in which its vehicles were marketed and

17       sold," as it already rejected this exact theory based on exhibits Plaintiff attached to its First

18       Amended Complaint ("FAC") that disprove the agency theory (which were not attached to the

19       SAC).  (*Id.* at 12–13.)  In opposition, Plaintiff asserts the SAC alleges both an actual agency

20       relationship between FedEx and ARI, as well as an ostensible agency relationship.  (ECF No. 117

21       at 7–11.)  Plaintiff further asserts the question of whether ARI was FedEx's agent is a question of

22       fact that cannot be determined on a Rule 12 motion.[1]  (*Id.* at 10.)

23                The Court will first address whether Plaintiff sufficiently pleaded an actual agency

24       relationship and then whether Plaintiff sufficiently pleaded an ostensible agency relationship.

25       _____

26       [1]       The Court agrees with FedEx (*see* ECF No. 121 at 8) and rejects this argument outright.
         This Court, as well as other courts, have previously ruled on this issue in a Rule 12 motion.  (*See*

27       ECF No. 91); *see also Dakavia Mgmt. Corp. v. Bigelow*, No. 1:20-cv-00448-NONE-SKO, 2022
         WL 104245 (E.D. Cal. Jan. 10, 2022); *Tuso v. Nat'l Health Agents, LLC*, No. 2:20-cv-02130-

28       JAM-CKD, 2021 WL 253220 (E.D. Cal. June 21, 2021).

1          *i.        Actual Agency*

2          Plaintiff argues that § 11(D) of the FMSA explicitly identifies ARI as the agent of FedEx.

3   (ECF No. 117 at 8–9.)  Plaintiff contends "the intent was always for ARI to act as FedEx's agent

4   in transferring ownership of these vehicles to a third party."  (*Id.* at 9.)  Plaintiff further argues the

5   Ninth Amendment outlines a consignment agreement wherein ARI acts as FedEx's agent in

6   disposition of FedEx's vehicles for resale and "[a] true consignment constitutes an agency or

7   bailment relationship between the consignor and the consignee . . . ."[2]  (*Id.* at 8–10.)  In reply,

8   FedEx asserts Plaintiff is incorrect the FMSA explicitly identifies ARI as an agent of FedEx, as §

9   9 of the FMSA states "in a section titled 'Independent Contractor Relationship,' that '[t]he parties

10   intend that an independent contractor relationship will be created by this Agreement.'"[3]  (ECF

11   No. 121 at 6 (citing ECF No. 111-1 at 27).)  FedEx maintains, therefore, that the FMSA

12   "explicitly disavows an agency relationship between FedEx and ARI, and FedEx expressly agreed

13   that it did not have 'the right to control the activities of the alleged agent.'"  (*Id.*)  FedEx states

14   Plaintiff ignores this and misconstrues the FMSA to rely on a single word in a different section

15   other than § 9, which is misleading and should not be read in isolation because "[a] single

16   reference in a section including a rep[resentation] and warranty about odometers cannot

17   fundamentally alter the nature of the relationship between FedEx and ARI."  (*Id.* at 6–7.)  FedEx

18   finally disputes that the Ninth Amendment establishes a consignment agreement, rather than a

19   resale arrangement.  (*Id.* at 7.)

20          "The essential characteristics of an agency relationship as laid out in the Restatement are

21   as follows: (1) [a]n agent or apparent agent holds a power to alter the legal relations between the

22   principal and third persons and between the principal and himself; (2) an agent is a fiduciary with

23   respect to matters within the scope of the agency; and (3) a principal has the right to control the

24   conduct of the agent with respect to matters entrusted to him."  *Dakavia*, 2022 WL 104245, at *6

25   ───────────────────

26   [2]      It appears the full text of the Ninth Amendment is attached to FedEx's motion that was
     filed under seal.  (*See* ECF No. 110-1.)

27   [3]      It appears part of the FMSA is also attached to FedEx's motion that was filed under seal.
28   (*See* ECF No. 110-1.)  The Court confirms that this language is as it appears in § 9.  (*Id.*)

1    (citing *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964

2    (2007), *as modified on denial of reh'g* (Apr. 17, 2007)).  "Although the precise details of the

3    agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be

4    offered to support a reasonable inference that an agency relationship existed."  *Id.* (quoting

5    *Kreiser v. Asset Mgmt. Grp., Inc.*, No. SACV 20-01794-JVS DFMx, 2021 WL 3579414, at *3

6    (C.D. Cal. Apr. 23, 2021); *Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10-9794 PSG

7    MANx, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011)).  A plaintiff must also allege facts to

8    show the principal has control over the agent.  *Id.*

9         Here, Plaintiff's allegations of agency between FedEx and ARI in the SAC are as follows:

10   (1) "each and every [D]efendant was an agent, employee, partner, joint venture, predecessor-in-

11   interest and co-conspirator of the other [D]efendants, and in doing the things herein alleged, was

12   acting within the course and scope of such agency . . . ." (ECF No. 104 ¶ 7); (2) "[i]n remarketing

13   FedEx vehicles on behalf of FedEx, ARI was acting at all times as FedEx's agent" (*id.* at ¶ 55);

14   (3) "[i]n addition to acting as agents for FedEx within the scope of the FMSA, ARI has acted

15   independently and on its own accord, including but not limited to locking [Plaintiff] out of its

16   ARI Direct platforms and out of the [a]uction [h]ouses" (*id.* at ¶ 121); (4) "FedEx failed to ensure

17   that its agent, ARI, disclosed the actual vehicle mileage for FedEx vehicles cosigned to ARI for

18   remarketing and sale" (*id.* at ¶ 131); (5) "FedEx was [receiving] and continues to receive

19   hundreds of thousands of dollars per month as a result of its agent ARI's remarketing efforts" (*id.*

20   at ¶ 137); (6) "FedEx . . . fail[ed] to ensure that its agent, ARI, properly disclosed the actual

21   mileage on FedEx vehicles consigned to ARI for resale" (*id.* at ¶ 145); (7) "FedEx . . . failed to

22   ensure that its agent, ARI, properly disclosed the actual mileage on FedEx vehicles consigned to

23   ARI for resale" (*id.* at ¶ 157); (8) "FedEx via its agent ARI sold FedEx vehicles to [Plaintiff] . . .

24   FedEx and its agent ARI . . . made warranties regarding the quality and condition of the goods . . .

25   ."  (*id.* at ¶ 208); and (9) "[Plaintiff] purchased FedEx vehicles through FedEx's agent ARI, as

26   well as via ARI's agents, the [a]uction [h]ouses . . . [which] were not the same quality as those

27   generally accepted in the trade as they did not meet the quality conditions . . . ." (*id.* at ¶ 213).

28        Nowhere in the foregoing allegations does Plaintiff explicitly plead nor can there be a

1    reasonable inference from these allegations that ARI "holds a power to alter the legal relations

2    between [FedEx] and third persons and between [FedEx] and [itself]" or that "[FedEx] has the

3    right to control the conduct of [ARI] with respect to the matters entrusted to [it]." *See Dakavia*,

4    2022 WL 104245, at *6.  California law defines a fiduciary relationship as:

5              any relation existing between the parties to a transaction wherein one
               of the parties is in duty bound to act with the utmost good faith for
6              the benefit of the other party.  Such relation ordinarily arises where
               a confidence is reposed by one person in the integrity of another, and
7              in such a relation the party in whom the confidence is reposed, if he
               voluntarily accepts or assumes to accept the confidence, can take no
8              advantage from his acts relating to the interest of the other party
               without the latter's knowledge or consent . . . .
9

10   *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003).  Accordingly, even under a liberal

11   construction of these allegations, Plaintiff does not plead that ARI "is in duty bound to act with

12   the utmost good faith for" FedEx.  Instead, the majority of the allegations are conclusory

13   statements that ARI was acting as an agent for FedEx.

14          The parties in their briefing focus on a dispute over the language of the FMSA and the

15   Ninth Amendment and whether these documents explicitly provide for a certain kind of

16   relationship.  Plaintiff argues there is an agency relationship based on the language of § 11(D):

17   "ARI warrants to FedEx that, as to any Vehicle it receives from FedEx, no tampering with the

18   odometer of such Vehicle will occur between the time ARI receives the Vehicle from FedEx and

19   the time of the transfer of ownership by ARI, as **agent**, from FedEx to the next succeeding

20   owner." (ECF No. 117 at 8–9 (emphasis added).)  Plaintiff further argues the Ninth Amendment

21   outlines a consignment agreement but does not point to any specific provisions that do so.  (*Id.* at

22   9.)  As previously noted, FedEx argues there is an independent contractor relationship based on §

23   9 of the FMSA.  (ECF No. 121 at 6; *see* ECF No. 110-1.)

24          As a preliminary matter, the Court finds it troubling that Plaintiff did not attach the full

25   text of the FMSA to the SAC nor to its opposition to the instant motion.  (See ECF Nos. 104,

26   117.)  Additionally, the part of the FMSA attached to FedEx's motion filed under seal does not

27   include § 11.  (See ECF No. 110-1.)  Even if the language of § 11(D) was included in the SAC or

28   attached to the SAC and the Court were to accept the language of the Ninth Amendment attached

1   to FedEx's motion, the Court would still find an agency relationship does not exist because

2   Plaintiff fails to plead the essential elements of agency.  Under the standards of Rule 8, the

3   allegations still would not "allow[] the court to draw the reasonable inference that [ARI] is liable

4   for the misconduct alleged." *Iqbal*, 556 U.S. at 680.  Thus, the Court finds Plaintiff's actual

5   agency theory of liability fails.

6                                    *ii.        Ostensible Agency*

7               With respect to ostensible agency specifically, Plaintiff argues it pleaded "the ultimate fact

8   that FedEx's retired vans are sold one way or another through ARI" and "it is well-known in the

9   fleet management industry that ARI is FedEx's agent for remarketing FedEx's retired vans."

10  (ECF No. 117 at 11 (citing ECF No. 104 ¶¶ 25–36, 197).)  In reply, Defendant simply states that

11  this argument is "without merit."  (ECF No. 121 at 8.)

12              To plead ostensible agency, plaintiffs must allege: "(1) they reasonably believed the agent

13  had the authority to act on behalf of the principal; (2) the principal's act or neglect caused them to

14  believe in the agent's authority; and (3) their reliance on the agent was not due to negligence."

15  *Warwick v. Rejuvi Lab., Inc.*, No. 18-cv-02701-MEJ, 2018 WL 3609089, at *5 (N.D. Cal. July 27,

16  2018) (citing *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975)).  In *Warwick*,

17  the court found the plaintiffs' complaint contained each of these three elements because the

18  plaintiffs alleged:

19              [the agent] sold services and products developed by [the principal]; was trained by
20              [the principal] to sell its products and services; told [one of the plaintiffs] she was
                certified by [the principal] to perform the [principal's] tattoo removal procedure
21              and that she was in "constant communication" with [the principal]; and told [one
                of the plaintiffs] she spoke directly with [the principle's] CEO and chief scientist
22              when [one of the plaintiffs] began suffering from the procedure.

23  *Id.*  Thus, the court found the plaintiffs sufficiently alleged a plausible claim for fraud under an

24  ostensible agency theory.  *Id.*

25              Here, all of Plaintiff's allegations of actual or ostensible agency in the SAC are outlined

26  above.  Nowhere in the foregoing allegations does Plaintiff explicitly plead nor can there be a

27  reasonable inference from these allegations that Plaintiff "reasonably believed [ARI] had the

28  authority to act on behalf of [FedEx]," "[FedEx's] act or neglect caused [Plaintiff] to believe in

[ARI's] authority," or that "[Plaintiff's] reliance on [ARI] was not due to negligence."  *See Warwick*, 2018 WL 3609089, at *5.  Again, the majority of the allegations are conclusory statements that ARI was acting as an agent for FedEx.  Accordingly, Plaintiff has not met its initial burden in alleging enough facts to establish a plausible theory of ostensible agency.  *See Ins. Co. of the State of Pa. v. Citizens of Humanity LLC*, No. SACV 13-01564 JVS (DFMs), 2014 WL 12689271, at *4 (C.D. Cal. Feb. 24, 2014) (granting motion to dismiss all third-party claims, including those based on agency theory, where third-party plaintiff's "allegations regarding [the third-party defendant's] status as an agent of the insurers are conclusory and wholly lacking [] ] in factual content."); *In re Cobb*, No. CIV. S–10–587 FCD, 2010 WL 4942545, at *6 (E.D. Cal. Nov. 24, 2010) (affirming bankruptcy court's dismissal of adversary complaint including claim based on agency theory because "appellant failed to allege any facts to show how [alleged principal] Deutsche Bank authorized any other defendant or party to represent and/or bind it") (citing *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403–04 (2009)).  Thus, Plaintiff's ostensible agency theory of liability fails.

Both of Plaintiff's theories of liability fail and therefore FedEx's motion as to Claims One through Four and Six through Eight of the SAC is GRANTED.  Because the Court cannot definitively conclude that Plaintiff's amended complaint "could not possibly be cured by the allegation of other facts," the motion is granted with leave to amend.  *See Lopez*, 203 F.3d at 1130.

### B.    ARI's Motion to Dismiss

ARI argues Claims One through Three are barred by the applicable statutes of limitation, as Rule 15 prohibits amended complaints that relate back to the date of the original Complaint, except in cases where a plaintiff can establish that its "failure to name a party was due to mistaken identification" and Plaintiff cannot establish this exception applies.  (ECF No. 112-1 at 11–15.)  ARI further argues Plaintiff fails to adequately state a claim for Claims Two through Nine of the SAC.  (*Id.* at 11–26.)  The Court will first consider whether ARI was properly added as a Defendant under Rule 15(c) such that the applicable statutes of limitation do not apply.  The Court will then evaluate the claims on the merits, as it finds that ARI was properly added.

1          *i.   Whether ARI Was Properly Added Under Rule 15(c)*

2          ARI notes Plaintiff filed its initial Complaint on August 18, 2017, which included a

3    section entitled "Odometers Not Represented on Condition Reports" with various allegations that

4    it had purchased vehicles with replaced odometers and referenced ARI "no less than fourteen

5    times" even though ARI was not a named defendant.  (ECF No. 112-1 at 12.)  ARI states it

6    therefore "cannot be disputed" that Plaintiff knew in early 2017 that "it purchased FedEx vehicles

7    that allegedly had replaced odometers and that ARI was involved in the sale."  (*Id.*)  ARI

8    contends the limited exception available in Rule 15(c), which allows for amended complaints to

9    relate back to the date of the original complaint where the plaintiff can establish that its "failure to

10   name a party was due to mistaken identification," is therefore not applicable.  (*Id.* at 12–13.)

11   With respect to Claims Two and Three, ARI argues the applicable statutes of limitations for

12   intentional misrepresentation and negligent misrepresentation are three years and two or three

13   years.[4]  (*Id.* at 13–15.)  ARI asserts Plaintiff knew of ARI and the facts underlying these claims in

14   January 2017 and absolutely no later than when it filed the FAC in August 2017, which

15   "contained the same allegations and raised the same issues that are now the subject of its claims

16   against ARI."  (*Id.*)

17          In opposition, Plaintiff asserts the Supreme Court's decision in *Krupski* should govern,

18   which concluded that "the plaintiff's failure to name [the defendant] initially was a mistake

19   within the meaning of [Rule 15(c)]," which asks "whether [the defendant] knew or should have

20   known that it would have been named as a defendant but for an error."  (ECF No. 115 at 9–10

21   (citing *Krupski v. Costa Crociere S.p.A.*, 650 U.S. 528, 548–49, 555 (2010)).)  Plaintiff further

22   asserts the decision of a court within the Eastern District should govern the issue of whether Rule

23   15(c) applies to both the substitution and addition of a party, as the court held that "Rule 15(c)

24   relation back applies irrespective of whether a party is being substituted or added."  (*Id.* at 10–11

25   (citing *United States ex rel. Schmuckley v. Rite-Aid Corp.* (*Rite-Aid*), No. 2:12-cv-01699-KJM-

26   EFB, 2021 WL 1295391, at * (E.D. Cal. Apr. 7, 2021)).)  Plaintiff finally maintains that the three

27   _____

28   [4]        ARI notes the applicable statute of limitations for negligent misrepresentation is two years
     if the claim is based on negligence and three years if it is based on deceit or fraud.  (*Id.* at 15.)

1    prongs of Rule 15(c) are met, as: (1) "the allegations against ARI arise out of the same 'conduct,

2    transaction, or occurrence' alleged in the original complaint as against FedEx"; (2) ARI was

3    immediately on notice of this suit as ARI's counsel reached out to Plaintiff's counsel within

4    weeks about potential settlement, has directed FedEx's defense in this case, and has now formally

5    appeared on behalf of ARI; and (3) "ARI knew from the outset that [Plaintiff] in naming FedEx

6    had missed a seriously culpable party and main participant in the scheme at issue," as ARI

7    reached out about potential settlement and told Plaintiff it would not be let back onto ARI's

8    platform or auction houses unless the suit against FedEx was dropped.  (*Id.* at 11.)

9        In reply, ARI maintains that *Krupski* and *Rite-Aid* are distinguishable because they

10   involved related corporate entities and defendants who either acknowledged or contributed to the

11   confusion surrounding the properly-named defendant.  (ECF No. 120 at 7–8.)

12       Rule 15 provides that an amendment to a pleading relates back to the date of the original

13   pleading when:

> the amendment change the party or the naming of the party against
> whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if,
> within the period provided by Rule 4(m) for serving the summons
> and complaint, the party to be brought in by amendment: (i) received
> such notice of the action that it will not be prejudiced in defending
> on the merits; and (ii) knew or should have known that the action
> would have been brought against it, but for a mistake concerning the
> proper party's identity.

19   Fed. R. Civ. P. 15(c)(1)(C).  Rule 15 "governs when an amended pleading 'relates back' to the

20   date of a timely filed original pleading and is thus itself timely even though it was filed outside an

21   applicable statute of limitations."  *Krupski*, 560 U.S. at 541.  When an amended pleading seeks to

22   change a party or a party's name, Rule 15 also requires that "the party to be brought in by

23   amendment . . . knew or should have known that the action would have been brought against it,

24   but for a mistake concerning the proper party's identity."  *Id.* (citing Fed. R. Civ. P. 15(c)(1)(C)).

25       In *Krupski*, the plaintiff sought damages for a slip and fall while she was on board a cruise

26   ship and sued Costa Cruise Lines, the entity listed on the front of her cruise ticket.  *Id.* at 542–43.

27   Costa Cruise then brought to the plaintiff's attention the existence of Costa Crociere — the carrier

28   identified on the cruise ticket — multiple times.  *Id.* at 542–43.  The cruise ticket stated that an

injured party is to submit "written notice of the claim with full particulars . . . to the carrier or its duly authorized agent within 185 days after the date of injury." *Id.* Subsequently, Costa Cruise filed a motion for summary judgment, which the district court denied, and the plaintiff filed an amended complaint. *Id.* at 544. The district court found the amended complaint did not relate back under Rule 15(c) and was untimely, and the Eleventh Circuit affirmed. *Id.* at 544–46. The Supreme Court reversed, finding that the plaintiff's "deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* at 546, 549. Specifically, the Supreme Court stated:

> A plaintiff may know that a prospective defendant — call him party A — exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him . . . [A] plaintiff might know the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.* at 549. The Supreme Court ultimately held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Id.* at 541.

Here, the parties also dispute the last provision under Rule 15(c)(1)(C), whether ARI "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); (*see* ECF No. 115 at 9–12; ECF No. 120 at 5–8.) The Court agrees with Plaintiff that *Krupski* governs. ARI contends there is no mistake as to its identity as Plaintiff "knew of ARI and its potential claims against ARI in 2017." (ECF No. 112-1 at 13.) However, the Court finds particularly convincing Plaintiff's assertion that "both the Complaint and the FAC make clear that [Plaintiff] thought, and justifiably

13

so, that FedEx was the party ultimately responsible for the sale of FedEx delivery vans, as well as the party directing that [Plaintiff] be locked out of the market to purchase said vans.  [Plaintiff] had in part missed the mark and ARI knew it."  (ECF No. 115 at 11 (emphasis removed).) Indeed, the Complaint and the FAC contain numerous allegations specifically referencing ARI. (*See* ECF Nos. 1, 27.)  Based on the foregoing, the Court finds it plausible that Plaintiff, similar to the plaintiff in *Krupski*, might have "harbored a misunderstanding about [ARI's] status or role in the events giving rise to the claim at issue, and [Plaintiff] may mistakenly cho[sen] to sue a different defendant based on that misimpression."  *Krupski*, 560 U.S. at 549.  The Court therefore concludes that ARI should have known that Plaintiff's failure to name it as a defendant in the Complaint or FAC was due to a mistake concerning the proper party's identity.  Accordingly, the SAC relates back to the date of the original Complaint such that Plaintiff's claims against ARI are not time-barred by any applicable statutes of limitation.

### ii.   Claim One: Violation of the Odometer Act

ARI does not move to dismiss Claim One for failure to state a claim.  (*See* ECF No. 112-1 at 11–13.)  Indeed, Plaintiff notes that ARI "never actually argues that [Plaintiff] failed to plead violations of the Odometer Act with the requisite particularity."  (ECF No. 115 at 12.)  ARI does not dispute this in its reply but rather states that Plaintiff "does not even attempt to argue" the Odometer Act claim was pleaded with sufficient particularity.  (*See* ECF No. 120 at 8.) Accordingly, the Court finds that ARI did not move to dismiss Claim One and it stands.

### iii.   Claim Two: Intentional Misrepresentation

ARI argues Plaintiff does not meet the heightened pleading standard of Rule 9 as it "fails to plead the required elements of the claim with any particularity, stating only in generalities that 'ARI materially misrepresented the mileage on at least 100 FedEx vehicles purchased by [Plaintiff].'"  (ECF No. 112-1 at 14 (citing ECF No. 104 ¶ 142).)  In opposition, Plaintiff asserts "paragraphs 57 through 92 set forth in detail how the scheme worked by going through step by step through the mileage recordation and disclosures of two specific FedEx delivery vans in rote details" and these allegations were incorporated by reference into this claim.  (ECF No. 115 at 12.)  In reply, ARI again states that Plaintiff "does not even attempt to argue" the negligent

14

1  misrepresentation claim was pleaded with sufficient particularity.  (*See* ECF No. 120 at 8.)

2  Under California law, the elements of intentional misrepresentation are: "(1)

3  misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4)

4  justifiable reliance; and (5) resulting damage."  *Helo v. Bank of Am. Servicing Co.*, No. 1:14-cv-

5  01522-LJO, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 5, 2015) (internal quotations omitted).

6  Federal courts will apply state law to determine whether the elements of fraud have been pleaded

7  adequately to state a cause of action, but Rule 9(b) requires that the circumstances establishing

8  fraud must be stated with sufficient particularity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

9  1103 (9th Cir. 2003).  Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party

10  must state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

11  knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

12  9(b).  The allegations underlying a fraud claim must be "specific enough to give defendants

13  notice of the particular misconduct . . . so that they can defend against the charge."  *Vess*, 317

14  F.3d at 1106 (internal quotation marks omitted).  "Averments of fraud must be accompanied by

15  'the who, what, when, where, and how' of the misconduct charged."  *Id.* (citing *Cooper v. Pickett*,

16  137 F.3d 616, 627 (9th Cir. 1997)).  "[A] plaintiff must set forth more than the neutral facts

17  necessary to identify the transaction.  The plaintiff must set forth what is false or misleading

18  about a statement, and why it is false."  *Id.* (internal citation omitted).  Claims for intentional

19  representation are fraud-based claims that must meet the heightened pleading standards of Rule

20  9(b).  *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020).  Accordingly,

21  Plaintiff's intentional misrepresentation claim must meet these standards.

22  Here, with respect to the first element, Plaintiff alleges that "ARI materially

23  misrepresented the mileage on at least 100 FedEx vehicles," but "incorporates by reference" the

24  previous allegations in the SAC.  (ECF No. 104 at 23.)  Plaintiff further alleges that one of the

25  vehicles, "Asset 221846[,] was one of approximately 1,600 FedEx vans in the last 84 months that

26  experienced an odometer change during the course of its life" and Asset 221846 "went in for

27  'preventative maintenance' and repairs," which included "an odometer replacement."  (*Id.* at 11.)

28  Plaintiff alleges that its maintenance on April 11, 2012, Asset 221846 was shown to have a

1   mileage of 256,973 miles" but the vehicle condition report transmitted to ARI that "would form

2   the basis for the online marketing of the vehicle for sale" disclosed the mileage as only 106,349

3   miles.  (*Id.* at 11–12.)  The SAC also states that Plaintiff "has to date confirmed that 98 FedEx

4   vans it purchased between 2013 and 2017 had undisclosed odometer changes," such as Assets

5   227217 and 232266.  (*Id.* at 14.)  The Court finds it is a reasonable inference from these

6   allegations that Plaintiff alleges ARI misrepresented the mileage on these vehicles.  With respect

7   to the second element, Plaintiff alleges "ARI knew the mileage on the odometers for these

8   vehicles was not the actual vehicle mileage, but marketed and sold the vehicles without disclosing

9   that the stated mileage was not the actual mileage" and ARI "had direct access" to the system that

10  contained the true vehicle mileage.  (*Id.* at 23.)  With respect to the third element, Plaintiff alleges

11  ARI was "motivated by money to either actively misrepresent the mileage on FedEx vehicles or

12  [was] willfully blind to the fact that vehicles were being marketed and sold with fraudulent

13  mileage numbers."  (*Id.* at 23–24.)  With respect to the fourth element, Plaintiff alleges it

14  "justifiably relied upon the mileage numbers being purveyed by FedEx and ARI with respect to

15  FedEx vehicles being remarketed by ARI."  (*Id.* at 24.)  With respect to the fifth element, Plaintiff

16  alleges it "was forced to expend additional money to repair and transport purchased vehicles that

17  were inaccurately represented in their disclosures, announcements, advertising, and Condition

18  Reports" and "was unable to fulfill obligations made its clients and suffered other injury and

19  damage to be proven at trial."  (*Id.*)  Based on the foregoing, the Court finds that Plaintiff

20  adequately states a claim for intentional misrepresentation.  Accordingly, ARI's motion to

21  dismiss Claim Two is DENIED.

22              *iv.   Claim Three: Negligent Misrepresentation*

23          ARI argues that this claim fails because "it is based entirely on supposed non-disclosure

24  of odometer changes, and non-disclosures or omissions cannot form the basis of a legally viable

25  negligent misrepresentation claim."  (ECF No. 112-1 at 15 (citing *GemCap Lending, LLC v.*

26  *Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1040 (C.D. Cal. 2017)).)  In opposition, Plaintiff

27  asserts ARI's reliance on *GemCap* is misplaced because it "concluded that the defendants did not

28  conceal or suppress any material in fact in breach of a duty."  (ECF No. 115 at 12–13.)  Plaintiff

16

further asserts that it alleges an affirmative misrepresentation made in allowing FedEx vehicles to be remarketed and sold utilizing inaccurate mileage numbers and even if these allegations are construed as non-disclosure, ARI had an obligation to Plaintiff "as a member of 'a specific class of persons' involved in a transaction that the defendant 'supplier of information intends the information to influence.'"  (*Id.* at 13 (citing *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 414 (1992)).)  In reply, ARI contends that it did not make representations, as they were contained in the condition reports prepared by auction houses who conducted the vehicle sales, and *Bily* is inapplicable here because it applies to "suppliers of commercial information to third persons who are intended beneficiaries of that information."  (ECF No. 120 at 8–9.)

Under California law, the elements of negligent misrepresentation are the same as intentional misrepresentation — minus the element of intent to induce reliance.  *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 101 (E.D. Cal. 2010) (citing *Cadlo v. Owens-Illionis, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).  A negligent misrepresentation claim must also comply with the heightened pleading standards of Rule 9(b).  *Id.*

Here, the Court agrees with Plaintiff that it alleges an affirmative misrepresentation, as it alleges "ARI materially misrepresented the mileage on at least 100 FedEx vehicles to [Plaintiff.]" (ECF No. 104 at 24.)  The Court has already found above that Plaintiff adequately alleges a claim for intentional misrepresentation.  Because the elements for a negligent misrepresentation claim are the same as the elements for an intentional misrepresentation claim, minus the element of intent to induce reliance, the Court finds that Plaintiff also adequately alleges a claim for negligent misrepresentation.  The Court therefore need not decide whether ARI had an obligation to Plaintiff "as a member of a 'specific class.'"  Accordingly, ARI's motion to dismiss Claim Three is DENIED.

### *v.   Claim Four: Violation of RICO*

Plaintiff alleges three different counts within its RICO claim.  The Court will consider each in turn.

///

///

1

*a)   Violation of 18 U.S.C. § 1962(c) ("§ 1962(c)")*

2

"To state a RICO claim under § 1962(c), a plaintiff must allege[] (i) conduct (ii) of an

3

enterprise (ii) through a pattern (iv) of racketeering activity, and (v) injury in the plaintiffs'

4

business or property by the conduct constituting the violation." *Comm. to Protect our Agric.*

5

*Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017).

6

ARI argues Plaintiff fails to adequately plead the existence of an enterprise, that there

7

were predicate acts of wire or mail fraud constituting a pattern of racketeering activity, and a

8

pattern of racketeering.  (ECF No. 112-1 at 15–17.)  The Court will consider each of ARI's

9

arguments in turn.

10

*1)   Enterprise*

11

ARI argues Plaintiff's "only attempt to plead an enterprise is the conclusory allegation

12

that 'ARI and FedEx constitute an enterprise engaged in and whose activities affect interstate

13

commerce.'"  (ECF No. 112-1 at 16 (citing ECF No. 104 ¶ 77).)  ARI contends this sole

14

allegation is insufficient to give the Court information "as to the form of that enterprise, the ways

15

in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the

16

enterprise."  (*Id.*)  In opposition, Plaintiff contends that it sufficiently outlines the structure of the

17

enterprise in paragraphs 51 through 55 and that ARI and FedEx had a common purpose of

18

maximizing the sale price of the FedEx vehicles, which meant more revenue for both ARI and

19

FedEx.  (ECF No. 115 at 14–15.)  In reply, ARI maintains all that Plaintiff has pleaded "is that a

20

contract between the [p]arties existed," which is insufficient to claim a RICO enterprise existed.

21

(ECF No. 120 at 9.)

22

To adequately plead the existence of an enterprise, a plaintiff must establish: (1) a

23

common purpose, or "that the group engaged in enterprise conduct distinct from their own

24

affairs"; (2) "an ongoing structure or organization to the enterprise, which may either be formal or

25

informal"; and (3) "the enterprise had the longevity necessary to accomplish its purpose." *Comm.*

26

*to Protect our Agric. Water*, 235 F. Supp. 3d at 1173–74.

27

Here, with respect to the first element, Plaintiff cites to paragraphs in the SAC which

28

allege that "ARI and FedEx were motivated by money to either actively misrepresent the mileage

on FedEx vehicles or were willfully blind to the fact that vehicles were being marketed and sold

with fraudulent mileage numbers" and that "FedEx and ARI made out handsomely in terms of the

increased profits garnered from the sales."  (ECF No. 115 at 15 (citing ECF No. 104 ¶¶ 92, 149).)

Plaintiff therefore adequately establishes that the common purpose of the enterprise was to make

money.  With respect to the second element, Plaintiff alleges the FMSA was a "longstanding

agreement for ARI to manage acquisition, licensing and maintenance of vehicles for FedEx,"

which was expanded to include vehicle remarketing services.  (*Id*. (citing ECF No. 104 ¶¶ 38–39,

45, 51–55).)  With respect to the third element, as just noted, Plaintiff alleges that "FedEx and

ARI made out handsomely in terms of the increased profits garnered from the sales."  (ECF No.

104 ¶ 92.)  Accordingly, Plaintiff adequately alleges the existence of an enterprise and this

element is met.

*2)  Predicate Acts of Racketeering Activity*

ARI contends Plaintiff's allegations of predicate mail or wire fraud are conclusory and

boilerplate, as Plaintiff only alleges "Defendants' activities include at least two acts of

racketeering activity" and that "in transmitting and marketing FedEx vehicles with false mileage

disclosures through interstate wires and mail, FedEx and ARI conducted and participated in the

affairs of an enterprise through a pattern of racketeering activity."  (ECF No. 112-1 at 16–17

(citing ECF No. 104 ¶¶ 175–76).)  ARI argues this does not meet Rule 9(b)'s heightened pleading

standard.  (*Id.* at 17.)  In opposition, Plaintiff argues the SAC contains sufficient allegations to

establish false information regarding the mileage on FedEx vehicles which "was conveyed, via

the internet, by a New Jersey company [ARI] concerning the vehicle located in Washington for

sale to a company located in Nevada" and "this same practice was repeated numerous times."

(ECF No. 115 at 15–16.)

The "racketeering activity" element of a RICO claim can be established by alleging

predicate acts of racketeering.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*

(*Schreiber*), 806 F.2d 1393, 1398 (9th Cir. 1986); *Comm. to Protect our Agric. Water*, 235 F.

Supp. 3d at 1176.  "To allege a violation of the mail fraud statute, it is necessary to show that[:]

(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United

1    States mails or caused a use of United States mails in furtherance of the scheme; and (3) the

2    defendants did so with the specific intent to deceive or defraud." *Id.* at 1399–1400.  Similarly, the

3    elements to allege a violation of wire fraud are similar, except the second element is "use of the

4    United States wires or causing a use of the United States wires in furtherance of the scheme." *Id.*

5    at 1400.  Additionally, "when a RICO claim is based on a predicate offense of fraud, the

6    circumstances constituting fraud . . . shall be stated with particularity pursuant to [Rule] 9(b)."

7    *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1173.

8          Here, ARI is correct that Plaintiff only alleges in conclusory fashion that "Defendants'

9    activities include at least two acts of racketeering activity" and their "conduct constitutes a

10   'pattern' of racketeering activity."  (ECF No. 104 at 27.)  With respect to the first element,

11   looking at the SAC in its entirety, the reasonable inference is that Defendants "formed a scheme

12   or artifice to defraud."  *Schreiber*, 806 F.2d at 1399–1400.  The SAC includes allegations

13   regarding the FMSA and the Ninth Amendment for vehicle remarketing services, how both

14   worked in practice and that "FedEx and ARI made out handsomely in terms of the increased

15   profits garnered from the sales" of vehicles with allegedly incorrect odometer readings.  (ECF

16   No. 104 at 7–14.)  Further, the paragraphs in the SAC that Plaintiff specifically points to as

17   establishing mail or wire fraud are sufficient, as they describe the vehicles at issue, the mileage on

18   which were allegedly misreported, how neither FedEx nor ARI complied with federal law for a

19   sticker to be placed on the left door frame to specify "the mileage before the service . . . and the

20   date of service," and how the condition reports used to market the sale of the vehicles falsely

21   reported mileage.  (*See* ECF No. 1 at 15–16 (citing ECF No. 104 ¶¶ 57, 67, 74, 76, 78, 82–83, 87,

22   89, 93–94, 124).)  Plaintiff also alleges that ARI had access to FedEx's VAGIS system which

23   included detailed information for each vehicle.[5]  (*Id.* at 14–15 (citing ECF No. 104 ¶ 43); *see also*

24   ECF No. 104 ¶ 113.)  With respect to the second element, Plaintiff alleges "ARI routinely used

25   interstate mail to send vehicle titles containing inaccurate statements of mileage to [a]uction

26

27   _____
        [5]      Although paragraph 43 is redacted in the SAC (ECF No. 104), a review of the sealed,
28   unredacted SAC (ECF No. 95) reveals the allegations are consistent with what Plaintiff argues
     here.

1    [h]ouses and purchasers" and FedEx and ARI "transmit[ed] and market[ed] FedEx vehicles with

2    false mileage disclosures through interstate wires and mail."  (ECF No. 104 at 20, 27.)  With

3    respect to the third element, Plaintiff alleges "Defendants have knowingly, willfully and

4    intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the

5    enterprise" of wire and mail fraud."  (*Id.* at 29.)  Accordingly, Plaintiff adequately establishes the

6    predicate acts of mail and wire fraud and this element is met.

7                                    *3)  Pattern*

8            ARI argues Plaintiff does not allege any threat of continued criminal activity and "[t]he

9    sale of vehicles to a single party in just over a year (and none since 2017) cannot plausibly

10   constitute a threat[.]"  (ECF No. 112-1 at 17.)  In opposition, Plaintiff states a period of one year

11   is generally required to establish a pattern of racketeering and the SAC alleges FedEx changed

12   odometers over an 84-month period and Plaintiff purchased vans with undisclosed odometer

13   changes over a four-year period.  (ECF No. 115 at 16.)  Plaintiff also contends the SAC alleges it

14   has continued to be locked out of the market.  (*Id.*)  In reply, ARI argues the SAC only identifies

15   vehicles purchased in 2016–2017 and Plaintiff's argument that it is locked out of the market is

16   unfounded as its purported refusal to sell to Plaintiff does not constitute criminal activity nor do

17   the allegations that ARI controlled numerous auction houses or directed their actions as to

18   Plaintiff have any basis in fact.  (ECF No. 120 at 10.)

19           "To plead a pattern of racketeering activity, plaintiffs must allege: (i) that the racketeering

20   predicates are related[;] and (ii) that they amount to or pose a threat of continued criminal

21   activity."  *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1177.  With respect to the

22   former, "plaintiffs must allege that defendants committed at least two of the statutorily

23   enumerated predicate acts," which include mail and wire fraud.  *Id.*  With respect to the latter,

24   "[t]he continuity requirement is satisfied if plaintiffs allege either a series of related predicates

25   extending over a substantial period of time, i.e., closed-continuity, or past conduct that by its

26   nature projects into the future with a threat of repetition, i.e., open-ended continuity."  *Id.*

27   (internal quotation marks and citations omitted).

28   ///

                                        21

With respect to the first element, as noted above, Plaintiffs adequately allege that ARI has committed the predicate acts of mail and wire fraud.  With respect to the second element, the Court agrees with Plaintiff that the SAC adequately alleges both closed and open-ended continuity.  (ECF No. 115 at 16.)  Plaintiff alleges "approximately 1,600 FedEx vans in the last 84 months . . . experienced an odometer change" and Plaintiff "has to date confirmed that 98 FedEx vans it purchased between 2013 and 2017 had undisclosed odometer changes."  (ECF No. 104 at 11, 14.)  Plaintiff further alleges that after it filed the instant suit, it "found itself locked out of ARI's Auto Direct website" and this suspension "quickly spread across the industry and . . . [Plaintiff] found itself locked out of bidding on all vehicles at [a]uction [h]ouses as well."  (*Id.* at 18.)  Plaintiff alleges it was told "that as a prerequisite to readmittance to the auctions [it] would have to drop its lawsuit against FedEx."  (*Id.*)  Plaintiff is further correct that the Ninth Circuit has found a period of one year is generally required, which is met here.  (ECF No. 115 at 16 (citing *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996)).)  Accordingly, the pattern element is met.

With respect to the remaining elements of conduct and injury for a § 1962(c) claim, the Court finds that the former is satisfied through the allegations regarding the racketeering activity and the latter is satisfied though Plaintiff's allegation that it "has been injured in its business and property in that it has been duped into purchasing FedEx vans with excess mileage, or vans that were inoperable or lacked represented equipment or features."  (ECF No. 104 at 27.)  Accordingly, the Court finds that Plaintiff adequately states a claim for a violation of § 1962(c) and ARI's motion to dismiss this count is DENIED.

### b)  *Violation of 18 U.S.C. § 1962(a) ("§ 1962(a)")*

ARI argues Plaintiff's allegations are mere recitations of the legal standard for a § 1962(a) claim and that Plaintiff fails to sufficiently allege proximate causation and racketeering damages.  (ECF No. 112-1 at 18.)  In opposition, Plaintiff alleges the SAC adequately establishes "how Defendants utilized 'racketeering income' to exert influence over [a]uction [h]ouses to block [Plaintiff] from purchasing FedEx vehicles from either ARI or the [a]uction [h]ouses."  (ECF No. 115 at 17.)  In reply, ARI maintains Plaintiff alleges injury only from the predicate acts and Plaintiff does not cite to anywhere in the SAC regarding its arguments about being locked out of

1   purchasing vehicles from ARI or auction houses.  (ECF No. 120 at 10.)

2       "[A] plaintiff seeking civil damages for a violation of [§] 1962(a) must allege facts

3   tending to show that he or she was injured by the use or investment of racketeering income."

4   *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  A plaintiff must also

5   allege "that the investment of racketeering income was the proximate cause of its injury."  *Id.*

6   "Section 1962(a) prohibits the investment of money which has been earned through acts of

7   racketeering in an enterprise."  *Schreiber*, 806 F.2d at 1397.

8       Here, a review of the SAC reveals that Plaintiff does not allege ARI has used or invested

9   the money or profits earned through its predicate acts of mail and wire fraud.  Although Plaintiff

10  cites to a number of paragraphs in the SAC regarding the income generated from the predicate

11  acts of mail and wire fraud, the Court agrees with ARI that Plaintiff does not cite to anywhere in

12  the SAC for its assertion that the racketeering income was used to block Plaintiff from purchasing

13  FedEx vehicles.  (ECF No. 115 at 17; ECF No. 120 at 10.)  Additionally, Plaintiff states in a

14  conclusory fashion that "[a]s a direct and proximate consequence of the conduct of Defendants . .

15  . Plaintiff has been injured in its business and property."  (ECF No. 104 at 28.)  Plaintiff does not

16  show that the investment of the racketeering income is a proximate cause of its injury.

17  Accordingly, the Court finds Plaintiff has not adequately stated a claim for a violation of §

18  1962(a) and ARI's motion to dismiss this count is GRANTED with leave to amend.

19          *c)   Violation of 18 U.S.C. § 1962(d) ("§ 1962(d)")*

20      ARI argues since Plaintiff fails to allege a substantive violation under §§ 1962(a) or (c),

21  its claim under § 1962(d) fails as well.  (ECF No. 112-1 at 18.)  In opposition, Plaintiff asserts it

22  alleges sufficient facts to establish the "racketeering enterprise for ARI to remarket FedEx

23  vehicles at inflated prices based on knowingly false Condition Reports."  (ECF No. 115 at 18.)

24      To plead a violation of § 1962(d), a plaintiff must allege "either an agreement that is a

25  substantive violation of RICO or that the defendants agreed to commit, or participated in, a

26  violation of two predicate offenses."  *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1172

27  (quoting *Howard v. Am. Online, Inc.*, 208 F.3d 471, 751 (9th Cir. 2000)).  "The illegal agreement

28  need not be express as long as its existence can be inferred from the words, actions, or

1  interdependence of activities and persons involved." *Id.* (quoting *Oki Semiconductor Co. v. Wells*

2  *Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002)).  "Under § 1962(d), while a

3  defendant need not have personally committed a predicate act, or even an overt act in furtherance

4  of the RICO conspiracy, the defendant must be aware of the essential nature and scope of the

5  enterprise and intended to participate in it." *Id.* (internal quotation marks and citations omitted).

6  　　　Here, the Court has already found that Plaintiff adequately alleges Defendants participated

7  in a violation of two predicate offense — mail and wire fraud.  Accordingly, the Court finds that

8  Plaintiff adequately alleges a violation of § 1962(d) and ARI's motion to dismiss this claim is

9  DENIED.

10  　　　　　　　*vi.   Claim Five: Intentional Interference with Prospective Economic*

11  　　　　　　　　　　　　*Advantage*

12  　　　ARI argues Plaintiff "fails to identify specifically a third-party customer that ARI knew of

13  with whom [Plaintiff's] relationship was harmed" and instead makes allegations regarding

14  relationships with customers.  (ECF No. 112-1 at 19.)  In opposition, Plaintiff asserts it received a

15  complaint from a FedEx ground customer in Everett, Washington, but that it can "easily identify

16  customers . . . that it can no longer sell to as it has no inventory to sell due to ARI's actions."

17  (ECF No. 115 at 18–19.)  In reply, ARI maintains the SAC "does not allege anything about

18  [Plaintiff's] relationship with [the Everett, Washington] customer or ARI's interference, merely

19  that one customer made a single complaint."  (ECF No. 120 at 11 (citing ECF No. 104 ¶ 105).)

20  　　　The elements required for a plaintiff to establish intentional interference with prospective

21  economic advantage are as follows: (1) an economic relationship between plaintiff and a third

22  party, with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of

23  the economic relationship; (3) intentionally wrongful acts by defendant designed to disrupt the

24  economic relationship; (4) actual disruption of the economic relationship; (5) economic harm to

25  plaintiff proximately caused by defendant's wrongful act; and (6) defendant engaged in conduct

26  that was independently wrongful by some legal measure other than the interference itself.

27  *Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, No. 12cv0945 AJB (MDD),

28  2013 WL 2248140, at *12 (S.D. Cal. May 20, 2013); *Korea Supply Co. v. Lockheed Martin*

1   *Corp.*, 29 Cal. 4th 1134, 1153–54 (2003).

2         Here, the Court finds that ARI is correct that Plaintiff does not adequately establish

3   interference with a "particular individual," which is necessary to fulfill the first element of this

4   claim.  (ECF No. 112-1 at 19 (citing *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013

5   WL 1915867, at *10 (N.D. Cal. May 8, 2013); *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,

6   117 F. Supp. 3d 1092, 1118 (C.D. Cal. 2015)).)  Instead, Plaintiff only alleges that it received a

7   complaint from a FedEx ground customer in Everett, Washington (without identifying which

8   customer it was) and stating in a conclusory fashion that "ARI was well aware of the fact that

9   [Plaintiff] was a dealer in FedEx delivery vans and had established good relationships with

10   customers across the country" and "ARI deprived [Plaintiff] of access to inventory and drove

11   [Plaintiff] out of business, destroying its many customer relationships."  (ECF No. 104 ¶¶ 105,

12   200, 205.)  Because the first element is not met, ARI's motion to dismiss Claim Five is

13   GRANTED with leave to amend.

14             *vii.   Claim Six: Breach of Express Warranty*

15         ARI argues it did not generate the condition reports, which Plaintiff alleges contained the

16   "warranties regarding the quality and condition of the goods[.]"  (ECF No. 112-1 at 20 (citing

17   ECF No. 104 ¶ 208).)  ARI further argues that Plaintiff's allegations "do not provide the terms of

18   an express warranty, how that warranty led to the establishment of a bargain, or fatally under

19   California law, allegations of pre-suit notice of the alleged breach of warranty."  (*Id.* at 21.)  In

20   opposition, Plaintiff concedes the exact terms of the warranty is required to be pleaded, but

21   contends — without providing any case law in support — that "[a] description of the goods at

22   issue can create an express warranty so long as it was part of the basis of the bargain between the

23   parties" and the condition reports provided specific descriptions about the vehicles being sold by

24   ARI.  (ECF No. 115 at 20.)  Plaintiff further asserts that the SAC specifically alleges Plaintiff

25   gave pre-suit notice of the issues set forth in this suit.  (*Id.* at 21.)  In reply, ARI asserts the

26   misrepresentations in the condition reports were not created by ARI nor is ARI responsible for the

27   representations of entities over which it has no control.  (ECF No. 120 at 11.)

28   ///

1    "To state a claim for breach of express warranty under California law, a plaintiff must

2    allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of

3    warranty which proximately caused plaintiff's injury." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d

4    810, 817 (N.D. Cal. 2014).  "A plaintiff must also plead that he or she provided the defendant

5    with pre-suit notice of the breach." *Id.* (citing Cal. Com. Code § 2607).

6          Here, although the Court has found that Plaintiff adequately alleges ARI made affirmative

7    misrepresentations in allowing FedEx vehicles to be remarketed and sold utilizing inaccurate

8    mileage numbers, the SAC does not set forth the exact terms of any warranty.  Further, Plaintiff

9    does not provide any case law in support of the contention that the exact terms are not needed at

10   the pleading stage, nor can the Court find any such case law.  Accordingly, because the first

11   element is not met, ARI's motion to dismiss Claim Six is GRANTED with leave to amend.

12                    *viii.    Claim Seven: Breach of Implied Warranty of Merchantability*

13         ARI argues that Plaintiff fails to specify the statute under which it brings this claim in

14   violation of Rule 8.  (ECF No. 112-1 at 21 (citing *T&M Solar and Air Conditioning, Inc. v.*

15   *Lennox Int'l, Inc.*, 83 F. Supp. 3d 855, 874 n.6 (N.D. Cal 2015)).)  ARI further argues Plaintiff

16   has not adequately pleaded that the commercial vehicles it purchased had the "fundamental

17   defect" of failing to "provide[] for a minimum level of quality."  (*Id.*)  In opposition, Plaintiff

18   asserts that in the case cited by ARI, the district court "construed an implied warranty of

19   merchantability claim as arising under the Commercial Code despite no allegations of a specific

20   statute."  (ECF No. 115 at 21 (citing *T&M Solar*, 83 F. Supp. 3d at 874 n.6).)  Plaintiff further

21   asserts that it has adequately pleaded facts based on FedEx and ARI's concealment of odometer

22   alterations and it "need only allege facts showing that the vehicles would not 'pass without

23   objection in the trade under the contract' or are not 'adequately . . . labeled as the agreement may

24   require' or do not '[c]onform to the promises or affirmations of fact made on the . . . label, if

25   any.'"  (*Id.* at 22 (emphasis removed).)  In reply, ARI maintains that the footnote in *T&M Solar*

26   states that "'[t]he lack of clarity about under what law [p]laintiffs bring their breach of warranty

27   claims is . . . problematic,' as implied warranty claims brought under different statues have

28   different elements that must be pleaded."  (ECF No. 120 at 12 (citing *T&M Solar*, 83 F. Supp. 3d

26

1    at 874 n.6.)

2        "The implied warranty of merchantability does not impose a general requirement that

3    goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of

4    quality."  *T&M Solar*, 83 F. Supp. 3d at 878 (internal quotation marks and citation omitted).  To

5    state this claim, a plaintiff must allege "a fundamental defect that renders the product unfit for its

6    ordinary purpose" and "[s]uch fitness is shown if the product is in safe condition and substantially

7    free of defects[.]"  *Id.* (internal citations omitted).

8        Here, Plaintiff is correct that when the relevant statute under which the breach of warranty

9    claim is brought is not stated, "courts tend to read warranty claims as arising under the California

10    Commercial Code instead" and the *T&M Solar* court construed the plaintiffs' claims (which

11    included an implied warranty of merchantability claim) as arising under California Commercial

12    Code § 2314.  *Id.* at 874 n.6–7.  This Court therefore also construes Plaintiff's implied warranty

13    of merchantability claim as arising under California Commercial Code § 2314.  The Court finds

14    that Plaintiff adequately alleges the FedEx vans it purchased are not "substantially free of

15    defects," as Plaintiff alleges that they had incorrect odometer readings, gasoline trucks were

16    delivered in place of diesel trucks and vice versa, non-air-conditioned vans were sold as having

17    air conditioners, and inoperable vehicles were sold as drivable.  (ECF No. 104 at 10–18.)

18    Accordingly, Plaintiff adequately states a claim for breach of an implied warranty of

19    merchantability and ARI's motion to dismiss Claim Seven is DENIED.

20                   *ix.   Claim Eight: Violation of the UCL*

21        ARI argues Plaintiff "does not expressly premise its purported claim under the UCL on

22    any particular violation of law, public policy, or allegation of fraudulent conduct," which does not

23    put ARI on notice of what conduct has allegedly violated the UCL.  (ECF No. 112-1 at 22.)  In

24    opposition, Plaintiff contends its UCL claim is adequately pleaded because it sets forth "in rote

25    detail" its claims for odometer fraud and intentional misrepresentation.  (ECF No. 115 at 12 n.2.)

26    In reply, ARI maintains its claim in the SAC incorporates the allegations from previous

27    paragraphs, which does not meet the Rule 9(b) pleading standard.  (ECF No. 120 at 13.)

28    ///

1    The UCL's unlawful prong "borrows violations of other laws and treats them as unlawful

2    practices that the [UCL] makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A.*

3    *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Here, the Court has already found that

4    Plaintiff has sufficiently pleaded claims for intentional misrepresentation, negligent

5    misrepresentation, a violation of §§ 1962(c) and (d) of the RICO Act, and breach of implied

6    warranty of merchantability. The Court therefore finds Plaintiff's UCL claim is properly

7    premised on those violations of law. Accordingly, ARI's motion to dismiss Claim Eight is

8    DENIED.

9    *x.  Claim Nine: Violation of the Sherman Act*

10   ARI argues Plaintiff does not establish with "any factual detail what the relevant market

11   is, its scope and contours, . . . what other goods or services have interchangeable uses[,] . . . or

12   why ARI actually has market power in the relevant market." (ECF No. 112-1 at 23.) ARI further

13   argues that only individuals who possess standing are permitted to bring an action and Plaintiff

14   "does not plead any facts suggesting any harm to competition and instead focuses solely on the

15   harm to itself." (*Id.*) ARI contends Plaintiff fails to allege an agreement but merely that ARI had

16   "significant sway over [a]uction [h]ouses" and fails to allege parallel conduct and merely alleges

17   "it was barred from utilizing ARI's sale platforms and the various auction houses." (*Id.* at 23–24

18   (citing ECF No. 104 ¶¶ 221, 225).)

19   In opposition, Plaintiff asserts ARI used its power to restrain trade and "[t]he SAC sets

20   forth the relevant market of the FedEx vehicles sold through the specific [a]uction [h]ouses . . . ,

21   ARI's position as the sole remarketer of used FedEx vehicles . . . , and ARI's dominating market

22   power and the influence it wields over the [a]uction [h]ouses." (ECF No. 115 at 22–23 (citing

23   ECF No. 104 ¶¶ 19, 28–36, 50–51).) Plaintiff contends there is an agreement to restrain trade, as

24   ARI admitted to informing auction houses of its decision to lock Plaintiff out of the market. (*Id.*

25   at 23 (citing ECF No. 104 ¶ 116).) Plaintiff finally maintains it has standing and is a consumer in

26   the alleged violator's goods in the restrained market. (*Id.* at 23–24.)

27   To establish liability under § 1 of the Sherman Act, a plaintiff must establish: (1) the

28   existence of an agreement; (2) an intent to harm or unreasonably restrain trade; (3) which actually

injures competition; and (4) that plaintiff was harmed by the defendant's anti-competitive agreement.  *See Fed. Trade Comm'n v. Qualcomm, Inc.*, 969 F.3d 974, 988 (9th Cir. 2020) (emphasis omitted); *Brantly v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).  With respect to the third element, a § 1 plaintiff must "at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail."  *Brantley*, 675 F.3d at 1198.  "Such allegations must 'raise a reasonable expectation that discovery will reveal evidence of' an injury to competition."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A § 1 plaintiff must also "plead an injury to competition beyond the impact on the [plaintiff itself]."  *Id.*

Here, the Court need not address all of ARI's arguments because it finds that Plaintiff fails to adequately plead the third element of injury to competition.  Plaintiff fails to set forth sufficient facts to "sketch the outline of [the injury to competition]" in the vehicle resale market generally and injury to other vehicle resellers other than itself.  Plaintiff only states in conclusory fashion that "[a]s a direct and proximate result of ARI's illegal boycott and resulting restraint on trade and competition, [Plaintiff] has been damaged."  (ECF No. 104 at 33.)  This is not enough.  Accordingly, ARI's motion to dismiss Claim Nine is GRANTED with leave to amend.

///

///

///

///

///

///

///

///

///

///

///

///

///

1       **IV.   CONCLUSION**

2           For the foregoing reasons, the Court hereby GRANTS FedEx's Motion to Dismiss with

3 leave to amend.  (ECF No. 111.)  The Court also hereby GRANTS in part and DENIES in part

4 ARI's Motion to Dismiss (ECF No. 112) as follows:

5                1.  ARI's motion is DENIED as to Claims Two, Three, Four (the counts alleging a

6                     violation of 18 U.S.C. §§ 1962(c) and (d)), and Seven; and

7                2.  ARI's motion is GRANTED as to Claims Four (the count alleging a violation of

8                     18 U.S.C. § 1962(a)), Five, Six, Eight, and Nine with leave to amend.

9           Plaintiff may file an amended complaint not later than thirty (30) days from the date of

10 electronic filing of this Order.  Defendants' responsive pleading is due twenty-one (21) days after

11 Plaintiff files an amended complaint.

12           IT IS SO ORDERED.

13 **DATED:**  March 24, 2022

14

15

16                                    _____

17                                  Troy L. Nunley
                                 United States District Judge

18

19

20

21

22

23

24

25

26

27

28