1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NEVADA FLEET LLC,                          No.  17-cv-01732-DAD-KJN

12                     Plaintiff,

13          v.                                   ORDER DENYING DEFENDANT
                                                 AUTOMOTIVE RENTALS INC.'S MOTION
14   FEDEX CORPORATION, et al.,                  TO DISMISS AND GRANTING IN PART
                                                 AND DENYING IN PART DEFENDANT
15                     Defendants.               FEDERAL EXPRESS CORPORATION'S
                                                 MOTION TO DISMISS
16
                                                 (Doc. Nos. 131, 134)
17

18          This matter is before the court on defendant Automotive Rentals, Inc.'s ("ARI") May 31,

19   2022 motion to dismiss certain claims brought against it and defendant Federal Express Corp.'s

20   ("FedEx") June 2, 2022 motion to dismiss plaintiff's third amended complaint.  (Doc. Nos. 131,

21   134).  On October 11, 2022, the pending motions were taken under submission on the papers.[1]

22   (Doc. No. 158.)  For the reasons explained below, defendant ARI's motion to dismiss will be

23   denied and defendant FedEx's motion to dismiss will be granted in part and denied in part.

24   /////

25   /////

26   _____

27   [1]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 153.)  The
     undersigned has endeavored to work through a substantial backlog of inherited submitted motions
28   in reassigned civil cases as quickly as possible since returning to the Sacramento courthouse in
     August of 2022.

**BACKGROUND**

On April 22, 2022, plaintiff Nevada Fleet LLC filed the operative third amended complaint ("TAC") in this action alleging that defendant FedEx and defendant ARI knowingly sold plaintiff 98 vehicles with double or triple the publicly advertised mileage. (Doc. No. 122.) In its TAC, plaintiff alleges the following.

Plaintiff is an independent automotive dealer specializing in the wholesale purchase and sale of FedEx delivery vans, focusing on vans with lower mileage. (Doc. No. 126 at ¶¶ 17–18, 23.) Plaintiff buys these vans at commercial auctions around the country, as well as directly from defendant ARI. (*Id.* at ¶ 19, 21.) Plaintiff then refurbishes and resells the vans to third-party customers such as the individual Tonn Cummins and the companies KC Delivery Services, Inc., Millennium Express Home Delivery, Inc., and Van Tastic. (*Id.* at ¶¶ 22, 117, 228.) Defendant ARI is the largest privately held corporate fleet management company in the United States. (*Id.* at ¶ 25.) Defendant ARI provides vehicle services including acquisition, customization, maintenance, remarketing, sale, and disposal. (*Id.*) When fleet vehicles reach the end of life as defined under a fleet management agreement, defendant ARI takes possession of the vehicles and markets and sells them via its websites or through an auction house. (*Id.* at ¶ 28.)

Defendant ARI served as defendant FedEx's agent in remarketing and selling defendant FedEx's retired vehicles. (*Id.* at ¶ 157.) On June 1, 2009, at the latest, defendant ARI and defendant FedEx signed the Fleet Management Services Agreement ("FMSA"). (*Id.* at ¶ 37.)[2] On or about July 11, 2013, defendants agreed to a ninth amendment of the FMSA ("the Ninth Amendment"). (*Id.* at ¶ 54.) Under the Ninth Amendment, defendant FedEx determined which retired vehicles would be resold. (*Id.* at ¶ 65.) For each such vehicle, defendant ARI would at some point execute an assignment of title on behalf of defendant FedEx, purporting to assign title to the vehicle from defendant FedEx to defendant ARI. (*Id.* at ¶ 66.) That is, one employee of defendant ARI would sign as defendant FedEx, and another ARI employee would countersign as defendant ARI. (*Id.*) When the vehicle was sold to a third-party buyer such as plaintiff,

---

[2]  A copy of relevant sections of the FMSA is attached to plaintiff's TAC. (*See* Doc. No. 128 at 40–90.)

2

defendant ARI would execute another assignment of title from defendant ARI to that buyer. (*Id.* at 13.) Defendant ARI told plaintiff that it needed to check with defendant FedEx before it could "unwind" any vehicle sales to plaintiff. (*Id.* at ¶ 116.) Under the FMSA, defendant ARI receives a small and capped percentage of the profits from each vehicle it sells, while defendant FedEx receives the much larger remainder of the profits. (Doc. No. 117 at 9.)[3] Moreover, § 11(D) of the FMSA expressly refers to "the transfer of ownership by ARI, as agent, from FedEx to the next succeeding owner." (Doc. No. 117 at 8–9; *see also* Doc. No. 122 at 8.)

For several years, defendants conspired to resell retired vehicles while failing to disclose odometer changes and affirmatively misrepresenting vehicle mileage. (*Id.* at ¶ 203.) Mileage is the most important factor in determining a vehicle's sale price, with lower-mileage vehicles garnering higher prices. (*Id.* at ¶ 162.) Defendant FedEx kept meticulous records of odometer changes and overall mileage on each vehicle. (*Id.* at ¶¶ 70–73.) Defendant ARI was given access to these records. (*Id.* at ¶ 74.) Nevertheless, defendant FedEx routinely failed to affix a sticker to the left door frame specifying the true mileage of the vehicle or to disclose the true mileage in writing after an odometer replacement, as required by the Federal Odometer Act, 49 U.S.C. §§ 32701 *et seq.* (the "Odometer Act"). (*Id.* at ¶¶ 145, 147.) Defendant FedEx's employees also signed certifications attesting to inaccurate mileage. (*Id.* at ¶ 148.) In turn, defendant ARI would fail to disclose the true mileage when the vehicle was resold to third parties such as plaintiff. (*Id.* at ¶ 159.) Specifically, defendant ARI would turn the vehicle over to the auction house, which would then send defendant ARI a vehicle condition report. (*Id.* at ¶ 89.) Due to the lack of stickers or disclosures revealing the odometer change, as well as defendant ARI mailing the auction house title to the vehicle reflecting an inaccurate mileage figure, the auction house's

---

[3] In several documents filed in this case, including plaintiff's TAC and defendant FedEx's pending motion to dismiss (*see* Doc. Nos. 126, 134), sections of the FMSA have been redacted. However, many of these same sections were not redacted in other documents, namely plaintiff's opposition to defendant FedEx's earlier motion to dismiss the SAC (Doc. No. 117) and the court's prior order dismissing plaintiff's SAC (Doc. No. 122). In light of the fact that the unredacted documents have been filed on the public docket for two years and one-and-a-half years, respectively, without defendants requesting that these materials be sealed, the court will refer to the unredacted text of the relevant FMSA sections throughout this order when necessary.

condition report would state a far lower mileage figure than was accurate for the vehicle.  (*See, e.g.*, *id.* at ¶ 93, 137.)  Defendant ARI would then use this condition report as the basis of its online marketing despite knowing the vehicle's mileage was two to three times higher than that reflected on the condition report.  (*Id.* at ¶¶ 89, 93; *see also id.* at ¶ 135.)  As a result of their disguised mileage, the vehicles would sell for nearly double their true value.  (*Id.* at ¶ 102.)

Plaintiff alleges the following details in providing several examples of the alleged scheme. FedEx vehicle asset number ("Asset Number") 221846, a 1998 Freightliner W700 walk-in delivery van with Vehicle Identification Number ("VIN") 4UZA4FF40WC897670, received an odometer replacement on March 29, 2012.  (*Id.* at ¶¶ 67–68, 75–76.)  Neither defendant applied the sticker required by the Odometer Act specifying the accurate pre-replacement mileage.  (*Id.* at ¶ 78.)  Defendant ARI received an electronic request from defendant FedEx to pick up Asset 221846 on April 19, 2017; defendant ARI requested the title for that vehicle on the same day. (*Id.* at ¶¶ 85–86.)  After defendant ARI mailed the title to the vehicle to an auction house, the auction house performed a cursory inspection and sent its condition report to defendant ARI.  (*Id.* at ¶¶ 87–88.)  Defendant ARI used this condition report as the basis of its online marketing of Asset 221846 even though the condition report disclosed the vehicle's mileage as only 106,349 miles, when defendant ARI knew from defendant FedEx's records that the asset had accrued 362,760 miles over the course of 20 years.  (*Id.* at ¶¶ 89, 93–94.)  Plaintiff purchased Asset 221846 on June 1, 2017 for $4,600, nearly twice what the price would be for a similar vehicle with 360,000 miles.  (*Id.* at ¶ 96.)  The bill of sale provided to plaintiff confirmed the odometer reading of only 106,349 miles.  (*Id.*)

Other examples alleged by plaintiff include Assets 227217 and 232266.  (*Id.* at ¶¶ 98, 100.)  Asset 227217 was marketed as having only 86,115 miles when plaintiff bought it in May 2017 for $4,500; defendant FedEx's records show the true mileage as 346,967 miles.  (*Id.* at ¶¶ 98–99.)  Asset 232266 was marketed as having only 150,130 miles when plaintiff bought it in

/////

/////

/////

4

January 2017; defendant FedEx's records show the true mileage as 385,522.  (*Id.* at ¶¶ 100–01.)[4]

Overall, plaintiff has confirmed that it bought at least 98 retired FedEx vans between 2013 and

2017 with undisclosed odometer changes, and likely more.  (*Id.* at ¶ 97.)  Plaintiff paid nearly

double the true value for these vans because of the undisclosed odometer replacements.  (*Id.* at

¶ 102.)

In 2017, plaintiff received a customer complaint from individual Tonn Cummins.  (*Id.* at

¶ 117.)  A scan of the engine revealed that the retired FedEx van Cummins had purchased from

plaintiff with 188,000 miles on the odometer actually had been driven over 300,000 miles.  (*Id.*)

Plaintiff began investigating the odometer discrepancies and complained to the auction houses

and defendant ARI.  (*Id.* at ¶ 118.)  After plaintiff filed this action in August 2017, plaintiff was

locked out of all auction houses and defendant ARI's direct purchasing program.  (*Id.* at ¶¶ 119–

21.)  Defendant ARI and the auction houses informed plaintiff that it would need to drop its

lawsuit against defendant FedEx in order to be readmitted to the auctions.  (*Id.* at ¶ 122.)

Based on the above allegations, plaintiff asserts the following seven claims in its TAC,

with the fifth claim asserted only against defendant ARI, while the remaining claims are asserted

against both defendants:  (1) odometer fraud in violation of the Odometer Act, 49 U.S.C.

§§ 32701, *et seq.*; (2) intentional misrepresentation or omission; (3) negligent misrepresentation

or omission; (4) racketeering in violation of 18 U.S.C. § 1962(c) and conspiracy to commit

racketeering in violation of 18 U.S.C. § 1962(d); (5) intentional interference with prospective

economic advantage; (6) breach of implied warranty of merchantability; and (7) unlawful, unfair,

and fraudulent business practices in violation of California's Unfair Competition Law ("UCL"),

California Business and Professions Code §§ 17200, *et seq.*  (Doc. No. 126 at 24–37.)

On August 8, 2017, plaintiff filed its initial complaint against "FedEx Corporation" and

unnamed defendants Does 1–50.  (Doc. No. 1.)  Plaintiff moved to amend its complaint on

December 29, 2017; the motion was granted by the previously assigned district judge on April 10,

---

[4]  In paragraph 101 of its TAC, plaintiff alleges that it was Asset 227217 with 385,522 miles on it, not Asset 232266.  Given that plaintiff is discussing Asset 232266 at that point in its TAC, and given that plaintiff elsewhere specifies the (different) mileage for Asset 227217, the court assumes that paragraph 101 is intended to provide the mileage figure for Asset 232266.

1   2018, and plaintiff filed its first amended complaint ("FAC") on April 17, 2018, naming those

2   same defendants and defendant FedEx.  (Doc. Nos. 11, 21, 27.)  On July 30, 2018, defendant

3   FedEx filed a motion for judgment on the pleadings; the motion was granted by the previously

4   assigned district judge on June 11, 2021, and plaintiff filed its second amended complaint

5   ("SAC") on July 12, 2021, naming defendants FedEx, ARI, and Does 1–50.  (Doc. Nos. 36, 91,

6   95.)[5]  On August 20, 2021, defendants FedEx and ARI each filed a separate motion to dismiss

7   plaintiff's SAC.  (Doc. Nos. 111, 112.)  On March 25, 2022, the previously assigned district

8   judge granted defendant FedEx's motion on the grounds that plaintiff had failed to sufficiently

9   allege that defendant ARI was the agent of defendant FedEx.  (Doc. No. 122.)  In the same order

10  (the "Prior Order"), the court denied in part defendant ARI's motion to dismiss, finding that

11  plaintiff had sufficiently alleged odometer fraud, intentional misrepresentation, negligent

12  misrepresentation, racketeering and conspiracy to commit racketeering, breach of implied

13  warranty, and violation of the UCL on the part of defendant ARI.  (*Id.*)  However, the court also

14  granted in part defendant ARI's motion, finding that plaintiff had failed to sufficiently allege

15  intentional interference with prospective economic advantage, breach of express warranty, and

16  violation of the Sherman Act.  (*Id.*)

17       On April 22, 2022, plaintiff filed its TAC.  (Doc. No. 126.)  As noted above, on May 31,

18  2022, defendant ARI filed its pending motion to dismiss the intentional interference with

19  prospective economic advantage claim brought against it in the TAC, as well as the claim arising

20  under 18 U.S.C. § 1962(a) that defendant ARI argues is being brought against it in the TAC.

21  (Doc. No. 131.)  And, on June 2, 2022, defendant FedEx filed its pending motion to dismiss

22  plaintiff's TAC, arguing that plaintiff again failed to sufficiently allege each claim via either an

23  agency relationship or a theory of direct liability.  (Doc. No. 134.)  Plaintiff filed its opposition to

24  defendant ARI's motion to dismiss on July 1, 2022 and its opposition to defendant FedEx's

25  motion to dismiss on July 5, 2022.  (Doc. Nos. 143, 145.)  On July 11, 2022, defendant ARI filed

26  its reply to plaintiff's opposition; defendant FedEx filed its reply to plaintiff's opposition on

27

28  _____

[5]  On August 2, 2021, plaintiff filed a redacted SAC, naming the same defendants as in its
unredacted SAC.  (Doc. No. 104.)

July 18, 2022.  (Doc. No. 148, 152.)  Finally, as noted above, on August 25, 2022, the case was reassigned to the undersigned.  (Doc. No. 153.)

**LEGAL STANDARD**

**A.      Motion to Dismiss Under Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not

7

physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**B.     Heightened Pleading Standard Under Rule 9(b)**

"When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  To satisfy the particularity standard of Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quotations omitted) (quoting *Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).  However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally."  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) (quoting Fed. R. Civ. P. 9(b)); *see also Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *2 (9th Cir. 2022)[6] ("Under Fed. R. Civ. P. 9(b), a plaintiff must plead circumstances from which a court can plausibly infer the defendant's knowledge.").

**ANALYSIS**

**A.     Defendant ARI's Motion to Dismiss**

In its pending motion, defendant ARI argues that plaintiff has failed to sufficiently allege a racketeering or conspiracy to commit racketeering claim arising under 18 U.S.C. § 1962(a) or

/////

---

[6] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

its fifth claim for intentional interference with prospective economic advantage.  (Doc. No. 131-1 at 8–14.)

### 1.   Violation of 18 U.S.C. 1962(a)

In its pending motion to dismiss, defendant ARI argues that plaintiff fails to state a claim for violation of 18 U.S.C. § 1962(a).  (Doc. No. 131-1 at 8.)  In its opposition to the pending motion, plaintiff clarifies that it opted not to replead a claim under § 1962(a) in its TAC after that claim was dismissed in its second amended complaint ("SAC") by the court.  (Doc. No. 143 at 7.) In its reply to plaintiff's opposition, defendant ARI states that it "is content to let [plaintiff's] much-needed clarification stand as the final word on its defunct § 1962(a) claim."  (Doc. No. 148 at 4.)  After reviewing plaintiff's TAC, the court is also satisfied that plaintiff is not asserting any claim under § 1962(a).

Accordingly, defendant ARI's motion to dismiss plaintiff's claim(s) brought against it arising under 18 U.S.C. § 1962(a) will be denied as moot in light of plaintiff's express abandonment of any such claim(s).

### 2.   Claim 5:  Intentional Interference with Prospective Economic Advantage

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).  A plaintiff must also allege that the defendant's conduct was independently wrongful, i.e., "wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).

In its pending motion to dismiss, defendant ARI argues that plaintiff has failed to allege (1) defendant ARI's knowledge of plaintiff's economic relationships, (2) actual disruption of an

1    economic relationship, and (3) that defendant ARI's conduct was independently wrongful.  (Doc.

2    No. 131-1 at 10–14.)  Because the court finds that plaintiff has failed to allege defendant ARI's

3    knowledge of plaintiff's economic relationships, the court need not and does not consider

4    defendant's remaining arguments.

5         Defendant ARI argues that, while plaintiff has alleged in the TAC its economic

6    relationships with the individual Tonn Cummins and with three delivery companies, plaintiff has

7    failed to allege that defendant ARI knew of any of these economic relationships.  (Doc. No. 131-1

8    at 11); *see also* (Doc. No. 126 at ¶ 228 ("NVF had sold multiple Fedex delivery vans to the

9    following companies[:]  KC Delivery Services, Inc., Millennium Express Home Delivery, Inc.

10   and Van Tastic.")).  In support of this argument, defendant ARI cites to decisions of both the

11   Ninth Circuit and several district courts that, according to defendant, have held similar allegations

12   to be insufficient to plead knowledge.  (Doc. No. 131-1 at 11–12.)

13        In its opposition, plaintiff highlights two sets of allegations that it argues are sufficient to

14   plead defendant ARI's knowledge.  First, plaintiff notes that it has alleged that defendant ARI

15   "was well aware of the fact that NVF was a dealer in [FedEx] delivery vans and had established

16   good relationships with customers across the country."  (Doc. No. 126 at ¶ 222; *see also* Doc.

17   No. 143 at 10.)  Second, plaintiff points out that it has alleged that after customer Tonn Cummins

18   complained regarding the incorrect mileage on a van he had purchased from plaintiff, plaintiff

19   relayed that complaint to defendant ARI.  (Doc. No. 143 at 10.)

20        In this regard the allegations appearing in plaintiff's TAC are similar to those held to be

21   conclusory and therefore insufficient by the many courts cited in defendant ARI's pending motion

22   to dismiss.  (Doc. No. 131-1 at 11–12) (citing, *e.g.*, *Trindade v. Reach Media Grp., LLC*, No. 12-

23   cv-04759-PSG, 2013 WL 3977034 (N.D. Cal. July 31, 2013)).  Plaintiff does not allege anywhere

24   in the TAC that defendant ARI knew of the three aforementioned delivery companies.  While

25   plaintiff does now argue that it relayed Tonn Cummins' complaint to defendant ARI, it is not

26   clear that the allegations in plaintiff's TAC support this assertion.  Rather, in the TAC, plaintiff

27   alleges only that it received the complaint from Cummins and that it then "began looking into the

28   issue and began complaining to the Auction Houses and ARI."  (Doc. No. 126 at ¶ 118.)

Ultimately, the only allegation in the TAC suggesting that defendant ARI knew of plaintiff's economic relationships is the allegation that defendant ARI "was well aware of the fact that NVF was a dealer in [FedEx] delivery vans and had established good relationships with customers across the country." (*Id.* at ¶ 222.)  Nonetheless, such an allegation is insufficient to adequately plead the knowledge element of a claim for intentional interference with prospective economic advantage.  *See Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*, 467 Fed. App'x. 738, 740 (9th Cir. 2012) ("The SAC merely states that [the defendant] had knowledge of economic relationships between [the plaintiff] and mortgage brokers and lenders without any further specific allegations.  These conclusory statements . . . are insufficient to plead [the defendant's] knowledge."); *see also Infectolab Ams. LLC v. ArminLabs GmbH*, No. 20-cv-03318-VKD, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (rejecting the plaintiff's argument "that the requisite knowledge may reasonably be inferred from the FAC's allegations that [the defendant] had prior dealings with [the plaintiff] and [the defendant's] status as a competitor in the industry"); *Trindade*, 2013 WL 3977034, at *17 & n.155 (N.D. Cal. July 31, 2013) (holding that the allegation that a third-party defendant, as "a self-proclaimed publication expert, is well aware of [the third-party plaintiff's] strong reputation in the advertising industry and the existence of these multiple contracts" was insufficient to plead knowledge).

Accordingly, defendant ARI's motion to dismiss plaintiff's intentional interference with prospective economic advantage claim brought against it will be granted.

**B.    Defendant FedEx's Motion to Dismiss**

Plaintiff asserts six claims against defendant FedEx in its TAC.  For each claim, plaintiff pursues both direct and agency theories of liability.  (Doc. No. 126.)  In support of its claims that are premised on an agency theory of liability, plaintiff has alleged that defendant ARI is liable on each of the six claims asserted against defendant FedEx, that defendant ARI was an agent of defendant FedEx, and that defendant FedEx is thus liable as the principal on each of those six claims.  (*Id.*)

First, the court will consider whether plaintiff has sufficiently alleged that defendant FedEx is liable via an agency theory of liability for odometer fraud, intentional misrepresentation,

1  negligent misrepresentation, violations of 18 U.S.C. § 1962, breach of implied warranty, and

2  violation of the UCL (i.e., claims 1, 2, 3, 4, 6, and 7).  The court will then consider whether

3  plaintiff has sufficiently alleged that defendant FedEx's own conduct makes it directly liable to

4  plaintiff on each of those same claims.

5         1.       Defendant FedEx's Agency Liability for Claims 1, 2, 3, 4, 6, and 7

6         Defendant FedEx moves to dismiss plaintiff's claims pursued via an agency theory of

7  liability only on the grounds that plaintiff has failed to sufficiently allege that defendant ARI was

8  an agent of defendant FedEx.  (Doc. No. 134-1 at 10–15.)  That is, defendant FedEx does not

9  argue that plaintiff has failed to allege that defendant ARI, its alleged agent, is liable as to each

10  relevant claim.  Because the court will conclude that plaintiff has sufficiently alleged an agency

11  relationship, the court will deny defendant FedEx's motion to dismiss claims 1, 2, 3, 4, 6, and 7

12  brought against it via an agency theory of liability.

13         Under California law, the features of an agency relationship are:

14             (1) An agent or apparent agent holds a power to alter the legal
                relations between the principal and third persons and the principal
15             and himself; (2) an agent is a fiduciary with respect to matters
                within the scope of the agency; and (3) a principal has the right to
16             control the conduct of the agent with respect to matters entrusted to
                him.
17

18  *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007)

19  (quoting *Lewis v. Super. Ct.*, 30 Cal. App. 4th 1850, 1868–69 (1994)).

20         Defendant FedEx argues that plaintiff has failed to sufficiently allege that defendant ARI

21  was the agent of defendant FedEx and that, in truth, defendant ARI was a non-agent independent

22  contractor.  (Doc. No. 134 at 10–15.)  Defendant FedEx argues that the provisions in the FMSA

23  to which plaintiff cites in its TAC are standard contractual provisions that do not give defendant

24  FedEx any control over the conduct of defendant ARI, nor do those provisions permit defendant

25  ARI to alter any legal relations between defendant FedEx and anyone else.  (*Id.* at 12–13.)

26  Defendant FedEx further cites to provisions in § 9 of the FMSA expressly disavowing control

27  over the conduct of defendant ARI.  (*Id.* at 13–14; *see also* Doc. No. 122 at 6.)

28  /////

In its opposition, plaintiff points out that the FMSA expressly identifies defendant ARI as the agent of defendant FedEx for the purpose of selling vehicles.  (Doc. No. 145 at 9–10; *see also* Doc. No. 117 at 9 (noting that § 11(D) of the FMSA refers to "the time of the transfer of ownership by ARI, as agent, from FedEx to the next succeeding owner"); *see also* Doc. No. 122 at 8 (same).)  Plaintiff further argues that § 11(D) also undercuts defendant FedEx's contention that the FMSA outlines terms for the sale and transfer of title of the vehicles to defendant ARI, rather than outlining any agency relationship.  Instead, plaintiff argues that the use of the language "the transfer of ownership . . . from FedEx to the next succeeding owner" strongly implies that defendant FedEx intended only to use defendant ARI as an agent to transfer ownership of the vehicles to third parties, such as plaintiff.  (Doc. No. 145 at 10; *see also* Doc. No. 147 at 10.)  This system, plaintiff argues, outlines a consignment agreement where defendant ARI is paid a fee for its services and defendant FedEx keeps the great majority of the profits derived from the sale of each vehicle.  (Doc. No. 145 at 11; *see also* Doc. No. 117 at 9.)  Plaintiff alleges that, for each vehicle, defendant ARI would execute an assignment of title on behalf of defendant FedEx, and then a different ARI employee would countersign the assignment of title on behalf of defendant ARI.  (Doc. No. 126 at ¶ 66.)  Defendant ARI would then turn around and pass the title to a third party, such as plaintiff.  (*Id.* at 14.)  Plaintiff argues that defendant ARI thereby held the power to alter legal relations between defendant FedEx and itself or third persons.  (Doc. No. 145 at 12.)  Finally, plaintiff alleges that defendant ARI needed to check with defendant FedEx before unwinding any vehicle sales and that defendant ARI consistently stated that the sales could not be unwound because defendant FedEx refused to take the vehicles back. (Doc. No. 126 at ¶ 116.)

The court finds that the new allegations appearing in plaintiff's TAC nudge plaintiff's agency theory over the line of plausibility.  In its TAC, plaintiff newly alleges that defendant ARI could not unwind vehicle sales without defendant FedEx's permission.  (Doc. No. 126 at ¶ 116.) More importantly, plaintiff newly alleges that defendant ARI routinely signed documents and executed transfers of title as defendant FedEx.  (Doc. No. 126 at ¶ 66.)  Considering plaintiff's allegations as a whole, it now appears to be plausibly alleged that defendant FedEx had "the right

to control the conduct of [defendant ARI] with respect to matters entrusted to [it]," that defendant ARI held the "power to alter the legal relations between [defendant FedEx] and third persons and [defendant FedEx] and [itself]" as a fiduciary with respect to remarketing and resale, and ultimately that an agency relationship existed. *See Garlock Sealing Techs.*, 148 Cal. App. 4th at 964 (quoting *Lewis*, 30 Cal. App. 4th at 1868–69).

Accordingly, defendant FedEx's motion to dismiss plaintiff's claims brought against it via an agency theory of liability for odometer fraud, intentional misrepresentation, negligent misrepresentation, violation of 18 U.S.C. § 1962, breach of the implied warranty of merchantability, and violation of the UCL will be denied.

> 2. Defendant FedEx's Direct Liability for Claims 1, 2, 3, 4, 6, and 7

> a. *Claim 1: Odometer Fraud*

A plaintiff "must allege that the defendant violated the Odometer Act with intent to defraud as to mileage." *Bodine v. Graco, Inc.*, 533 F.3d 1145, 1151 (9th Cir. 2008); *see also* 49 U.S.C. § 578.6(f)(2). Because such a claim sounds in fraud, Rule 9(b) applies. *Whitley Int'l Co., Ltd. v. Pyne RV Rentals, Inc.*, No. 15-cv-02887-FMO-JPR, 2016 WL 3090322, at *5 (C.D. Cal. May 31, 2016); *see also Vess*, 317 F.3d at 1103–04. Under the Odometer Act, if a vehicle's odometer is replaced, "the owner of the vehicle or agent of the owner shall attach a written notice to the left door frame of the vehicle specifying the mileage before" the odometer was replaced. 49 U.S.C. § 32704(a). Additionally, "a person transferring ownership of a motor vehicle shall give the transferee . . . [a] written disclosure" of "the cumulative mileage registered on the odometer." 49 U.S.C. § 32705(a)(1).

> i. Whether Plaintiff Has Alleged an Omission with Particularity

Defendant FedEx argues that plaintiff has failed to allege any misrepresentation with the particularity required by Rule 9(b). (Doc. No. 134-1 at 16.) Specifically, defendant FedEx argues that plaintiff has failed to allege any misrepresentation connected to a specific vehicle, time, and location. (*Id.*) In its opposition, plaintiff directs the court's attention to dozens of paragraphs of the TAC which, plaintiff argues, allege this exact information. (Doc. No. 145 at 16) (citing Doc. No. 126 at ¶¶ 48–92.)

1    The court finds that plaintiff has alleged an omission with the particularity required by

2    Rule 9(b).  Defendant FedEx argues that plaintiff does not connect its alleged omission of the

3    sticker required by the Odometer Act with any specific vehicle (Doc. No. 134-1 at 16), but

4    defendant is incorrect in this regard.  Plaintiff alleges that Asset 221846, bearing the

5    VIN 4UZA4FF40WC897670, was sold to plaintiff on June 1, 2017 with a bill of sale disclosing

6    the mileage as approximately 100,000 miles, even though defendants FedEx and ARI knew the

7    true mileage was over 350,000 miles and lacking the sticker specifying the vehicle's mileage that

8    is required by the Odometer Act.  (Doc. No. 126 at ¶¶ 68, 75 – 78, 93–96.)  In this way, plaintiff

9    has alleged an omission with sufficient particularity.

10                    ii.    Whether Plaintiff Has Sufficiently Alleged Intent to Defraud

11    Intent to defraud may be alleged generally rather than with particularity.  Fed. R. Civ.

12    P. 9(b).  Nevertheless, defendant FedEx argues that plaintiff's own allegations foreclose the

13    possibility that defendant FedEx acted with intent to defraud.  (Doc. No. 134-1 at 16–17.)

14    Defendant FedEx argues that because plaintiff alleges that defendant FedEx shared the true

15    mileage data for each vehicle with defendant ARI, the party to whom each vehicle was sold, it is

16    not plausibly alleged by plaintiff that defendant FedEx was acting with intent to defraud by

17    omitting the required mileage sticker.  (*Id.*)  In support of its argument, defendant cites to two

18    decisions issued by district courts in other circuits many years ago, neither of which considered a

19    plaintiff's allegations on a motion to dismiss.  (*See id.* at 17) (citing *Levine v. Ark-Les Switch*

20    *Corp.*, 451 F. Supp. 55,  57–58 (W.D. Penn. 1978) (finding that "the uncontradicted facts . . .

21    show that [the defendant] had no 'intent to defraud'" on a motion for summary judgment); *Mayes*

22    *v. Warren Hollon Motors*, 410 F. Supp. 768, 770 (S.D. Ohio 1975) ("The Court cannot find on

23    this record that plaintiff has established by a preponderance of the evidence the requisite intent to

24    defraud.")).  Lastly, defendant FedEx argues in its reply brief that allegations of failing to place a

25    sticker on the vehicle can only satisfy the first element of an Odometer Act claim (i.e., that the

26    defendant violated the Act) and not the second (i.e., intent to defraud).  (Doc. No. 152 at 12.)

27                    The court concludes that plaintiff has sufficiently alleged intent to defraud on the part of

28    defendant FedEx.  Plaintiff alleges that defendant FedEx used defendant ARI as its agent to sell

the vehicles; that defendant FedEx was aware of the true mileage on its vehicles; that defendant FedEx failed to place stickers or accurately disclose the mileage on nearly one hundred vehicles eventually sold to plaintiff alone; that mileage is the most important factor in determining a vehicle's price; and that defendant FedEx systematically accepted payments for double the true value of the vehicles based on the inaccurate mileage disclosures.  (Doc. No. 126 at ¶¶ 144–57.)  Plaintiff specifically alleges that defendant FedEx's employees also signed certifications attesting to inaccurate odometer mileage, despite those employees having access to the records containing the accurate mileage of the vehicles.  (*Id.* at ¶ 148.)  Indeed, attachments to plaintiff's FAC[7] purport to show an employee for defendant FedEx attesting that the odometer on a vehicle reflected the true mileage, when in fact the odometer had been replaced.  (*See* Doc. No. 27 at ¶ 56; *see also* Doc. No. 27-13 at 2.)

Defendant FedEx's primary argument to the contrary, that there could be no intent to defraud given plaintiff's allegations that defendant FedEx provided defendant ARI with access to records containing the true mileage data, is unavailing.  Plaintiff is not asserting that defendant FedEx had any intent to defraud defendant ARI; rather, plaintiff is contending that defendant FedEx conspired with defendant ARI to defraud plaintiff.  Plaintiff's argument is that defendant FedEx failed to place stickers on the vehicles with the knowledge and understanding that defendant ARI would also fail to place stickers on the vehicles, permitting defendant FedEx to reap much higher profits from vehicle sales than disclosure of the true mileage would have permitted.

/////

---

[7]  In its pending motion, defendant FedEx requests that the court take judicial notice of Exhibits D, F, G, and M attached to plaintiff's FAC.  "[A] court may take judicial notice of matters of public record."  *Lee*, 250 F.3d at 689 (internal quotations marks omitted).  Plaintiff filed these exhibits publicly on the docket.  (*See* Doc. Nos. 27-4, 27-6, 27-7, 27-13.)  Moreover, a plaintiff "cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding."  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).  Because plaintiff "swore to [the exhibits'] veracity" and "does not challenge the [exhibits'] authenticity," and "because any subsequent complaint must only allege facts consistent with prior pleadings," the court will take judicial notice of these exhibits.  *Wong v. Flynn-Kerper*, No. 18-cv-04468-SJO-AFM, 2019 WL 4187375, at *4 & n.2 (C.D. Cal. May 16, 2019) (taking judicial notice of an attachment to plaintiff's prior amended complaint).

Considering the allegations of plaintiff's TAC as a whole, the court concludes that plaintiff has sufficiently alleged defendant FedEx's intent to defraud.

### iii.     Whether Plaintiff Need Be in Privity with Defendant FedEx

It is unclear whether defendant FedEx is arguing that plaintiff has failed to allege that it sold vehicles to plaintiff directly.  (*See* Doc. No. 134-1 at 16.)  In any event, "[c]ourts have found that plaintiffs have standing to sue other transferors who are in the chain of ownership and who have given a false odometer statement, even if there was no false statement made directly to the plaintiff by those transferors."  *Woytenko v. Ochoa*, No. 19-cv-00413-TUC-DCB, 2021 WL 763879, at *1 (D. Ariz. Feb. 26, 2021); *see also Ryan v. Edwards*, 592 F.2d 756, 761–62 (4th Cir. 1979) ("The dispositive finding is the transferor's intent to defraud, and [the plaintiff] may recover the statutory damages from each transferor in his chain of title who made false mileage statements with such intent.").

As concluded above, plaintiff has sufficiently alleged that defendant FedEx violated the Odometer Act with intent to defraud.  Accordingly, defendant FedEx's motion to dismiss plaintiff's Odometer Act claim brought against it on a theory of direct liability will be denied.

### b.     *Claim 2:  Intentional Misrepresentation or Omission*

To state a claim for intentional misrepresentation or fraud by omission, a plaintiff must allege:  (1) misrepresentation (either false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012); *see also Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  To state a claim for fraudulent concealment, a plaintiff must additionally allege that the defendant was under a duty to disclose the concealed fact to the plaintiff.  *Davis*, 691 F.3d at 1163.  A duty to disclose arises where the omission is material and one of the four prongs identified by the court in *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)

/////

/////

/////

/////

17

is present. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018).[8]  The four *LiMandri* prongs are:  (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of a material fact; (3) when the defendant actively conceals a material fact; and (4) when the defendant makes misleading partial representations.  *Hodsdon*, 891 F.3d at 862.

Defendant FedEx argues that plaintiff has failed to allege any representations made to it at all, let alone any false representations.  (Doc. No. 134-1 at 18.)  The court disagrees.  As discussed above, plaintiff has alleged concealment (defendant FedEx omitted the sticker from the vehicle), knowledge of falsity (defendant FedEx knew that the odometer had been replaced and that the displayed mileage was inaccurate), and intent to defraud plaintiff.  (*See, e.g.*, Doc. No. 126 at ¶¶ 173–76.)  Plaintiff has further alleged justifiable reliance and resulting damages, in asserting that it would not have purchased the vehicles for twice their value had defendant FedEx placed the stickers on the vehicles and it would not then have also been forced to pay for necessary repairs to the vehicles purchased.  (*Id.* at ¶¶ 177–78.)  Further, because plaintiff alleges that defendant FedEx had exclusive knowledge of the vehicles' true mileage and the replaced odometers from its internal data, and that plaintiff lacked this knowledge, plaintiff has sufficiently alleged that defendant FedEx had a duty to disclose the vehicles' true mileage.  (*Id.* at ¶ 174.)  No more is required.

Accordingly, defendant FedEx's motion to dismiss plaintiff's intentional misrepresentation or omission claim brought against it on a theory of direct liability will be denied.

           c.    *Claim 3:  Negligent Misrepresentation or Omission*

Defendant FedEx argues that plaintiff has failed to state a claim for negligent misrepresentation because an omission cannot give rise to a claim for nondisclosure and because

---

[8]  The Ninth Circuit's decision in *Hodsdon* considered the duty to disclose in the context of product defect cases involving manufacturers and consumers.  891 F.3d at 860–65.  The Ninth Circuit also held that the plaintiff was required to allege that the product defect related to the central functionality of the product.  *Id.*  It is unclear whether this element applies outside the context of manufacturers and consumers.  Ultimately, resolution of this motion to dismiss does not turn on whether this element is required to be alleged here, because plaintiff has sufficiently alleged that the additional mileage on the vehicles relates to the vehicles' central functionality.

plaintiff has not alleged any affirmative misrepresentations made to it.  (Doc. No. 134-1 at 18.)  In its opposition, plaintiff does not dispute or address defendant's argument that an omission cannot give rise to a claim for negligent misrepresentation.  (Doc. No. 145 at 21); *see also Cheramie v. HBB, LLC*, 545 Fed. App'x. 626, 628–29 (9th Cir. 2013) (affirming the district court's dismissal of the plaintiff's negligent misrepresentation claim because such a claim "requires an affirmative representation and cannot be based on nondisclosures") (citing *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011)).

Instead, plaintiff argues that it has alleged affirmative misrepresentations, namely that defendant FedEx allowed vehicles to be remarketed using inaccurate mileage readings.  (Doc. No. 145 at 21 (citing Doc. No. 126 at ¶ 188).)  Plaintiff also points to allegations in its TAC that defendant FedEx failed to affix stickers to the vehicles, failed to provide the required odometer disclosures to defendant ARI, and failed to transmit the actual mileage information when the vehicle was initially sold to defendant ARI.  (Doc. No. 145 at 21) (citing Doc. No. 126 at ¶ 173).

The court concludes that plaintiff has failed to allege any affirmative misrepresentation by defendant FedEx to plaintiff with the particularity required by Rule 9(b).  The allegations in the TAC to which plaintiff cites all describe omissions, not affirmative misrepresentations.  Even if plaintiff's allegations described affirmative misrepresentations, they lack the specificity and the "who, what, where, when, and why" required by Rule 9(b).  *See Vess*, 317 F.3d at 1106.  Moreover, defendant FedEx's alleged failures to provide odometer disclosures and actual mileage information both relate to communications with defendant ARI, not with plaintiff.  Accordingly, defendant FedEx's motion to dismiss plaintiff's claim for negligent misrepresentation brought against it on a theory of direct liability will be granted.

### d.  *Claim 4:  RICO Violations*

The elements of a civil RICO claim under 18 U.S.C. § 1962(c) are:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury" to plaintiff's business.  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citations omitted).

/////

1    Defendant FedEx argues that plaintiff has failed to allege an enterprise between

2    defendants FedEx and ARI, predicate acts of wire or mail fraud, and a pattern of such activity.

3    (Doc. No. 134-1 at 19–21).  In its opposition, plaintiff argues that the court ruled in the Prior

4    Order (Doc. No. 122) that all three of these elements were sufficiently alleged and therefore

5    denied defendant ARI's motion to dismiss the RICO claims brought against it in the SAC.  (Doc.

6    No. 145 at 22–23; *see also* Doc. No. 122 at 17–23.)  Plaintiff notes that the relevant allegations as

7    to this claim are essentially unchanged in the TAC.  (Doc. No. 145 at 22–23.)  After reviewing

8    plaintiff's allegations in its TAC and the Prior Order, the court agrees that plaintiffs have

9    sufficiently alleged enterprise, predicate acts, and a pattern of racketeering for reasons similar to

10    those addressed at length in the Prior Order.  Nevertheless, below the court will also briefly

11    address the specific arguments raised by defendant FedEx in its pending motion.

12    Defendant FedEx makes three arguments.  First, it argues that plaintiff has failed to allege

13    an enterprise because plaintiff has merely alleged a routine commercial relationship as

14    encapsulated in the FMSA.  (*Id.* at 19) (citing *Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425-

15    JGB-KK, 2015 WL 4270042, at *9 (C.D. Cal. July 13, 2015)).  However, "[t]hat a legitimate

16    contractual relationship between the defendants exists does not undermine [plaintiff's] plausible

17    allegations that defendants also engaged in an enterprise to defraud them and used the contractual

18    relationship as a cover."  *LD v. United Behavioral Health*, 508 F. Supp. 3d 583, 602 (N.D. Cal.

19    2020).  Because plaintiff has alleged an enterprise to defraud purchasers such as plaintiff,

20    defendant FedEx's argument on this point fails.

21    Second, defendant FedEx argues that plaintiff has failed to allege any predicate acts of

22    wire or mail fraud with the particularity required by Rule 9(b).  (Doc. No. 134-1 at 19–20.)  As

23    noted above, this same argument was rejected by the court in the Prior Order on the basis of

24    nearly identical allegations in plaintiff's SAC.  (*See* Doc. No. 122 at 19–21.)  Here, plaintiff's

25    allegations appearing in its TAC are again sufficient to allege the predicate acts of wire or mail

26    fraud.  Plaintiff alleges that defendant ARI knowingly used interstate mail to send vehicle titles

27    containing inaccurate mileage statements to auction houses and to purchasers, and that defendant

28    ARI knowingly advertised the inaccurate condition reports online.  (Doc. No. 126 at ¶¶ 89, 135,

137.)  Plaintiff also alleges details regarding the sales of several individual vehicles.  For instance, defendant ARI requested the title for Asset 221846, VIN 4UZA4FF40WC897670, from defendant FedEx in April 2017, then mailed the title for that vehicle to an auction house, then used the auction house's condition report in the online marketing of the vehicle, then sold the vehicle to plaintiff at nearly twice the appropriate price given the vehicle's true mileage on June 1, 2017, and finally provided plaintiff with a bill of sale reflecting the inaccurate mileage.  (*Id.* at ¶¶ 68, 86–87, 93–96.)  Plaintiff also alleges that, for instance, Assets 232266 and 227217 were similarly deceptively marketed and sold in January and May 2017, respectively.  (*Id.* at ¶¶ 98–101.)  Taken together, the court concludes that plaintiff's allegations remain sufficient to allege the requisite predicate acts of mail or wire fraud.  (*See* Doc. No. 122 at 19–21.)

Defendant FedEx compares plaintiff's allegations to those found insufficient by the district court in *Committee. to Protect our Agricultural Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132 (E.D. Cal. 2017) and the Ninth Circuit in *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (1989).  (Doc. No. 134-1 at 20.)  These decisions are easily distinguishable from the present case.  In *Occidental Oil*, the plaintiffs did "not allege facts explaining how any of the defendants' claimed communications involved a misrepresentation . . . ."  235 F. Supp. 3d at 1179.  Here, by contrast, plaintiff's allegations (as well as the Prior Order) repeatedly explain how the condition reports and assignments of title contained misrepresentations.  Similarly, in *Moore*, the plaintiff "fail[ed] to specify the time, place, and content of the alleged mail and securities fraud," and "none of the RICO allegations identifie[d] the role of the individual defendants in the alleged fraudulent scheme."  885 F.2d at 541.  Here, as described above, in its TAC plaintiff has provided great detail about individual sales and misrepresentations, even specifying the advertised mileage numbers versus the accurate ones, as well the role of each defendant in the alleged scheme.  (*See, e.g.*, Doc. No. 126 at ¶¶ 98–101.)

Third, defendant FedEx argues that plaintiff's allegations of vehicle sales in a single year, more than six years ago, cannot support a reasonable inference of the continuity that is required in order to allege a pattern of racketeering.  (Doc. No. 134-1 at 21.)  Defendant FedEx is correct that a pattern generally requires the fraudulent conduct to last one year.  *Cf. Grimmett v. Brown*, 75

21

1    F.3d 506, 512 (9th Cir. 1996) (noting that a pattern "cannot usually be proven unless the scheme

2    has been in existence for at least one year").  But as noted in the Prior Order, defendant FedEx

3    misdescribes plaintiff's allegations; indeed, plaintiff alleges that it purchased 98 vehicles with

4    undisclosed odometer changes between 2013 and 2017.  (Doc. No. 126 at ¶ 97; *see also* Doc.

5    No. 122 at 22.)  This suffices for purposes of alleging a pattern.

6          Accordingly, defendant FedEx's motion to dismiss plaintiff's racketeering claim brought

7    against it via a theory of direct liability will be denied.[9]

8                 e.     *Claim 6:  Implied Warranty of Merchantability*

9          Defendant FedEx next argues that plaintiff's implied warranty claim must be dismissed

10    because it was not in privity with plaintiff.  (Doc. No. 134-1 at 23); *see also Clemens v.*

11    *DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (noting that "a plaintiff asserting

12    [implied] breach of warranty claims must stand in vertical contractual privity with the

13    defendant").  According to the allegations of plaintiff's TAC, title to each vehicle was passed first

14    from defendant FedEx to defendant ARI and then from defendant ARI to plaintiff; nowhere in the

15    TAC does plaintiff allege that it bought a vehicle directly from defendant FedEx.

16          Plaintiff argues in its opposition that defendant FedEx was in privity with plaintiff because

17    plaintiff bought each vehicle from defendant FedEx's agent.  (Doc. No. 145 at 25.)  Plaintiff cites

18    no authority suggesting any such agency exception to California's privity requirement exists.  *Cf.*

19    *Shay v. Apple Inc.*, No. 20-cv-01629-GPC-BLM, 2021 WL 1733385, at *7 (S.D. Cal. May 3,

20    2021) ("Plaintiff merely alleges that the Apple gift card retailers 'are agents of Defendants' . . . .

21    Accordingly, Plaintiff has not alleged privity or any recognized privity exception adopted by the

22    Ninth Circuit or California courts.").

23          Accordingly, defendant FedEx's motion to dismiss plaintiff's implied warranty claim

24    brought against it on a theory of direct liability will be granted.

25

26    [9]  Plaintiff also asserts a claim for conspiracy to commit racketeering in violation of 18 U.S.C.

     § 1962(d).  Defendant FedEx moves to dismiss plaintiff's § 1962(d) conspiracy claim only on the

27    grounds that plaintiff has failed to allege a substantive violation of § 1962(c).  (Doc. No. 134-1 at

     23.)  Because the court has found that plaintiff has sufficiently alleged a violation of § 1962(c),

28    defendant FedEx's motion to dismiss the conspiracy claim will also be denied.

f.      *Claim 7:  UCL Violations*

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  The three aforementioned "prongs" each maintain a distinct theory of liability and basis for relief.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  The UCL unlawful prong "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) (citations omitted).  "Virtually any law—federal, state or local—can serve as a predicate for a [UCL unlawful conduct] action."  *Id.*

Defendant FedEx argues that plaintiff's UCL claim for unlawful, unfair, and fraudulent conduct must be dismissed because plaintiff never identifies a particular business practice of defendant FedEx's, rather than defendant ARI's, that violates the UCL.  (Doc. No. 134-1 at 24.)  In its opposition, plaintiff argues that its UCL claim is properly predicated on its claims for intentional misrepresentation, negligent misrepresentation, racketeering, and breach of implied warranty.  (Doc. No. 145 at 25–26.)

As described above, plaintiff has sufficiently alleged fraud by omission and racketeering by defendant FedEx.  Plaintiff has thereby sufficiently alleged unlawful, unfair, and fraudulent conduct on the part of defendant FedEx.  *See, e.g.*, *So v. HP, Inc.*, No. 22-cv-02327-BLF, 2023 WL 4596778, at *8, *12 (N.D. Cal. July 17, 2023) (holding that the plaintiff had stated a UCL claim arising under the unlawful prong in part because he had sufficiently alleged fraud by omission); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934–36 (N.D. Cal. 2013) (holding that the plaintiffs had stated a cognizable UCL claim arising under the fraudulent prong because they had sufficiently alleged fraud by omission); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (explaining that the plaintiffs "need merely to show that the effects of [the defendant's] conduct 'are comparable to or the same as a violation of the law'" to state a claim arising under the unfair prong) (quoting *Cel-Tech*, 20 Cal. 4th at 187); *see also MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014) (holding that the plaintiff had

23

1  sufficiently alleged unfair conduct under the balancing test for such because the defendant's

2  alleged fraudulent omissions were "without utility" and thus did "not outweigh the harm [the

3  plaintiffs] suffered").

4      Accordingly, defendant FedEx's motion to dismiss plaintiff's UCL claim brought against

5  it on a theory of direct liability will also be denied.

6  **C.      Leave to Amend**

7      Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

8  P. 15(a).  Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

9  deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

10  leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

11      Plaintiff has not requested further leave to amend in its oppositions to the pending motions

12  to dismiss.  The court notes that this is plaintiff's fourth unsuccessful attempt to state a cognizable

13  claim for negligent misrepresentation and breach of implied warranty against defendant FedEx on

14  a direct theory of liability, as well as for intentional interference with prospective economic

15  advantage against defendant ARI.  Additionally, plaintiff's allegations regarding the lack of

16  privity foreclose any implied warranty claim against defendant FedEx.  After considering the

17  minimal new allegations relating to these claims supplied in plaintiff's TAC, the court concludes

18  that granting any further leave to amend would be futile.

19      Accordingly, plaintiff's claim for negligent misrepresentation and breach of implied

20  warranty against defendant FedEx on a direct theory of liability, as well as for intentional

21  interference with prospective economic advantage against defendant ARI, will be dismissed

22  without leave to amend.

23                              **CONCLUSION**

24      For the reasons explained above,

25  1.      Defendant Automotive Rentals, Inc.'s ("ARI") motion to dismiss (Doc. No. 131) is

26          granted in part and denied in part as follows:

27          a.      Defendant ARI's motion to dismiss plaintiff's claim brought against it for

28                  violation of 18 U.S.C. § 1962(a) is denied as having been rendered moot by

                                        24

plaintiff's express renouncement of any such claim;

    b.    Defendant ARI's motion to dismiss plaintiff's claim brought against it for intentional interference with prospective economic advantage is granted, without leave to amend;

2.    Defendant Federal Express Corp.'s ("FedEx") motion to dismiss (Doc. No. 134) is granted in part and denied in part as follows:

    a.    Defendant FedEx's motion to dismiss plaintiff's claims for odometer fraud, intentional misrepresentation, negligent misrepresentation, racketeering and conspiracy to commit racketeering, breach of implied warranty, and violation of California's Unfair Competition Law, brought against defendant FedEx on a theory of agency liability, is denied;

    b.    Defendant FedEx's motion to dismiss plaintiff's claims for odometer fraud, intentional misrepresentation or omission, racketeering and conspiracy to commit racketeering, and violation of California's Unfair Competition Law, brought against defendant FedEx on a theory of direct liability, is denied;

    c.    Defendant FedEx's motion to dismiss plaintiff's claims for negligent misrepresentation and breach of implied warranty brought against it on a theory of direct liability is granted, without leave to amend;

3.    Consistent with the court's prior minute order (Doc. No. 158), the parties shall file a joint status report with a proposed case schedule and pretrial dates no later than twenty-one (21) days after the date of entry of this order.  The court will issue a pretrial scheduling order after receiving the parties' status report;

4.    Defendants ARI and FedEx shall file an answer responding to the remaining claims asserted in plaintiff's third amended complaint no later than twenty-one (21) days after the date of entry of this order; and

5.    The undersigned has reviewed the docket in this action, and defendant Federal Express Corp. is erroneously listed twice, the second time as "Fedex Corporation."

Defendant Automotive Rentals, Inc. is also erroneously listed twice, the second time as "ARI, Inc."  Accordingly, the Clerk of the Court is directed to correct the docket by removing the duplicative defendants, specifically "Fedex Corporation" and "ARI, Inc."

IT IS SO ORDERED.

Dated: __**January 17, 2024**__

DALE A. DROZD
UNITED STATES DISTRICT JUDGE